ACCEPTED
07-15-00078-CV
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
4/24/2015 11:08:22 AM
Vivian Long, Clerk

No. 07-15-00078-CV

IN THE COURT OF APPEALS
FOR THE SEVENTH DISTRICT OF TEXAS
AT AMARILLO TEXAS

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
4/24/2015 11:08:22 AM
VIVIAN LONG
CLERK

CITY OF LUBBOCK,
*Appellant*

v.

LAZARO WALCK,
*Appellee*

On Appeal from the 72nd District Court of Lubbock County, Texas
Trial Court Cause No. 2014-509,907

APPELLANT CITY OF LUBBOCK'S BRIEF

CITY OF LUBBOCK, TEXAS

Jeff Hartsell
Assistant City Attorney
State Bar No. 09170275
P O Box 2000
Lubbock, Texas 79457
Telephone No.: 806-775-2222
Facsimile No.: 806-775-3307
jhartsell@mylubbock.us

ORAL ARGUMENT REQUESTED     ATTORNEY FOR APPELLANT
CITY OF LUBBOCK

# IDENTITY OF PARTIES AND COUNSEL

Appellant City of Lubbock certifies that the following is a complete list of the parties, attorneys, and any other person who has any interest in the outcome of this lawsuit:

Attorneys for Apellant
Jeff Hartsell
Assistant City Attorney
P O Box 2000
Lubbock, Texas 79457
jhartsell@mylubbock.us


Attorney for Appellee
Phil A. Johnson
Jenkins, Wagnon & Young, P.C.
P O Box 420
Lubbock, Texas  79408-0420
806-796-7351
Fax 806-771-8755
State Bar No. 24056820
pjohnson@jwylaw.com


Trial Court Judge
The Honorable Ruben Reyes
72nd District Court for Lubbock County
P O Box 10536
Lubbock, Texas 79401
rreyes@co.lubbock.tx.us

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL……………………………………………………….i

TABLE OF CONTENTS…………………………………………………………………..ii

INDEX OF AUTHORITIES………………………………………………………………iv

STATEMENT OF THE CASE……………………………………………………….1

REQUEST FOR ORAL ARGUMENT…………………………………………….1

ISSUES PRESENTED…………………………………………………………..1

STATEMENT OF FACTS………………………………………………………...2

SUMMARY OF THE ARGUMENT………………………………………………5

     ISSUE OF LAW #1
     THE TRIAL COURT DID NOT HAVE JURISDICTION OVER THE
     CLAIMS PRESENTED IN THIS LAWSUIT AS PLAINTIFF DID NOT
     COMPLY WITH SECTION 544.006(a) OF THE TEXAS GOVERNMENT
     CODE BY PRESENTING SUCH CLAIMS IN THE GRIEVANCE
     PROCESS……………………………………………………………………5

     ISSUE OF LAW #2
     PLAINTIFF CANNOT SUE THE CITY REGARDING THE
     SUSPENSION OF HIS OUTSIDE WORK PERMIT SINCE HE DID NOT
     FILE SUIT WITHIN THE 90 DAY LIMITATIONS PERIOD……………7

     ISSUE OF LAW #3
     CITY WAS NOT PUT ON NOTICE THAT PLAINTIFF HAD A
     WHISTLEBLOWER CLAIM AS IT RELATES TO THE SUSPENSION
     OF HIS OUTSIDE WORK PERMIT……………………………………8

ISSUE OF LAW #4

PLAINTIFF HAS NO PRIVATE RIGHT OF ACTION TO SEEK A $15,000 CIVIL PENALTY AGAINST THE CHIEF OF POLICE…………8

ARGUMENT……………………………………………………………………….9

ISSUE OF LAW #1

THE TRIAL COURT DID NOT HAVE JURISDICTION OVER THE CLAIMS PRESENTED IN THIS LAWSUIT AS PLAINTIFF DID NOT COMPLY WITH SECTION 544.006(a) OF THE TEXAS GOVERNMENT CODE BY PRESENTING SUCH CLAIMS IN THE GRIEVANCE PROCESS……………………………………………………………………9

ISSUE OF LAW #2

PLAINTIFF CANNOT SUE THE CITY REGARDING THE SUSPENSION OF HIS OUTSIDE WORK PERMIT SINCE HE DID NOT FILE SUIT WITHIN THE 90 DAY LIMITATIONS PERIOD…………...21

ISSUE OF LAW #3

CITY WAS NOT PUT ON NOTICE THAT PLAINTIFF HAD A WHISTLEBLOWER CLAIM AS IT RELATES TO THE SUSPENSION OF HIS OUTSIDE WORK PERMIT……………………………………...23

ISSUE OF LAW #4

PLAINTIFF HAS NO PRIVATE RIGHT OF ACTION TO SEEK A $15,000 CIVIL PENALTY AGAINST THE CHIEF OF POLICE………..25

PRAYER…………………………………………………………………………26

CERTIFICATE OF COMPLIANCE……………………………………………...27

CERTIFICATE OF SERVICE……………………………………………………27

APPENDIX………………………………………………………………………28

# INDEX OF AUTHORITIES

## Cases

*Aguilar v. Socorro Indep. Sch. Dist.*,
296 S.W.3d 785 (Tex. App.—El Paso 2009, no pet.) ...........................................15

*Alejandro v. Robstown Indep. Sch. Dist.*,
131 S.W.3d 663 (Tex. App.—Corpus Christi 2004, no pet.)..............................26

*Carter v. Castillo*, No. 3:99-CV-0047-X, 2001 U.S. Dist. LEXIS 1264 (N.D. Tex.
Feb. 7, 2001)……………………………………………………………………….20

*City of Houston v. Smith*,
01-13-00241-CV, 2014 WL 768330 (Tex. App.—Houston [1st Dist.] Feb. 25,
2014, no pet.) (mem. op.) ...................................................................................23

*Dallas County v. Gonzales*,
183 S.W.3d 94 (Tex. App.—Dallas 2006, pet. denied) ................................ 19, 20

*Davis v. Autonation USA Corp.*,
226 S.W.3d 487 (Tex. App.—Houston [1st Dist.] 2006, no pet.)....................... 22

*Fort Bend Indep. Sch. Dist. v. Gayle*,
371 S.W.3d 391 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).................11

*Fort Bend Indep. Sch. Dist. v. Rivera*,
93 S.W.3d 315 (Tex. App.—Houston [14th Dist.] 2002, no pet.) .......................11

*Fort Worth Indep. Sch. Dist. v. Palazzolo*,
02-13-00006-CV, 2014 WL 69889 (Tex. App.—Fort Worth Jan. 9, 2014, no
pet.) (mem. op.) ...................................................................... 12, 14, 15, 25

*Gregg County v. Farrar*,
933 S.W.2d 769 (Tex. App.—Austin 1996, writ denied) ............................. 11, 16

*Nat'l R.R. Passenger Corp. v. Morgan*,
536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) ....................................23

*Prairie View A&M Univ. v. Chatha*,
381 S.W.3d 500 (Tex. 2012)…………………………………………………...25

*Ruiz v. Austin Indep. Sch. Dist.*,
03-02-00798-CV, 2004 WL 1171666 (Tex. App.—Austin May 27, 2004, no pet.) (mem. op.) .......................................................................................17

*Santi v. Univ. of Texas Health Sci. Ctr. at Houston*,
312 S.W.3d 800 (Tex. App.—Houston [1st Dist.] 2009, no pet.).......................22

*Tarrant County v. McQuary*,
310 S.W.3d 170 (Tex. App.—Fort Worth 2010, pet. denied)................. 11, 23, 24

*Univ. of Houston v. Barth*,
178 S.W.3d 157 (Tex. App.—Houston [1st Dist.] 2005, no pet.).......................11

*Van Indep. Sch. Dist. v. McCarty*,
165 S.W.3d 351 (Tex. 2005) .............................................................................18

*W. Houston Charter Sch. Alliance v. Pickering*,
01-10-00289-CV, 2011 WL 3612288 (Tex. App.—Houston [1st Dist.] Aug. 18, 2011, no pet.) (mem. op.) ........................................................ 11, 16, 17

*Weslaco Indep. Sch. Dist. v. Perez*,
13-12-00590-CV, 2013 WL 3894970 (Tex. App.—Corpus Christi July 25, 2013, no pet.) (mem. op.) .......................................................................................26

**Statutes**

Tex. Gov't Code Ann. § 554.005 (West 2012)……………………………………...21

Tex. Gov't Code Ann § 544.006 (West 2012)………………….1, 5, 6, 9, 10, 11, 15, 16, 17, 21

Tex. Gov't Code Ann. § 544.008 (West 2012)……………………………………...8, 25

## STATEMENT OF THE CASE

Plaintiff, Lazaro Walck, filed his Original Petition on January 18, 2014 (CR 5). The City of Lubbock filed its Original Answer on February 14, 2014 (CR 11).

The Court entered its Scheduling Order on March 26, 2014 (CR 14). In the Scheduling Order it directed that all dispositive motions be filed by December 5, 2014 (CR 14).

On October 15, 2014 the City filed its Plea to the Jurisdiction (CR 16-64). Plaintiff filed his Response to the City's Plea to the Jurisdiction on December 5, 2014 (CR 66-101).

The Court heard the City's Plea to the Jurisdiction on January 30, 2015. The trial court signed an Order Denying the City's Plea to the Jurisdiction on February 18, 2015 (CR 102, Apx. 1). The City filed its Notice of Appeal on February 27, 2015 (CR 103).

## REQUEST FOR ORAL ARGUMENT

Appellant, CITY OF LUBBOCK, respectfully requests oral argument.

## ISSUES PRESENTED FOR REVIEW

**ISSUE OF LAW #1 — THE TRIAL COURT DID NOT HAVE JURISDICTION OVER THE CLAIMS PRESENTED IN THIS LAWSUIT AS PLAINTIFF DID NOT COMPLY WITH SECTION 554.006(a) OF THE TEXAS GOVERNMENT CODE BY PRESENTING SUCH CLAIMS IN THE GRIEVANCE PROCESS**

1

**ISSUE OF LAW #2 — PLAINTIFF CANNOT SUE THE CITY REGARDING THE SUSPENSION OF HIS OUTSIDE WORK PERMIT SINCE HE DID NOT FILE SUIT WITHIN THE 90 DAY LIMITATIONS PERIOD**

**ISSUE OF LAW #3 — CITY WAS NOT PUT ON NOTICE THAT PLAINTIFF HAD A WHISTLEBLOWER CLAIM AS IT RELATES TO THE SUSPENSION OF HIS OUTSIDE WORK PERMIT**

**ISSUE OF LAW #4 — PLAINTIFF HAS NO PRIVATE RIGHT OF ACTION TO SEEK A $15,000 CIVIL PENALTY AGAINST THE CHIEF OF POLICE**

## STATEMENT OF FACTS

The facts of this case are not in dispute. Plaintiff is employed as a peace officer with the City of Lubbock, (Plaintiff's Petition CR 6), and was also taking classes at Texas Tech University (Plaintiff's Petition CR 6). During the first part of July 2013, Plaintiff attempted to contact Lubbock's City Manager, Lee Ann Dumbauld, in an effort to interview her regarding a class project (Plaintiff's Petition CR 6-7). In response to this request Dumbauld sent an e-mail to Roger Ellis, Chief of Police, which read "??????" (CR 37).

On July 8, 2013 the Chief of Police sent an e-mail to Assistant Chief Wayne Bullock requesting that Plaintiff's supervisor contact Plaintiff and tell him that it was improper to contact the City Manager directly without permission from his chain of command (CR 39). After Plaintiff's sergeant spoke with him, Plaintiff

2

responded that he did not want to speak with the City Manager about work related issues, but desired to speak with her regarding a class project (Plaintiff's Petition CR 7). Despite Plaintiff's explanation, Plaintiff was still ordered not to contact the City Manager (Plaintiff's Petition CR 7, CR 44).

In response the Plaintiff sent an e-mail to the Mayor and the members of the City Council complaining about the situation (CR 44). After sending this e-mail Plaintiff was notified that he was being transferred from his position (Plaintiff's Petition CR 7). Plaintiff responded by sending an e-mail to his chain of command complaining that the transfer was punishment for exercising his First Amendment rights (CR 46). On July 11 or 12, 2013, Plaintiff further learned that an Internal Affairs investigation had been opened against him and that, pending the investigation, his outside work permit would be suspended (Plaintiff's Petition CR 8, CR 46, CR 59 1st paragraph, CR 85 3rd paragraph).

### Grievance Regarding Plaintiff's Outside Work Permit

In response to his outside work permit being suspended, Plaintiff filed a grievance, pursuant to the City's grievance procedure, asking that his outside work permit be reinstated. This was the only relief he requested. After initially having his grievance denied by the Chief of Police, (CR 50), Plaintiff pursued his complaint further by filing a grievance on August 12, 2013 (CR 48, Apx. 6) which was heard by Assistant City Manager Quincy White on August 26, 2013 (CR 53).

3

On August 29, 2013, Quincy White ruled in Plaintiff's favor and reinstated his outside work permit (CR 53, Apx. 7). In his ruling White stated that "It is my determination that there was no basis or justification to suspend your outside work permit; therefore, I am directing the Lubbock Police Department to reinstate your outside work permit immediately" (CR 53, Apx. 7). White also stated that "Your request to the City Manager was within your rights as a citizen and unrelated to your employment as either an LPD officer or your outside employment as a security officer" (CR 53, Apx. 7). It is important to note that the Plaintiff never requested that he be reimbursed for lost wages, attorney's fees or any other type of relief as part of his grievance. While the Plaintiff mentioned that he was losing money because he could not work his other job, the only relief he requested was that his outside work permit be reinstated. Plaintiff received all the relief he asked for in this grievance.

## Letter of Reprimand Grievance

On September 25, 2013, after the Internal Affairs investigation was completed, Plaintiff was issued a letter of reprimand for doing school work while on duty (CR 56, Apx. 8). Plaintiff filed a grievance as to this reprimand on September 27, 2013 (CR 58, Apx. 9). This grievance was heard by Assistant City Manager Scott Snider on October 22, 2013 (CR 62). On October 23, 2013, Snider ruled in favor of the Plaintiff and ordered that the letter of reprimand be rescinded

4

(CR 62, Apx. 10). Once again, it is undisputed that the only relief the Plaintiff requested in this grievance was that the reprimand be rescinded. As with his first grievance, he received all of the relief he requested.

## SUMMARY OF THE ARGUMENT

### ISSUE OF LAW # 1

**THE TRIAL COURT DID NOT HAVE JURISDICTION OVER THE CLAIMS PRESENTED IN THIS LAWSUIT AS PLAINTIFF DID NOT COMPLY WITH SECTION 554.006(a) OF THE TEXAS GOVERNMENT CODE BY PRESENTING SUCH CLAIMS IN THE GRIEVANCE PROCESS**

The trial court did not have jurisdiction over the Plaintiff's claims for lost wages, attorney's fees, mental anguish or other relief because the Plaintiff did not ask for that relief during the grievance process. While the Plaintiff filed two grievances, one pertaining to the suspension of his outside work permit and another grievance pertaining to the reprimand he received, he obtained all the relief he requested in both grievances.

In the first grievance he requested that his outside work permit be reinstated. The permit was reinstated after the Assistant City Manager heard the grievance (CR 53, Apx. 7). In the second grievance he requested that the letter of reprimand be rescinded. The reprimand was rescinded as well (CR 62, Apx. 10). Plaintiff received all the relief he requested in each grievance.

5

After being granted everything he requested through the grievance process, Plaintiff filed a lawsuit seeking monetary damages consisting of lost wages, attorney's fees, damages for mental anguish as well as a civil penalty against the Chief of Police. It is undisputed that Plaintiff did not request any of this relief during his grievances. Plaintiff is required by 554.006(a) to initiate a grievance before he can file suit. Since he did not initiate a grievance regarding these damages (i.e. lost wages, attorney's fees, mental anguish, etc.), the court has no jurisdiction over the lawsuit.

Plaintiff does not dispute that such relief was not requested during the grievance process, but asserts that he satisfied the initiation requirement by making the demands on the City by filing a claim in December 2013. However, as will be shown in this brief, filing a claim does not satisfy the initiation requirement of Section 554.006. An employee must present his claims via the grievance process, not some other process, before the employee can file suit. Since Plaintiff did not make these claims during the grievance process, he cannot file suit regarding such claims and the trial court has no jurisdiction over this lawsuit.

**ISSUE OF LAW # 2**

**PLAINTIFF CANNOT SUE THE CITY REGARDING THE SUSPENSION OF HIS OUTSIDE WORK PERMIT SINCE HE DID NOT FILE SUIT WITHIN THE 90 DAY LIMITATIONS PERIOD**

The trial court also has no jurisdiction as to any issue pertaining to the suspension of Plaintiff's outside work permit as he did not file his suit within the 90 day limitations period. Plaintiff's work permit was suspended on either July 11 or July 12, 2013 (CR 59 1st paragraph, CR 85 3rd paragraph). His grievance was completed on August 29, 2013 when the Assistant City Manager ordered that the permit be reinstated (CR 53, Apx. 7). Plaintiff did not file suit until January 18, 2014 (CR 5); well after the 90 day limitations period which would have run in late November.

Plaintiff does not dispute these facts but attempts to invoke the continuing violation doctrine asserting that the limitations period should not have begun until after his second grievance was finished regarding his letter of reprimand. However, this doctrine is inapplicable in this case. The continuing violation doctrine applies when a cause of action manifests itself over time and is not applicable when the adverse employment action is a discrete act. Easily identifiable acts such as transfer, demotion or the suspension of a work permit are easily identifiable and discrete actions of which the continuing violation doctrine does not apply. Since the Plaintiff did not file suit within the limitations period

7

regarding the suspension of his outside work permit he cannot sue the City as to any issues relating to it.

## ISSUE OF LAW # 3

## CITY WAS NOT PUT ON NOTICE THAT PLAINTIFF HAD A WHISTLEBLOWER CLAIM AS IT RELATES TO THE SUSPENSION OF HIS OUTSIDE WORK PERMIT

Also, as it relates to the suspension of the outside work permit, Plaintiff never informed the City during the grievance process that he believed the action taken by the Chief was due to the fact the Plaintiff had reported an illegal activity. The employee must put the entity on notice of this fact before filing suit. However, in that particular grievance, the Plaintiff did not allege that the action taken by the Chief was because he reported illegal activity (See Plaintiff's grievance regarding the work permit at CR 49 and 91, Apx. 6). Since he did not put the City on notice of any alleged illegal activity, he cannot sue the City regarding any issue relating to the suspension of his outside work permit.

## ISSUE OF LAW # 4

## PLAINTIFF HAS NO PRIVATE RIGHT OF ACTION TO SEEK A $15,000 CIVIL PENALTY AGAINST THE CHIEF OF POLICE

Lastly, Plaintiff is attempting to obtain a $15,000 civil penalty against the Chief of Police pursuant to Section 554.008 of the Government Code. There is no private right of action to collect this penalty. This penalty can only be collected through an action by the Attorney General's Office or other prosecuting attorney.

8

# ARGUMENT

## ISSUE OF LAW #1

## THE TRIAL COURT DID NOT HAVE JURISDICTION OVER THE CLAIMS PRESENTED IN THIS LAWSUIT AS PLAINTIFF DID NOT COMPLY WITH SECTION 554.006(a) OF THE TEXAS GOVERNMENT CODE BY PRESENTING SUCH CLAIMS IN THE GRIEVANCE PROCESS

### First Grievance - Plaintiff only Requested his Work Permit be Reinstated

It is undisputed that Plaintiff received all the relief he requested in each grievance.  In the first grievance, pertaining to the suspension of his outside work permit, the only relief he requested was that his outside work permit be reinstated.  While the Plaintiff said that he was losing wages from not being able to work his outside job at an IHOP restaurant, he did not request lost wages, or any other relief, other than reinstatement of his work permit. (See the Plaintiff's grievance filed on August 12, 2013 at CR 48, Apx. 6).  The City's Director of Human Resources, Leisa Hutcheson, attended the grievance hearing and testified that, "In his grievance regarding his outside work permit, he only requested that the permit be reinstated.  At the grievance hearing he never requested to be reimbursed for lost wages or attorneys fees." (CR 64 at paragraph II).

9

## Second Grievance – Plaintiff only Requested the Letter of Reprimand
## be Rescinded

In Plaintiff's second grievance, pertaining to the written reprimand, the only relief he requested was to have the letter of reprimand rescinded. (See the Plaintiff's grievance filed on September 27, 2013 at CR 58, Apx. 9). This is also corroborated by the testimony of Leisa Hutcheson. "Also, in his grievance hearing regarding the Letter of Reprimand, all he requested was that the reprimand be rescinded. He did not request any other relief" (CR 64 at paragraph II).

### Plaintiff Failed to Utilize Grievance Process Regarding his Current Claims

Plaintiff cannot file suit against the City and request damages under the Whistleblower Act that were not both requested and denied during the grievance process. The Whistleblower Act requires that the employee utilize the entity's grievance process regarding these claims before filing suit. Section 554.006(a) of the Texas Government Code states:

> A public employee must initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action before suing under this chapter.

Plaintiff cannot sue the City for the relief he requests in this lawsuit because he did not comply with Section 554.006(a) by making a claim for these damages during the grievance process. "The goal of section 554.006 is 'to afford the governmental entity with the opportunity to investigate and correct its errors and to resolve

10

disputes before incurring the expense of litigation.'" *Fort Bend Indep. School District v. Gayle*, 371 S.W.3d 391, 395 (Tex. App. – Houston [1ˢᵗ Dist.] 2012, pet. denied); *citing West Houston Charter School Alliance v. Pickering*, No. 01-10-00289-CV, 2011 WL 3612288 (Tex. App. – Houston [1ˢᵗ Dist.] Aug. 18, 2011, no pet.) (mem. op.) at *8. *See also Fort Bend Indep. School District v. Rivera*, 93 S.W.3d 315, 318 (Tex. App. – Houston [14ᵗʰ Dist.] 2002, no pet.). In *Gregg County v. Farrar*, 933 S.W.2d 769 (Tex. App. – Austin 1996, pet. denied), the court said, "We find the policies of providing the local body an opportunity to correct its errors and or promoting judicial economy to be particularly influential in suits against public entities." *Farrar, Id*. at 775. "Notions of administrative autonomy require further that the agency be given first opportunity to discover and correct its own errors." *Id. See also Tarrant County v. McQuary*, 310 S.W.3d 170, 178-179 (Tex. App. – Fort Worth 2010, pet. denied). In this case, the City was denied that opportunity.

## Failing to Initiate a Grievance is Jurisdictional

Further, the requirement of filing a grievance under 554.006(a) is jurisdictional. "The grievance-initiation requirement is a jurisdictional prerequisite, such that compliance is essential to the trial court's jurisdiction over a whistleblower action." *Gayle, Id*.; *citing University of Houston v. Barth*, 178

11

S.W.3d 157, 161-162 (Tex. App. – Houston [1st Dist.] 2005, no pet.). Failing to comply with the statute deprives the trial court's jurisdiction.

In this case, the Plaintiff did not request any relief in the grievance process other than reinstatement of his outside work permit in his first grievance, and rescinding the letter of reprimand in the second grievance. Since he did not request any other relief in the grievance process, he is precluded from filing suit against the City of Lubbock as to those issues.

By failing to request these damages in the grievance process the Plaintiff deprived the City of the opportunity to correct any errors and resolve the dispute. The Whistleblower Act does not allow an employee to circumvent the grievance process. Doing so deprives the trial court of its jurisdiction.

### *Fort Worth Ind. School District v. Palazzolo*

The most recent case to discuss this issue is *Fort Worth Ind. Sch. Dist. v. Palazzolo*, No. 02-13-00006-CV, 2014 WL 69889 (Tex. App. – Fort Worth, Jan. 9, 2014, no pet.) (mem. op.). In this case, Palazzolo was an assistant principal at Arlington Heights High School. Between late 2009 and 2010 Palazzolo reported that district employees falsified attendance records, misused booster funds and other improprieties including inappropriate sexual relationships. Subsequent to making this report Palazzolo received an evaluation issued by the principal of Arlington Heights High School that Palazzolo needed improvement in a particular

aspect of his position. Also, Palazzolo learned that he had been reassigned from Arlington Heights to a different school.

Palazzolo utilized the District's grievance procedure and filed a grievance alleging that he had been reassigned because he had made those reports. At the first stage of the grievance he requested:

1. His reassignment to a different school be revoked;
2. To be paid the same salary he was paid at Arlington Heights;
3. To have his evaluation report voided;
4. To receive no future threats;
5. To be assured of no future retaliation; and
6. To enter into a two year contract.

The hearing officer concluded that Palazzolo had not been retaliated against but amended his evaluation so that he met or exceeded performance in all areas, explained that his pay rate would be the same, and that he would be treated fairly. However, Palazzolo was transferred to Western Hills High School and he did not receive a new two year contract.

Palazzolo pursued his grievance further and filed a Level II grievance and finally filed a Level III grievance. At the Level III grievance Palazzolo said that he was fine with his amended evaluation and was fine with being at either Western Hills or Arlington Heights High Schools. Since Palazzolo had no further requests the Board took no action on his claims of whistleblower. Essentially, Palazzolo indicated to the Board that all his issues had been resolved.

13

However, two weeks later Palazzolo sued the District under the Whistleblower Act alleging that the District retaliated against him for making the reports by (1) transferring him and (2) giving him a negative evaluation. The District filed a Plea to the Jurisdiction as to his claims. The District argued that by informing the Board that he was fine with the transfer and the amended evaluation that he circumvented the purpose of the Whistleblower Act's administrative initiation requirement and thus could not file suit.

The Court of Appeals agreed with the District and held that since Palazzolo told the board he was fine with the transfer and the amended evaluation, he could not file suit regarding those issues as it circumvents the grievance process. The Court of Appeals held that:

> Palazzolo effectively led the Board to believe that as to those complaints, there was no further investigation that needed to occur and, equally important, no need to correct any potential misconduct allegedly committed by FWISD….Palazzolo actively circumvented FWISD's efforts to redress the complained-of conduct by advising the Board that he had no dispute with his transfer and appraisal report. *Palazzolo Id*. at *5.

The Court of Appeals held that the trial court did not have jurisdiction as to Palazzolo's lawsuit as Palazzolo did not properly initiate the grievance process.

The facts in this case are similar. In both grievances it is undisputed that Plaintiff received all the relief he requested during the grievance process. In the first grievance he asked for his work permit to be reinstated and such was granted.

14

In the second grievance he asked that the letter of reprimand be rescinded and that was granted. Just as in *Palazzolo*, the Plaintiff led the Assistant City Managers who decided his grievances to believe that since he received the relief he requested, everything was fine. To allow Plaintiff to make demands in a subsequent lawsuit that were not presented in the grievance process would circumvent the process and such is not allowed as shown by *Palazzolo* and the cases cited therein.

### *Aguilar v. Socorro Indep. School District*

Another case that discusses the importance of presenting claims in the grievance process is *Aguilar v. Socorro Indep. School District,* 296 S.W.3d 785 (Tex. App. – El Paso, no pet.). In *Aguilar,* the employee's attorney filed a grievance on behalf of the employee and also attended the arbitration hearing pursuant to the district's grievance procedures. However, the attorney refused to participate in the hearing. He refused to provide information when requested or present information that would allow the arbitrator to reach a decision. In short, he filed a grievance but did not allow the process to proceed. The court held that the actions by the attorney thwarted the process and circumvented the purpose of Section 554.006. The employer did not have an opportunity to correct any erroneous actions and, as such, the employee could not file suit.

Likewise, the City of Lubbock did not get the opportunity to address the damage issues subsequently raised by the Plaintiff during the grievance process. Since the Plaintiff did not present these issues to the City during the grievance process, he cannot sue the City in court and seek these damages.

**Plaintiff must utilize the City's Grievance Process in making Claims**

Plaintiff does not assert that he presented a demand for attorney's fees, mental anguish, lost wages or any other relief in the grievance process in either of his grievances. However, he contends he satisfied the requirements of Section 554.006(a) by filing a claim with the City Secretary on December 19, 2013, and putting the City on notice of his monetary damages and other requests. Plaintiff is incorrect as he has to bring these claims to the attention of the City during the grievance process; not by filing a claim with the City Secretary. "A party who brings suit based entirely on a statutory cause of action must comply with the statutory prerequisites, which are mandatory and exclusive." *Farrar*, 933 S.W.2d at 769. Section 554.006(a) of the Texas Government Code requires that the employee utilize the entity's grievance process before filing suit; not some other procedure such as the City's general claims process.

Other cases have demonstrated that using different procedures, outside the entity's grievance procedures, will not suffice to comply with Section 554.006(a)'s initiation requirements. In *West Houston Charter School Alliance v. Pickering*,

16

No. 01-10-00289-CV, 2011 WL 3612288 (Tex. App. – Houston[1st Dist.], August 18, 2011, no pet.) (mem. op.), Pickering, the school's administrator, filed a whistleblower suit against the school. The school asserted that she was barred from filing the suit as she did not properly initiate a grievance before filing the suit as required by Section 554.006(a). Pickering contended that she complied with Section 554.006(a) because she sent a letter to her employer voicing her complaints that she wished to appeal the school's decision through a hearing before an impartial hearing officer or panel. The school responded by informing Pickering that the school had a grievance process and she could initiate a grievance pursuant to that procedure. Pickering did nothing further until she filed suit.

Even though the employee sent the letter declaring that she wished to appeal the school's decision, the court held that she did not comply with Section 554.006(a) because she never filed a grievance pursuant to the school's procedures. "Merely complaining of the school board's action, without attempting to comply with the grievance procedure provided by the school, does not satisfy section 554.006's requirement that a claimant initiate a grievance or appeal before filing suit." *Pickering, Id. at \*8*.

The case of *Ruiz v. Austin Indep. School District*, No. 03-02-00798-CV, 2004 WL 1171666 (Tex. App. – Austin May 27, 2004, no pet.) (mem. op.), held similarly. In *Ruiz,* the Ruizes claimed that they had satisfied the requirements of

17

Section 554.006(a) when they met with the director of employee relations and the school district's attorney and raised their concerns regarding retaliation under the Whistleblower Act. The court held that raising these concerns in a meeting, without filing a formal grievance pursuant to the district's grievance procedures, did not satisfy the initiation requirement. As such, they were precluded from filing suit. *Id.* at *7.

These cases show that in order to satisfy section 554.006(a), the employee must raise their concerns pursuant to the grievance process provided by the employer. They cannot satisfy the initiation requirement by giving notice in some other way. As the Texas Supreme Court said in 2005, "We also decline to adopt [the view] that administrative procedures can be ignored if a creative applicant convinces a court that some other procedure was just as good." *Van Indep. School District v. McCarty*, 165 S.W.3d 351, 353-354 (Tex. 2005). Making demands in a claim filed with the City does not satisfy the initiation requirement of Section 554.006.

**Claim Filed with City Secretary should not be considered a Grievance**

It is undisputed that Plaintiff did not request monetary damages from the City until he filed the claim with the City Secretary on December 19, 2013. (See Plaintiff's claim filed at CR 99). This claim is not in compliance with the City's established grievance procedures and should not be considered a grievance. (See

18

the City's Grievance Procedures marked as Exhibit 11 at RR Vol. III, Apx. 5). First, the claim demanding monetary damages was not filed within ten (10) business days of the incident as required by Section 5.05A of the grievance procedures. Second, the claim for monetary damages was not presented to the Human Resources Department as required by Section 5.05B nor was the grievance placed on the "Employee Grievance Form" provided by the Human Resources Department. Plaintiff in no way contemplated that he was filing a grievance when he filed the claim with the City Secretary. Plaintiff had already filed two (2) grievances regarding these issues thereby demonstrating that he knew the proper procedure for doing so. Since Plaintiff never properly initiated a grievance with the City regarding his claim for monetary damages he is precluded from filing this lawsuit.

## *Dallas County v. Gonzales* is Distinguishable from the Facts in this Case since Gonzales did not Receive all the Relief he Requested in his Grievance

Plaintiff cites the case of *Dallas County v. Gonzales*, 183 S.W.3d 94 (Tex.App. – Dallas 2006, pet. denied), to support his position that he can file suit and collect additional damages. However, the *Gonzales* case is distinguishable from the facts in the case at bar. The employee in *Gonzales* did not receive all the relief he requested in his grievance. The court noted that the employee asked for attorney's fees and expenses in the grievance but did not succeed on those claims.

As such, he could file suit to recover the attorney's fees and expenses, but only because he filed a grievance seeking those claims and was unsuccessful. The court distinguished another case cited by Dallas County, *Carter v. Castillo*, No. 3:99-CV-0047-X, 2001 U.S. Dist. LEXIS 1264 (N.D. Tex. Feb. 7, 2001), saying that the *Carter* case was distinguishable and said, "In that case, the employee filed a grievance and recovered all the relief he requested in the grievance for the adverse personnel action he established." *Gonzales, Id*. at 102, FN 1. The court indicated that if the employee receives all the relief he requests in the grievance he would not be able to file suit requesting any further relief.

## Conclusion as to Issue of Law # 1

Plaintiff is precluded from filing this whistleblower lawsuit seeking monetary damages since he did not request these damages through the City's grievance process. He received all the relief he requested in each of his grievances. As such, the trial court has no jurisdiction over the Plaintiff's claims and the Plaintiff's suit should be dismissed.

## ISSUE OF LAW # 2

## PLAINTIFF CANNOT SUE THE CITY REGARDING THE SUSEPNSION OF HIS OUTSIDE WORK PERMIT SINCE HE DID NOT FILE SUIT WITHIN THE 90 DAY LIMITATIONS PERIOD

As to the Plaintiff's claims for damages relating to the suspension of his outside work permit, Plaintiff did not file the suit within the time period prescribed by the statute. Section 554.005 of the Whistleblower Act states:

> Except as provided by section 554.006, a public employee who seeks relief under this chapter must sue not later than the 90th day after the date on which the alleged violation of this chapter:
> (1) occurred; or
> (2) was discovered by the employee through reasonable diligence.

Section 554.006(c) tolls the 90 days while the employee is utilizing the entity's grievance process and says:

> Time used by the employee in acting under the grievance procedure or appeals procedures is excluded……from the period established by Section 554.005.

Plaintiff's outside work permit was suspended on either July 11 or July 12, 2013 (CR 59 1st paragraph, CR 85 3rd paragraph). While the record is not clear as to when Plaintiff filed his initial grievance, the record is clear that he filed his final grievance regarding this issue on August 12, 2013 (CR 48, Apx. 6) and that this issue was finally decided in his favor on August 29, 2013 (CR 53, Apx. 7).

While 554.006 tolls the 90 day period during the time the employee utilizes the grievance process, the grievance was concluded on August 29, 2013 when the

21

Assistant City Manager ordered that his outside work permit be reinstated (CR 53, Apx. 7).  Suit was not filed in this case until January 18, 2014 (CR 5).  This was well after the limitations period which would have run in late November.

**Continuing Violation Doctrine is Inapplicable**

Plaintiff attempts to avoid the 90 day limitations period by consolidating the two actions together, the suspension of the work permit and the letter of reprimand, and contending that the limitations period began running from the date the letter of reprimand was issued to the Plaintiff.  Plaintiff attempts to treat these two acts as a single event and invoke the continuing violation doctrine to avoid the limitations problem relating to the suspension of the work permit.  However, the continuing violation doctrine is inapplicable as the issues are clearly separate as shown by the fact that two (2) separate grievances were filed regarding two (2) separate and distinct actions.

The continuing violation doctrine applies when an unlawful employment practice manifests itself over time, rather than discrete acts.  *Davis v. Autonation USA Corp.*, 226 S.W.3d 487, 493 (Tex. App. – Houston [1st Dist.] 2006, no pet.); *Santi v. University of Texas Health Science Center at Houston*, 312 S.W.3d 800, 804-805 (Tex.App. – Houston [1st Dist.] 2009, no pet.).  However, the continuing violation doctrine does not apply when dealing with discrete acts.  "For example, a claim of hostile work environment is a continuing violation, while 'termination,

failure to promote, denial of transfer, or refusal to hire,' are discrete acts." *Santi*, 312 S.W.3d at 805; *citing National Railroad Passenger Corp., v. Morgan,* 536 U.S. 101, 114, 122 S.Ct. 2061, 2073, 153 L.Ed.2d 106 (2002). "The 'focus is on what event should, in fairness and logic, have alerted the average layperson to protect his or her rights.'" *City of Houston v. Smith*, No. 01-13-00241-CV, 2014 WL 768330 (Tex. App. – Houston [1st Dist.] Feb. 25, 2014, no pet.) (mem. op.); *citing Autonation*, 226 S.W.3d at 493.

It is easy to see why the continuing violation doctrine does not apply in this instance. The act of suspending the Plaintiff's outside work permit is an easily identifiable and discrete act which alerted the Plaintiff that he needed to do something to protect his rights. Further, it's easy to see that the Plaintiff was alerted because the Plaintiff did, in fact, file a grievance to protect his rights by requesting reinstatement of his work permit. Since the continuing violation doctrine does not apply in this case, the Plaintiff cannot sue the City for any damages relating to the suspension of his outside work permit.

## ISSUE OF LAW # 3

### CITY WAS NOT PUT ON NOTICE THAT PLAINTIFF HAD A WHISTLEBLOWER CLAIM AS IT RELATES TO THE SUSPENSION OF HIS OUTSIDE WORK PERMIT

The Plaintiff also did not put the City on notice that he had a whistleblower claim during his grievance process. In *Tarrant County v. McQuary*, 310 S.W.3d

23

170 (Tex. App. – Fort Worth 2010, pet. denied), the court held that an employee must put the entity on notice that the employee is making a claim under the whistleblower statute to invoke the jurisdiction of the court.

> A government employee must provide reasonable notice that she is making a Whistleblower Act claim in the initiation of the grievance or appeal procedures related to the suspension or termination or employment or adverse personnel action. *McQuary*, 310 S.W.3d at 174.

In *McQuary*, an employee purported to report violations of law to one of the deputies at the Sheriff's Office. However, the employee, upon her termination, while discussing issues relating to her termination, never mentioned that she thought she was being terminated because she had made a report of illegal activity to the Sheriff's Office.

> …the only complaints McQuary made in the documents submitted to the sheriff were that she had not received any evaluations and that Chief Knowles had told her to disregard her job description. The overall subject and tenor of the communications was that she would like to continue her employment with the department…*McQuary, Id.* at 179.

The court held that since the employee did not put the entity on notice that, during the grievance process, the adverse employment action taken against her was because she reported illegal activity that she could not sue under the Whistleblower Act.

In this case, the Plaintiff did not put the entity on notice that he had a whistleblower claim during the grievance process regarding his first grievance

24

pertaining to the suspension of his work permit. In that grievance all he reports is that he believes that suspending his outside work permit during the investigation is excessive (CR 49, Apx. 6). He never alleges that he had a whistleblower claim or that the actions by the Chief of Police were taken as a result of him reporting illegal activity. The City's Director of Human Resources, Leisa Hutcheson, was at the grievance hearing and testified that Plaintiff never mentioned that he had a whistleblower claim (CR 64).

This statutory prerequisite, like other prerequisites under this statute, are jurisdictional. "Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity." *Palazzolo*, 2014 WL 69889, at *3; citing *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 510-11 (Tex. 2012). Since the Plaintiff did not put the City on notice that he had a whistleblower claim during the grievance process regarding his outside work permit, he cannot file suit against the City under the Whistleblower Act relating to his outside work permit.

## ISSUE OF LAW # 4

### PLAINTIFF HAS NO PRIVATE RIGHT OF ACTION TO SEEK A $15,000 CIVIL PENALTY AGAINST THE CHIEF OF POLICE

In addition to his claims for monetary relief, the Plaintiff seeks a statutory $15,000 penalty against the Chief of Police pursuant to 554.008 of the Whistleblower Act. However, there is no private right of action under this statute,

25

as the penalty can only be sought by the Attorney General's Office or an appropriate prosecuting attorney. *Alejandro v. Robstown Indep. School District*, 131 S.W.3d 663, 668 (Tex. App. – Corpus Christi 2004, no pet.). "…[T]he statutory right to sue and collect a civil penalty under this section belongs to the 'attorney general or appropriate prosecuting attorney,' not a private party…" *Weslaco Indep. School District v. Perez*, No. 13-12-00590-CV, 2013 WL 3894970 (Tex. App. – Corpus Christi July 25, 2013, no pet.) (mem. op.). There is no private right of action to sue the Chief of Police under the Whistleblower Act and, therefore, this claim should be dismissed as well.

## PRAYER

WHEREFORE, premises considered, the City of Lubbock prays that the trial court's Order be reversed and that this case be dismissed.

Respectfully submitted,

CITY OF LUBBOCK, TEXAS

JEFF HARTSELL
ASSISTANT CITY ATTORNEY
STATE BAR NO. 09170275
jhartsell@mylubbock.us
P.O. Box 2000
Lubbock, Texas 79457
(806) 775-2222
(806) 775-3307 FAX

BY*: /s/ JEFF HARTSELL*

26

## CERTIFICATE OF COMPLIANCE

Pursuant to Tex.R.App.P. 9.4(i)(3), undersigned counsel certifies that this brief contains 5,657 words printed in a proportionally spaced typeface.

*/s/ Jeff Hartsell*
JEFF HARTSELL

## CERTIFICATE OF SERVICE

On the 23rd day of April, 2015, a copy of the foregoing Appellant's Brief was served on counsel for Appellee as follows:

Phil A. Johnson
Jenkins, Wagnon & Young, P.C.
P O Box 420
Lubbock, Texas  79408-0420
806-796-7351
Fax 806-771-8755
State Bar No. 24056820
pjohnson@jwylaw.com

*/s/ Jeff Hartsell*
JEFF HARTSELL

# APPENDIX

1       Order Denying Defendant's Plea to the Jurisdiction

2       Government Code § 544.005

3       Government Code § 544.006

4       Government Code § 544.008

5       Grievance Procedures of the City of Lubbock

6       Employee Grievance dated August 12, 2013

7       Hearing Findings dated August 29, 2013

8       Letter of Reprimand dated September 25, 2013

9       Employee Grievance dated September 27, 2013

10     Hearing Findings dated October 23, 2013

11     *Fort Worth Independent School District v. Palazzolo*

12     *Aguilar v. Socorro Independent School District*

13     *West Houston Charter School Alliance v. Pickering*

14     *Ruiz v. Austin Independent School District*

15     *Dallas County v. Gonzales*

16     *Santi v. University of Texas Health Science Center at Houston*

17     *City of Houston v. Smith*

18     *Alejandro v. Robstown Independent School District*

19     *Weslaco Independent School District v. Perez*

# APPENDIX
# 1

NO. 2014-509,907

RHR

| LAZARO WALK | § | IN THE 72ND JUDICIAL |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | DISTRICT COURT OF |
| | § | |
| THE CITY OF LUBBOCK | § | |
| | § | |
| Defendant | § | LUBBOCK COUNTY, TEXAS |

## ORDER DENYING DEFENDANT'S PLEA TO THE JURISDICTION

On January 30, 2015, the Court considered the Defendant's Plea to the Jurisdiction. After the Court considered the pleadings, motions, responses, affidavits, evidence, and arguments of counsel for Plaintiff and Defendant, it is hereby

ORDERED that Defendant's Plea to the Jurisdiction is DENIED.

All relief not granted herein is denied.

SIGNED on February 18, 2015 _____.

/s/ Ruben Reyes
_____
JUDGE PRESIDING

SCANNED

ORDER DENYING PLEA TO THE JURISDICTION;    WALCK v. CITY OF LUBBOCK

# APPENDIX
# 2

**c**

**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness
   Government Code(Refs & Annos)
      Title 5. Open Government; Ethics (Refs & Annos)
         ⁿ⧠ Subtitle A. Open Government
            ⁿ⧠ Chapter 554. Protection for Reporting Violations of Law (Refs & Annos)
               → → **§ 554. 005. Limitation Period**

Except as provided by Section 554.006, a public employee who seeks relief under this chapter must sue not later than the 90th day after the date on which the alleged violation of this chapter:

(1) occurred; or

(2) was discovered by the employee through reasonable diligence.

CREDIT(S)

Added by Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993.

Current through the end of the 2013 Third Called Session of the 83rd Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

# APPENDIX
# 3

Westlaw.

C

**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness
  Government Code (Refs & Annos)
    Title 5. Open Government; Ethics (Refs & Annos)
      ᴿ▤ Subtitle A. Open Government
        ᴿ▤ Chapter 554. Protection for Reporting Violations of Law (Refs & Annos)
          ➡➡ **§ 554.006. Use of Grievance or Appeal Procedures**

(a) A public employee must initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action before suing under this chapter.

(b) The employee must invoke the applicable grievance or appeal procedures not later than the 90th day after the date on which the alleged violation of this chapter:

(1) occurred; or

(2) was discovered by the employee through reasonable diligence.

(c) Time used by the employee in acting under the grievance or appeal procedures is excluded, except as provided by Subsection (d), from the period established by Section 554.005.

(d) If a final decision is not rendered before the 61st day after the date procedures are initiated under Subsection (a), the employee may elect to:

(1) exhaust the applicable procedures under Subsection (a), in which event the employee must sue not later than the 30th day after the date those procedures are exhausted to obtain relief under this chapter; or

(2) terminate procedures under Subsection (a), in which event the employee must sue within the time remaining under Section 554.005 to obtain relief under this chapter.

CREDIT(S)

Added by Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993. Amended by Acts 1995, 74th Leg., ch. 721, § 6, eff. June 15, 1995.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Current through the end of the 2013 Third Called Session of the 83rd Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

# APPENDIX
# 4

C

**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness
  Government Code(Refs & Annos)
    Title 5. Open Government; Ethics (Refs & Annos)
      Subtitle A. Open Government
        Chapter 554. Protection for Reporting Violations of Law (Refs & Annos)
          →→ § 554. 008. Civil Penalty

(a) A supervisor who in violation of this chapter suspends or terminates the employment of a public employee or takes an adverse personnel action against the employee is liable for a civil penalty not to exceed $15,000.

(b) The attorney general or appropriate prosecuting attorney may sue to collect a civil penalty under this section.

(c) A civil penalty collected under this section shall be deposited in the state treasury.

(d) A civil penalty assessed under this section shall be paid by the supervisor and may not be paid by the employing governmental entity.

(e) The personal liability of a supervisor or other individual under this chapter is limited to the civil penalty that may be assessed under this section.

CREDIT(S)

Added by Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993. Amended by Acts 1995, 74th Leg., ch. 721, § 8, eff. June 15, 1995.

Current through the end of the 2013 Third Called Session of the 83rd Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

# APPENDIX
# 5

Civil service employees may be suspended for up to fifteen (15) days by the Chief.

Except for major misconduct violations, salaried exempt or salaried non-exempt employees must be suspended in accordance with FLSA salary test for salaried employees with a reduction in pay to one half the normal pay or without pay for an entire workweek. The Supervisor also has the option of docking vacation days from salaried employees as an alternate form of discipline.

### D.    Termination

Termination is the final step of the discipline process, or it may be the first step if the situation warrants it. Prior to implementing the termination, the employee shall be given notice of the reason(s) for the termination, and at least 48 hours to give a good and sufficient explanation in writing as to why he/she should not be terminated. The employee must be notified of this opportunity to respond in the Employment Status Memo. Civil service employees may be subject to additional procedural requirements.

### E.    Administrative Leave

Under justifiable circumstances a Supervisor may, subject to the approval of the Director of Human Resources, place an employee on administrative leave with or without pay. Such circumstances may be, but are not limited to, completion of pending criminal or administrative investigations.

## 5.05    Grievance Procedures

**Concerns or Complaints** – Pursuant to the City Charter, if an employee has concerns or complaints concerning their work or work environment, the employee must follow this grievance procedure for resolution of their complaint.

**Definition of a Grievance** – A disagreement over a specific formal disciplinary action taken: reprimand, suspension, involuntary demotion, termination and/or all other unresolved complaints, such as general counseling sessions, harassment from Supervisors or co-workers, wages, hours of work, conditions of work, performance evaluations or other general complaints, that are written on an official grievance form.

### A.    General Policy

- Although the City is an "at will" employer, it is the policy of the City to seek fair, just, and prompt solutions, when possible, to grievances of employees arising from the employment relationship.

- Employees are encouraged to resolve problems with their immediate Supervisor before utilizing this procedure. Grievance matters should be given prompt attention and should be resolved informally at the lowest level possible in the organization.

- In accordance with provisions of the Government Code Chapter 617, City "employees may present grievances concerning wages, hours of work, or



conditions of work individually or through a representative that does not claim the "right to strike". These provisions also pertain to Civil Service employees to the extent that they are not superseded by state law or Civil Service rules. However, suspensions and terminations (indefinite suspensions) for Civil Service are appealed through the provision of Civil Service law.

- Employees are allowed to present grievances without retribution. Employees have the right to be represented and to call witnesses to present their grievance. However, the filing of a grievance shall not affect the City's ability to pursue disciplinary or separation actions.

- In order to resolve complaints timely for an effective resolution, grievances cannot be brought on incidents or situations that are more than ten (10) business days old. Timelines will be strictly construed.

- All time limits set forth in this policy may be extended with the mutual consent of the parties involved. Without mutual consent, the failure of the employee to process the grievance in a timely manner to the next level shall constitute a withdrawal of the grievance, and the failure of management personnel to timely respond to a grievance shall constitute authorization for the employee to process the grievance to the next step, but shall not be an affirmative finding of the issue(s).

- Employees who have any questions about the grievance procedure are encouraged to contact the Human Resources Department for assistance.

- The City reserves the right to interpret, change, modify, amend, or rescind any or all of these policies in whole or in part at any time.

- Employees may present grievances individually or submit joint grievances. Joint grievances should be submitted at the lowest possible level common to all employees in the group.

- An employee's failure to appear at their scheduled Grievance Hearing shall constitute a withdrawal of the grievance.

**B.**   **Procedure for Grievances**

Employees considering a grievance regarding the immediate Supervisor should first discuss it with their immediate Supervisor to informally resolve the problem. If the problem is not resolved satisfactorily with the immediate Supervisor, then the grievance policy should be implemented

All grievances shall be processed through four steps, at whatever levels are appropriate, to end with the City Manager.

- **Step I**

    The grievance should be put on the Employee Grievance Form and presented to the Human Resources Department. Human Resources will

create an employee grievance file and forward a copy to the next person in the chain of command, as the "intermediate" Supervisor. The "intermediate" Supervisor shall notify the employee of intent to hold a grievance meeting. Once the grievance has been heard, the employee shall be notified in writing of the decision rendered within ten (10) business days. Directors (inclusive of Fire and Police Chiefs) have the discretion to determine which layers of supervision shall be represented.

- **Step II – Director or Designee (Inclusive of Fire Chief and Police Chief)**

  If the employee is dissatisfied with the decision at Step I, Step II is implemented. Employees must put their complaint in writing on the appropriate grievance form and present it to Human Resource Department within ten (10) business days of receiving the decision of Step I. The Director shall hold a grievance meeting and shall hear both the employee's and Supervisor's position on the complaint. If there is evidence for consideration, either party may submit it to the Director. The Director may make an independent investigation to aid in his/her decision. A decision shall be rendered within ten (10) business days from the date that the grievance meeting was held.

- **Step III – Deputy or Assistant City Manager**

  If a grievance is not satisfactorily resolved in Step II, the grievance may be forwarded in writing to Human Resource Department within ten (10) business days of receipt of the decision in Step II. The Deputy or Assistant City Manager shall conduct a meeting on the matter. A decision shall be rendered in writing within ten (10) business days from the date the grievance meeting was held.

- **Step IV – City Manager**

  If a grievance is not satisfactorily resolved in Step III, the grievance may be forwarded in writing to the Human Resource Department within ten (10) business days of receipt of the decision in Step III. The City Manager or designee should conduct a meeting on the matter and shall render a decision in writing within ten (10) business days from the date the grievance meeting was held. This decision is final and shall exhaust any and all administrative processes relating to the employee's original grievance. The original of the employee's grievance, the Director's response, the Assistant City Manager's response, and the City Manager's or his/her designee's final ruling should be forwarded to the Human Resources Department and shall be filed in the employee's grievance file.

## 5.06 Complaints of Discrimination

Any employee, who feels that he or she has been discriminated against on the basis of race, sex (including sexual harassment), religion, national origin, veteran's status,

# APPENDIX
# 6

**RECEIVED**

AUG 12 2013

**HUMAN RESOURCES**



city of
**lubbock**
TEXAS

## EMPLOYEE GRIEVANCE FORM

Complete this form in ink. Make two additional copies. Give the original to your supervisor, keep one copy for your self and take one copy to Human Resources. You may request to have your copy date stamped.

Employee Name: _LAZ WALCK_     Department: _POLICE · INVESTIGATIONS_
                 Please Print

Job Title: _DETECTIVE_     Supervisor's Name: _CHAD ARMELLETTE_

Hours/days of Work: _M-F 8-5_     Phone Number: _239-3680_

Provide a clear and concise statement of your grievance. (Attach sheets if needed.) _SEE ATTACHED_

What Applicable policy do you feel has been violated?
_SEE ATTACHED_

Date of alleged violation: _08/09/13_

What do you want to happen as a result of your grievance? (Attach sheet if needed.) _SEE ATTACHED_

I hereby certify that the statements made by me to the foregoing are true and correct.

Signature: _Laz Walck_     Date Filed: _08/12/13_

This is an appeals request in reference to Chief Ellis' decision to continue having my outside employment permit suspended until the conclusion of the administrative investigation.

I have been working security at IHOP restaurant for over 9 years. I work every Thursday, Friday and Saturday night from 11pm until 4am. IHOP pays me $30.00 an hour for being present. I make $420 every weekend working security at IHOP. As of August 12, 2013 I have lost $1,980.00 not being able to work my outside overtime.

In the grievance hearing on July 29th 2013 with Chief Ellis, Chief Ellis advised me of LPD policy that police related outside employment is a privilege and not a right. I have read and understand LPD policy and have had the privilege of working outside overtime the last 9 years. Chief Ellis stated in the grievance hearing I had repeatedly been insubordinate, which is a serious allegation, and I told Chief Ellis that I would never intentionally disobey an order. Furthermore, I also stated that I was willing to submit to a polygraph test to prove I never received the order that I was allegedly given, instructing me that I could not speak to any City Official without permission from my chain of command.

This investigation simply started over a class project I have been trying to complete for my Master's Degree in Public Administration at Texas Tech University, and I am not under a criminal investigation and there are no allegations that I committed any crime. There have been officers who have been under internal investigations for much more serious offenses who were still able to work their outside overtime. I do not have a history of being insubordinate with my chain of command, and I have not had any work related problems or issues with working overtime at IHOP in the last 9 years. I am suffering a severe financial hardship not being able to work my overtime at IHOP restaurant, and I believe having my outside overtime work permit taken away from me is an excessive form of punishment for the allegations brought against me.



**city of lubbock**
TEXAS

Police Department

DATE        August 9, 2013

TO          Corporal Laz Walck

FROM        Chief Roger Ellis

COPIES      Wayne Bullock, Assistant Chief
            Leisa Hutcheson, Director of Human Resources
            Human Resources Personnel File
            Department File

SUBJECT     Grievance Response

On July 29, 2013, a grievance hearing was conducted in the Police Administration Conference Room. Those in attendance in the grievance hearing with us were Liesa Hutcheson of Human Resources and Mitch Satterwhite of the City Attorney's Office.

I said that I had read the grievance and asked you to go over what your grievance was about. You said your grievance was regarding Chief Wayne Bullock suspending your outside employment permit for law enforcement-related duties at International House of Pancakes. You also stated the following:

- You were under an administrative investigation regarding an email you sent and that it was not work-related or related to your job performance.
- You were moved to person crimes working inside instead of your normal investigations duties in property crimes.
- You have lost $1,100 in wages due to having the outside employment suspended.
- You believed this was done as a punishment because you had sent a memo requesting to know what you were under investigation for and being moved back to your investigations position.
- This was all done while the administrative investigation had not been completed yet.

I responded verbally to some of these concerns and will respond to your grievance more completely in this memo. The administrative investigation will be addressed separately from this grievance process. You were moved to a desk job because of the allegation that you had been insubordinate to your supervisors and not following their instructions. You have responded by sending an additional email to City Council, sending a memo to your chain of command

1

requesting to know why you have been given another assignment and what you were being investigated for.

Although misconduct does not happen often, it is common for officers to have their outside employment permit suspended and placed on a desk job when there is a serious allegation of policy violations. Chief Bullock had approached me with suspending your outside employment permit and I agreed with him given the circumstances. In this case the decision was not a punishment, but a consequence due to an ongoing administrative investigation.

During the hearing I explained LPD policy that police related outside employment is a privilege, as stated in Chapter 14 of Lubbock Police Department policy. You are not prohibited from outside employment that is not police related and that falls within the parameters of policy. Chief Bullock was following policy and using good discretion by suspending your outside employment while an administrative investigation is underway.

Chief Bullock's decision to suspend your outside employment permit until further notice will stand. A decision will be made regarding your outside employment at the conclusion of the administrative investigation.

# APPENDIX
# 7


city of
**lubbock**
TEXAS

RECEIVED
SEP 03 2013
HUMAN RESOURCES

**DATE**        August 29, 2013

**TO**          Corporal Laz Walck

**FROM**        Quincy White, Assistant City Manager    *Q. White*

**COPIES**      Roger Ellis, Chief of Police
                Phillip Johnson, Attorney at Law
                Leisa Hutcheson, Director of Human Resources
                Mitch Satterwhite, Assistant City Attorney

**SUBJECT**     Grievance Hearing

On Monday, August 26, 2013, at 9:00 a. m., a grievance hearing was conducted regarding the suspension of your outside work permit from the Lubbock Police Department

Present at the hearing were the following individuals:
Phillip Johnson, Attorney at Law
Leisa Hutcheson – Director of Human Resources
Mitch Sattterwhite – Assistant City Attorney
Roger Ellis, Chief of Police

After considering testimony (oral & written) received from you and others, the following are my findings:

- Your request to the City Manager to discuss your MPA student project was within your rights as a citizen and unrelated to your employment as either an LPD officer or your outside employment as a security officer; and
- Likewise, your email to the City Council violated no directive given to you by LPD and was a legitimate exercise of your rights to contact elected officials.

It is my determination that there was no basis or justification to suspend your outside work permit; therefore, I am directing the Lubbock Police Department to reinstate your outside work permit immediately.

My decision in this matter is final and will exhaust the City of Lubbock administrative process.

Thank you for bringing this matter to my attention and for your professional behavior during the hearing.

# APPENDIX
# 8



# city of lubbock
## TEXAS

DATE      September 25, 2013

TO        Laz Walck, Corporal

FROM     Chad Brouillette, Sergeant

SUBJECT   Letter of Reprimand


On or about July 1, 2013, you requested a meeting with the City Manager in reference to a school related project. Your request was sent to Chief Ellis and the request for an interview was denied. Per instructions by Chief Ellis you were ordered to follow chain of command when requesting to speak to the City Manager. You sent an email to the Mayer and City Council Members questioning this action. A Formal Internal Affairs Investigation was ordered regarding this incident. During the course of the investigation and by your own admissions, it was revealed that you were working on school related projects, scheduling interviews for school related projects and sending emails related to school related projects while on duty and using city equipment without permission. A letter of reprimand has been ordered regarding your actions.

Your actions violated the following policies:

**LPD Procure Manual**
**R1.02.001 - Duty to know and Follow**
**R1.03.005 - Bearing/Alertness**

**City of Lubbock Employee Policy Manual**
**5.03(C) - Indifference Toward Work**
**5.03(D) - Dereliction of Duty**
**5.03 (J) - Misuse of City Equipment**
**5.03(O) – Use of Computers, Cell Phones or Long Distance**

Should this behavior continue, or should you violate any other policies or procedures, further disciplinary action, up to and including termination may be taken.

If you wish to appeal this reprimand, you may do so according to the Grievance Procedures outlined in the Employee Policy Manual. The grievance must be in writing and submitted within 10 working days of receipt of this letter.

# APPENDIX
# 9



# city of lubbock
### TEXAS

## EMPLOYEE GRIEVANCE FORM

Complete this form in ink. Make two additional copies. Give the original to your supervisor, keep one copy for your self and take one copy to Human Resources. You may request to have your copy date stamped.

Employee Name: _JAZ WALLK_    Department: _POLICE INVESTIGATIONS_

Please Print

Job Title: _DETECTIVE_    Supervisor's Name: _SGT. CHAD PROULLETTE_

Hours/days of Work: _8-5 M-F_    Phone Number: _775-2434_

Provide a clear and concise statement of your grievance. (Attach sheets if needed.) _SEE ATTACHED_

What Applicable policy do you feel has been violated?
_SEE ATTACHED_

Date of alleged violation: _09/25/13_

What do you want to happen as a result of your grievance? (Attach sheet if needed.) _SEE ATTACHED_

I hereby certify that the statements made by me to the foregoing are true and correct.

Signature: _Jaz Wall_    Date Filed: _09/27/13_

On July 11th, 2013 I was advised I was under an internal investigation for being insubordinate and breaking the chain of command for trying to work on a school project. I was moved to Persons Crimes to assist their Administrative Assistants and my outside work permit was revoked pending the internal investigation. On July 17th I was given a list of possible policy violations I violated from the Lubbock Policy Procedure Manual and the City of Lubbock Policy Manuel by Lieutenant Nathan White and Sergeant Larry Manale in Internal Affairs. (The listed violations on my Letter of Reprimand were on that list.) Also on July 17th I was ordered to answer questions in reference to being insubordinate and breaking the chain of command. I was never ordered to answer any questions about the other listed possible policy violations on this date.

On 08/26/13 I had a grievance hearing with the Assistant City Manager, Quincy White after my first grievance hearing decision was turned down by Chief Ellis in reference to my outside work permit being revoked pending the internal investigation. Quincy White stated in his decision August 29th, 2013 "It is my determination that there was no basis or justification to suspend your outside work permit." Quincy White ordered the Lubbock Police Department to reinstate my outside work permit effective immediately. Quincy White also stated in his decision my request to talk with the City Manager and the email I sent to the Mayor and City Council was my right as a citizen and I did not violate any directive given to me by the Lubbock Police Department.

On September 3rd, 2013 I was ordered by Sgt. Manale and Lt. White in Internal Affairs to answer more questions in reference to if I have ever worked on school work while on duty and if I have used City equipment to do my school work. This was the first time since the investigation started that I was asked these questions even though the possible violations were on the original list of charges I received on July 17th, 2013. I answered the questions truthfully and answered I have done school work while on duty and I have used my City computer and City phone for school purposes while on breaks and during down time.

On September 25th, 2013 I was given a letter of reprimand for violating LPD and City Employee Policy Manual. The Letter of Reprimand is attached to this grievance.

I have been in the MPA program at Texas Tech University for 3 years. I have read text books in my office during down time where I am waiting for victims, witnesses, or suspects to call me with my door open and have had supervisors come into my office and seen me with a text book open and have never told me not to read for school at work. I have never shut my door or put my phone on forward. I have always been available for any assignments or cases given to me. I have not or never will derelict my duties as a police officer. There is no history nor has there been any orders given to me in the past not to read while in my office. My evaluations have all been average to above average and I have never received a below average mark in any category on my evaluations. I work my cases and complete the tasks I am assigned.

I would like this Letter of Reprimand to be removed from my file. I believe this Letter of Reprimand is a personal attack on me by Chief Ellis. I feel these violations should have been addressed at the beginning of the investigation and not after the decision was handed down by Quincy White. I feel I received this Letter of Reprimand in retaliation from Chief Ellis.

# APPENDIX
# 10



October 23, 2013

Mr. Laz Walck
XXXXXXXXXXXX
XXXXXXXXXXXXXX

Subject: Grievance Findings

Dear Mr. Laz Walck:

In accordance with the provision with City of Lubbock's Personnel Policy Guidebook Section 5, a grievance hearing was held on October 22, 2013 to hear your concerns in regards to the reprimand you received dated September 25, 2013.

After reviewing the information provided and listening to testimony during the grievance hearing, I heard no credible evidence to support the alleged violation of the policy that formed the basis of your letter of reprimand. Therefore, I am ruling in your favor to rescind the reprimand and ordering that all copies be removed from the "G" file and other Police Department files. The originals or copies should be sent to you or your attorney.

This is your final appeal on this issue as outlined in the Employee Policy Manual Section 5.

Sincerely,

S. Snider, Assistant City Manager

SS/pmb
cc:  Leisa Hutcheson, Director of Human Resources
     Mitch Satterwhite, Supervising Attorney
     Roger Ellis, Chief of Police
     Phillip Johnson, Attorney at Law
     James Loomis, City Manager
     Chad Brouillette, Supervisor

# APPENDIX
# 11

Westlaw.

Not Reported in S.W.3d, 2014 WL 69889 (Tex.App.-Fort Worth), 37 IER Cases 963
**(Cite as: 2014 WL 69889 (Tex.App.-Fort Worth))**

**C**
SEE TX R RAP RULE 47.2 FOR DESIGNATION
AND SIGNING OF OPINIONS.

**MEMORANDUM OPINION**

Court of Appeals of Texas,
Fort Worth.
FORT WORTH INDEPENDENT SCHOOL DIS-
TRICT, Appellant
v.
Joseph PALAZZOLO, Appellee.

No. 02–13–00006–CV.
Jan. 9, 2014.

From the 271st District Court of Wise County. John
H. Fostel, Judge.
Thomas P. Brandt, Francisco J. Valenzuela, Jen-
nifer Kelly; Fanning Harper Martinson Brandt &
Kutchin, P.C., Dallas, TX, for Appellant.

Jason C.N. Smith, Art Brender; Law Offices of Art
Brender, Fort Worth, TX, for Appellee.

Panel: DAUPHINOT, MCCOY, and MEIER, JJ.

**MEMORANDUM OPINION**[FN1]

FN1. *See* Tex.R.App. P. 47.4.

BILL MEIER, Justice.
### I. INTRODUCTION
*1 Appellant Fort Worth Independent School
District (FWISD) appeals the trial court's denial of
its motion for summary judgment challenging Ap-
pellee Joseph Palazzolo's claims under the Texas
Whistleblower Act. In two issues, FWISD argues
that the trial court lacks subject-matter jurisdiction
over Palazzolo's claims. We will reverse and render.

### II. BACKGROUND

FWISD employed Palazzolo as an assistant
principal at Arlington Heights High School
(AHHS). Between late 2009 and mid–2010,
Palazzolo reported to several organizations and
FWISD officials that FWISD employees had falsi-
fied student attendance records, misused booster
club funds, improperly enforced disciplinary pro-
cedures against minority students, and engaged in
inappropriate sexual relationships with each other.

In mid-June 2010, Palazzolo received an ap-
praisal report issued by the principal of AHHS that
provided in relevant part that Palazzolo "need[ed]
improvement" in a particular aspect of his position
as an assistant principal. Around the same time,
Palazzolo learned that he had been reassigned from
AHHS to an assistant principal position at the Inter-
national Newcomers Academy (INA) for the up-
coming 2010–2011 school year. Palazzolo's pay
rate would be less than his pay at AHHS.

Palazzolo subsequently filed a Level I griev-
ance with FWISD outlining the reports that he had
made and claiming that he had been reassigned to
INA in retaliation for making those reports. He
sought to have his reassignment to INA revoked, to
be paid the same salary that he was paid at AHHS,
to have his appraisal report voided, to receive no
future threats and be assured of no future retali-
ation, and to enter into a two-year contract with
FWISD.

After a conference was held, the hearing officer
concluded that Palazzolo had not been reassigned in
retaliation for making reports, instead determining
that he had been reassigned for other, unrelated
matters; explained that Palazzolo's pay rate was not
supposed to have been reduced below the amount
that he earned as an assistant principal at AHHS;
amended Palazzolo's appraisal report to reflect that
he met or exceeded expectations in all performance
areas; explained that Palazzolo was currently
serving the second year of a two-year contract that
expired at the conclusion of the 2010–2011 school

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2014 WL 69889 (Tex.App.-Fort Worth), 37 IER Cases 963
(Cite as: 2014 WL 69889 (Tex.App.-Fort Worth))

year; and confirmed that Palazzolo would be treated in compliance with FWISD policy and the law. Shortly thereafter, FWISD reassigned Palazzolo to Western Hills High School (WHHS) at a rate of pay similar to what he had made at AHHS.

Palazzolo pursued a Level II grievance. At a conference on that matter, he indicated that he wanted to remain at WHHS. The hearing officer granted Palazzolo's request and, in response to Palazzolo's previous requests, confirmed that he would be paid an assistant principal's salary for the upcoming year, confirmed that his appraisal report had been amended, explained that he was serving the second year of a two-year contract, and assured him that he would be treated in a manner consistent with FWISD policy and the law.

*2 Thereafter, Palazzolo pursued a Level III grievance. At the hearing on that matter, he told the FWISD Board of Trustees that he had "no problem being reassigned," that he was "fine with either school, Arlington Heights or Western Hills," and that he was "fine with the evaluation" that he had previously challenged and that had been amended. The Board voted that no action be taken at the time on Palazzolo's whistleblower claims.

Approximately two weeks later, Palazzolo sued FWISD for violating the Whistleblower Act. He alleged that FWISD retaliated against him for making the reports by (1) transferring him from AHHS, (2) making the negative appraisal report, and (3) lifting a trespass warning against the parent of an AHHS student who had allegedly threatened his daughter when she was a student at AHHS. FWISD moved for summary judgment on Palazzolo's claims regarding the transfer and the appraisal report, arguing that Palazzolo had failed to establish a waiver of FWISD's governmental immunity because he did not properly initiate FWISD's grievance process. FWISD also moved for summary judgment on Palazzolo's trespass-warning claim, arguing that the trial court lacked subject-matter jurisdiction over that claim because FWISD's lifting of the trespass warning was not an adverse employment action.

The trial court denied FWISD's motion in its entirety, and this accelerated, interlocutory appeal followed. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(8) (West Supp.2013).

### III. INITIATION REQUIREMENT

In its first issue, FWISD argues that the trial court erred by denying its motion for summary judgment as to Palazzolo's transfer and appraisal-report claims because by advising the Board of Trustees at the Level III grievance hearing that he had "no problem being reassigned" and that he was "fine" with the appraisal report, Palazzolo circumvented the purpose of—and therefore failed to satisfy—the Whistleblower Act's administrative initiation requirement. According to FWISD, because initiation is a jurisdictional prerequisite to maintaining suit, the trial court lacked subject-matter jurisdiction over Palazzolo's claims.

Palazzolo responds that he timely initiated FWISD's grievance procedure, that he had no obligation to participate in the process, and that FWISD did not redress all of the relief that he had requested in his grievance.

The absence of subject-matter jurisdiction may be raised in a motion for summary judgment. *Bland ISD v. Blue,* 34 S.W.3d 547, 554 (Tex.2000). In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law, Tex.R. Civ. P. 166a(c) ; *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 848 (Tex.2009). Once the movant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the nonmovant to come forward with competent controverting evidence that raises a fact issue. *Van v. Pena,* 990 S.W.2d 751, 753 (Tex.1999). If the evidence creates a fact question regarding jurisdiction, the trial court cannot grant the motion, and the fact question will be resolved by the fact-finder. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 227–28 (Tex.2004). We review

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2014 WL 69889 (Tex.App.-Fort Worth), 37 IER Cases 963
(Cite as: 2014 WL 69889 (Tex.App.-Fort Worth))

the trial court's ruling de novo. *Travelers Ins. Co. v. Joachim,* 315 S.W.3d 860, 862 (Tex.2010).

**\*3**, The Whistleblower Act provides that a "state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." Tex. Gov't Code Ann. § 554.002(a) (West 2012). The Act also contains an express waiver of the State's sovereign immunity. *See id.* § 554.0035 (West 2012). However, before filing suit, a claimant "must *initiate* action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action." *Id.* § 554.006(a) (West 2012) (emphasis added). If a final decision is not rendered before the sixty-first day after the date procedures are initiated, the employee may elect to exhaust the applicable procedures previously initiated or terminate procedures and timely file suit. *Id.* § 554.006(d)(1), (2).

This court, like other courts, has previously determined that section 554.006(a)'s initiation requirement is a jurisdictional prerequisite, such that compliance is essential to the trial court's jurisdiction over a claimant's whistleblower action. *See Tarrant Cnty. v. McQuary,* 310 S.W.3d 170, 174 (Tex.App.-Fort Worth 2010, pet. denied); *see also* Tex. Gov't Code Ann. § 311.034 (West 2013) ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity."); *Prairie View A & M Univ. v. Chatha,* 381 S.W.3d 500, 510–11 (Tex.2012) (reasoning that section 311.034, as amended, "evinces the Legislature's intent that all statutory prerequisites are now jurisdictional requirements as to governmental entities and are properly asserted in a plea to the jurisdiction"); *Fort Bend ISD v. Gayle,* 371 S.W.3d 391, 394–95 (Tex.App.-Houston [1st Dist.] 2012, pet. denied);

*Jordan v. Ector Cnty.,* 290 S.W.3d 404, 406 (Tex.App.-Eastland 2009, no pet.). Thus, Palazzolo's transfer and appraisal-report claims are barred by governmental immunity and must be dismissed if he did not satisfy section 554.006(a)'s initiation requirement. [FN2] *See Univ. of Houston v. Earth,* 178 S.W.3d 157, 161–62 (Tex.App.-Houston [1st Dist.] 2005, no pet.).

> FN2. We consequently reject Palazzolo's argument that this case should be abated if we conclude that he failed to comply with section 554.006(a)'s initiation requirement.

The Whistleblower Act does not dictate what actions are required to "initiate" a grievance or appeals procedure, but we must proceed with the understanding that the goal of section 554.006 is to afford the governmental entity an opportunity to investigate and correct its errors and to resolve disputes before incurring the expense of litigation. *See Leyva v. Crystal City,* 357 S.W.3d 93, 99 (Tex.App.-San Antonio 2011, no pet.); *City of Fort Worth v. Shilling,* 266 S.W.3d 97, 102 (Tex.App.-Fort Worth 2008, pet. denied). In light of the parties' arguments, several cases are particularly instructive here.

**\*4** In *Aguilar v. Socorro Independent School District,* the school district reassigned Aguilar from his position as Assistant Superintendent of Operational Services to an assistant principal position after he notified the superintendent that he was working in conjunction with state and federal authorities in an ongoing criminal investigation. 296 S.W.3d 785, 786 (Tex.App.-El Paso 2009, no pet.). Aguilar filed a grievance with the school district, complaining of the alleged demotion, but he refused to fully participate in the arbitration hearing that followed. *Id.* at 786–87. The trial court granted the school district's plea to the jurisdiction, finding that Aguilar had failed to properly grieve his reassignment, and on appeal, Aguilar argued that he satisfied section 554.006's initiation requirement by filing a grievance and obtaining a recommendation. *Id.* at 787–88. The court of appeals rejected

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2014 WL 69889 (Tex.App.-Fort Worth), 37 IER Cases 963
(Cite as: 2014 WL 69889 (Tex.App.-Fort Worth))

Aguilar's argument. It acknowledged that the legislature had amended section 554.006 from requiring a claimant to *exhaust* any applicable grievance or appeal procedure to requiring a claimant to *initiate* a grievance or appeal procedure, a fact that Aguilar emphasized, but it found persuasive a Fourth Court of Appeals decision reasoning that "[t]o take the Legislature's action in substituting the word 'initiate' for the word 'exhaust' in subsection (a) to mean that an employee could initiate a grievance procedure and then, two minutes, two hours, or two days later, file a lawsuit under the Whistle–Blower Act would not only render the remainder of the statute meaningless, it would completely abdicate the purpose of Section 554.006." *Id.* at 789 (quoting *City of San Antonio v. Marin,* 19 S.W.3d 438, 441 (Tex.App.-San Antonio 2000), *disapproved of on other grounds by Univ. of Tex. Med. Branch at Galveston v. Barrett,* 159 S.W.3d 631, 633 n. 7 (Tex.2005)). The court concluded that Aguilar had circumvented the goal of the statute, thereby failing to satisfy the jurisdictional prerequisite:

> By not complying with the arbitrator's requests for information or presenting information that would allow the arbitrator to reach a decision, Aguilar's action did not serve the purpose of the statute—to afford the employer "the opportunity to correct its errors by resolving disputes before being subjected to the expense and effort of litigation." Allowing a complainant to simply file a grievance and then refuse to participate in the grievance hearing before filing suit is analogous to the situation where a complainant files a grievance then files suit immediately thereafter. Aguilar's tactical decision completely circumvent[ed] the purpose of Section 554.006.

*Id.* at 790 (citations removed).

In *Fort Bend Independent School District v. Gayle,* Gayle resigned her job as an administrator after learning that the school's administration had recommended her termination. 371 S.W.3d at 393. Her attorney then sent a written grievance to the school district, claiming that Gayle had been con-

structively discharged in retaliation for reporting the school's failure to comply with requirements of the Even Start Family Literacy Grant. *Id.* Thereafter, nearly two months elapsed before Gayle's attorney and the school district were able to agree on a date for the grievance hearing. *Id.* The day before the grievance hearing was to occur, however, Gayle filed her whistleblower suit, and her attorney notified the school that the grievance hearing was moot. *Id.* The trial court denied the school district's plea to the jurisdiction. *Id.* On appeal, the school district acknowledged that Gayle had properly filed a grievance, but citing *Aguilar,* it argued that she had failed to satisfy section 554.006's initiation requirement because she did not participate meaningfully in the school district's grievance procedure during the government-mandated sixty-day period. *Id.* at 395–96. Relying upon the statute's text—principally, that a claimant must initiate, not exhaust, a grievance or appeal procedure—the court of appeals disagreed that section 554.006 requires a claimant to participate in a hearing after properly filing a grievance. *Id.* at 396–99. The court thus concluded that Gayle had satisfied section 554.006's initiation requirement by merely properly filing a grievance before filing her whistleblower action. *Id.*

*5 Although it may appear so at first glance, *Aguilar* and *Gayle* are not irreconcilable. *Aguilar* did not hold—contrary to *Gayle* 's holding—that a claimant who properly files a grievance *must* further meaningfully participate in that procedure. Rather, the *Aguilar* court concluded that the claimant had failed to satisfy section 554.006 because, although he filed a grievance and obtained a recommendation, he *additionally* made the "tactical decision [to] completely circumvent[ ] the purpose of Section 554.006" by not complying with the arbitrator's requests for information or presenting information that would have allowed the arbitrator to reach a decision. 296 S.W.3d at 790. Thus, as we construe both *Gayle* and *Aguilar,* a claimant satisfies section 554.006's initiation requirement by timely invoking the governmental entity's grievance

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2014 WL 69889 (Tex.App.-Fort Worth), 37 IER Cases 963
**(Cite as: 2014 WL 69889 (Tex.App.-Fort Worth))**

or appeal procedure before filing a whistleblower action; however, if a party who invokes a grievance or appeal procedure goes on to actively circumvent the governmental entity's efforts to redress the complained-of conduct, that party does not comply with section 554.006's initiation requirement. This makes sense because, as the *Gayle* court observed, "Once a grievance is initiated, the governmental unit has notice of the claim so it can begin its own investigation of the claim." *Gayle,* 371 S.W.3d at 397 n. 2.; *see McQuary,* 310 S.W.3d at 178 ("[T]he governmental entity must be given reasonable notice that it has, in fact, made a mistake that can be resolved before a lawsuit is filed."). But if a party proceeds to actively circumvent that investigation, section 554.006's initiation requirement—which is meant to afford the governmental entity an opportunity to investigate and correct its errors and to resolve disputes before incurring the expense of litigation—is rendered meaningless.

Here, Palazzolo filed grievances against FWISD, *see Gayle,* 371 S.W.3d at 396–99, but that does not end our inquiry. *See Aguilar,* 296 S.W.3d at 790. At the Level III grievance hearing, Palazzolo informed the Board that he was "fine with [working at] either school, Arlington Heights or Western Hills," and that he was "fine with the evaluation" that he had previously challenged and that had been amended to reflect that he met or exceeded expectations in all performance areas. Having informed the Board that his transfer and appraisal-report complaints were resolved, Palazzolo effectively led the Board to believe that as to those complaints, there was no further investigation that needed to occur and, equally important, no need to correct any potential misconduct allegedly committed by FWISD. Although Palazzolo's conduct does not appear to be as brazen as the claimant's conduct in *Aguilar,* the effect is nonetheless the same—Palazzolo actively circumvented FWISD's efforts to redress the complained—of conduct by advising the Board that he had no dispute with his transfer and appraisal report.[FN3]

FN3. As to Palazzolo's whistleblower complaints, the Board voted to not take any action on the day of the hearing.

*6 Palazzolo argues that the grievance process did not redress all of the matters that he raised in his grievance and that he is entitled to seek to recover actual damages, including mental anguish damages, for the matters that were not part of the redress provided by FWISD. However, we are only concerned here with the claims that Palazzolo has alleged in this litigation: as it is relevant to this first issue, the transfer claim and the appraisal-report claim. There is no dispute that these two matters were fully addressed at the Level III grievance hearing, and Palazzolo has not asserted any other claims in this litigation derived from one of the grounds that was set out in his grievance and that was allegedly not addressed.

We hold that FWISD met its burden to demonstrate as a matter of law that Palazzolo did not properly initiate FWISD's grievance process and that Palazzolo failed to come forward with evidence raising a fact question as to whether he initiated a grievance under FWISD's grievance process. Because there is no evidence that Palazzolo complied with section 554.006's initiation requirement, a jurisdictional prerequisite, we hold that the trial court erred by denying FWISD's motion for summary judgment as to Palazzolo's transfer and appraisal-report claims. We sustain FWISD's first issue.

**IV. TRESPASS WARNING**
In its second issue, FWISD argues that the trial court erred by denying its motion for summary judgment as to Palazzolo's claim that FWISD retaliated against him by lifting a trespass warning against the parent of an AHHS student. According to FWISD, because lifting the trespass warning was not an adverse employment action within the meaning of the Whistleblower Act, Palazzolo failed to allege a violation of the Act and FWISD retained its immunity from suit, thus depriving the trial court of subject-matter jurisdiction.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2014 WL 69889 (Tex.App.-Fort Worth), 37 IER Cases 963
(Cite as: 2014 WL 69889 (Tex.App.-Fort Worth))

The Whistleblower Act provides that "[a] public employee who *alleges a violation of this chapter* may sue the employing state or local governmental entity for the relief provided by this chapter ." Tex. Gov't Code Ann. § 554.0035 (emphasis added). The Supreme Court of Texas has interpreted this language to mean that the elements of a whistleblower claim "can be considered to determine both jurisdiction and liability." *State v. Lueck*, 290 S.W.3d 876, 883 (Tex.2009). Thus, the elements of a whistleblower claim "must be included within the pleadings so that the court can determine whether they sufficiently allege a violation under the Act to fall within" the waiver of immunity from suit provided by section 554.0035. *Id.* at 884.

To prevail on a claim under the Whistleblower Act, a public employee must demonstrate that he suffered an adverse employment action committed by the employer. *See* Tex. Gov't Code Ann. § 554 .002. "[A] personnel action is adverse within the meaning of the Whistleblower Act if it would be likely to dissuade a reasonable, similarly situated worker from making a report under the Act." *Montgomery Cnty. v. Park*, 246 S.W.3d 610, 614 (Tex.2007). Several nonexclusive factors that may be relevant to the inquiry include whether the alleged adverse personnel action negatively affected the employee's prestige, opportunity for advancement, working conditions, pay or income, or ability to obtain outside employment. *See id.* at 615. An employee must establish a but-for causal nexus between the protected activity and the employer's prohibited conduct. *See City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 67 (Tex.2000).

*7 Here, Palazzolo alleged that FWISD retaliated against him by lifting a trespass warning against the parent of an AHHS student who had allegedly threatened his daughter when she was a student at AHHS. However, Palazzolo's summary judgment evidence confirms that FWISD did not lift the trespass warning until after he had been reassigned to another school and after he had made the decision to remove his daughter from AHHS.

We hold that, as a matter of law, FWISD's lifting the trespass warning after Palazzolo had been reassigned to another school and after he decided to remove his daughter from AHHS was not an adverse employment action within the meaning of the Whistleblower Act. *See Montgomery*, 246 S.W.3d at 614; *Zimlich*, 29 S.W.3d at 67. Accordingly, the trial court erred by denying FWISD's motion for summary judgment as to Palazzolo's trespass-warning claim. We sustain FWISD's second issue.[FN4]

> FN4. We need not address FWISD's arguments that the trial court abused its discretion by denying its objections to Palazzolo's summary judgment arguments and evidence. *See* Tex.R.App. P. 47 .1.

## V. CONCLUSION

Having sustained FWISD's two issues, we reverse the trial court's judgment denying FWISD's motion for summary judgment and render judgment that Palazzolo take nothing on his claims under the Whistleblower Act. *See* Tex.R.App. P. 43.2(c).

DAUPHINOT, J. concurs without opinion.

Tex.App.-Fort Worth,2014.
Fort Worth Independent School Dist. v. Palazzolo
Not Reported in S.W.3d, 2014 WL 69889 (Tex.App.-Fort Worth), 37 IER Cases 963

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

# APPENDIX
# 12

**Westlaw.**

296 S.W.3d 785, 250 Ed. Law Rep. 825, 29 IER Cases 1136
(Cite as: 296 S.W.3d 785)

▷
Court of Appeals of Texas,
El Paso.
Mario AGUILAR, Appellant,
v.
SOCORRO INDEPENDENT SCHOOL DIS-
TRICT, Appellee.

No. 08–07–00072–CV.
July 31, 2009.

**Background:** Former assistant superintendent brought action against school district, alleging wrongful termination, constructive discharge, and retaliation. The 168th District Court, El Paso County, Guadalupe Rivera, J., granted district's plea to jurisdiction. Assistant superintendent appealed.

**Holding:** The Court of Appeals, Ann Crawford McClure, J., held that assistant superintendent failed to properly grieve his reassignment within district.

Affirmed.

West Headnotes

**Education 141E ☞420**

141E Education
   141EII Public Primary and Secondary Schools
      141EII(C) Officers and Employees
         141Ek411 Appointment and Tenure
            141Ek420 k. Proceedings and review.
Most Cited Cases
   (Formerly 345k63(1) Schools)
   Trial court lacked subject matter jurisdiction over wrongful termination action brought by former assistant superintendent against school district, who failed to properly grieve his reassignment within district under whistle-blower statute; assistant superintendent had opportunity to disclose facts of his whistle-blowing activity at grievance hearing, but deliberately failed to do so, and failed to initiate grievance of his alleged constructive discharge.

V.T.C.A., Government Code § 554.006.

*785 Leon Schydlower, El Paso, TX, for Appellant.

*786 Angela Morrow Nickey, Robles, Bracken, Coffman & Hughes, L.L.P., El Paso, TX, for Appellee.

Before McCLURE, J., ABLES, Judge, sitting by assignment, and GOMEZ, Judge, sitting by assignment.

**_OPINION_**
ANN CRAWFORD McCLURE, Justice.
   Mario Aguilar appeals the trial court's decision to grant the Socorro Independent School District's (SISD) plea to the jurisdiction. Aguilar brought suit alleging wrongful termination/constructive discharge and retaliation. SISD filed a plea to the jurisdiction and a motion for summary judgment. Finding that Aguilar failed to properly grieve his reassignment within the District and failed to initiate a grievance of his alleged constructive discharge, we affirm.

**FACTUAL SUMMARY**
   Aguilar served as Assistant Superintendent of Operations for SISD. In 1998, he and then—Superintendent Don Schulte reported to the FBI certain improprieties and fraud at SISD with respect to the process that was used to award construction projects. According to his affidavit, Aguilar served as an undercover informant for the FBI in this investigation. The FBI had him sign a document preventing him from revealing the existence of the investigation without its prior approval. The existence of the investigation was made known only to Interim Superintendent Gary Brooks and former Superintendent Don Schulte.

   In August 2002, the District's Board of Trustees named Aguilar as Interim Superintendent while it searched for a permanent superintendent. The

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

296 S.W.3d 785, 250 Ed. Law Rep. 825, 29 IER Cases 1136
(Cite as: 296 S.W.3d 785)

nomination was based upon an agreement that Aguilar would not submit an application for the permanent position. Despite that agreement, Aguilar submitted an application in March 2003. Shortly thereafter, he was terminated as Interim Superintendent and resumed his duties as Assistant Superintendent of Operational Services. The Board of Trustees selected Dr. Robert Duron as the new superintendent on June 1, 2003.

On August 5, 2003 Aguilar wrote a letter to Dr. Duron advising that he was working in conjunction with state and federal authorities in relation to an ongoing criminal investigation:

> Please be advised that I am working in conjunction with state and federal authorities in relation to an on-going criminal investigation, regarding past and present Board member's activities. These activities were reported to the proper law enforcement agencies and are currently being investigated. I am an informant on issues relating to illegal activities between certain Board Members and certain entities. I would prefer to not get into specifics regarding this investigation, however, you may contact my representative who can corroborate my situation.

Two days later, Dr. Duron sent Aguilar a notice of reassignment, positioning him as an assistant principal within the District. Dr. Duron testified that this decision was based on Aguilar's insubordination and other issues and that the decision was made a few days prior to delivery of the notice. On August 18, 2003, Aguilar filed a grievance with SISD, alleging that Dr. Duron had demoted him to an assistant principal after he told Dr. Duron that he had been cooperating with the FBI in an investigation of the District.

On September 26, 2003, James Vasquez arbitrated the grievance. He recounted that Aguilar's attorney had presented the following:

*787 • Aguilar was demoted as retaliation for informing Dr. Duron that he was cooperating with the FBI in an investigation of previous and present board members.

• Aguilar was involved with on-going criminal investigations.

• The timing of a memorandum from Dr. Duron demoting Aguilar—two days after an August 5 letter from Aguilar to Dr. Duron—lent substantiation to his allegation.

• Some friction existed between Aguilar and Dr. Duron over conversations with board members.

Vasquez found that Aguilar's reassignment was consistent with District policy and state law and he issued the following recommendation:

> My recommendation on this grievance will be based on a set of circumstances that leave me very little room to respond to the grievant's claim and request for relief. [Counsel for Aguilar] made it very clear that neither the arbitrator nor the board of trustees have the authority to rule on the legal issues in the grievance. According to [counsel], the proper forum for resolution of the issues is a court of law. [Counsel] further informed me that the purpose of the arbitration hearing was simply to meet requirement of the district's grievance policy for administrative relief. He would not provide me information I believe vital to my ability to make a recommendation on Mr. Aguilar's grievance. He stated he would not tell me when or to whom Mr. Aguilar reported the violation of law he describes in his handwritten letter of August 5.

Despite the arbitrator's recommendation, Aguilar never reported to his new assignment and instead obtained written excuses from his physician for his absences. Aguilar resigned from his position with SISD on October 31, 2003 and filed suit on November 17, 2003.

## PLEA TO THE JURISDICTION

In a single point of error, Aguilar challenges the granting of SISD's plea to the jurisdiction.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Standard of Review*

A plea to the jurisdiction contests a trial court's subject matter jurisdiction. *Bland Independent School District v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). Whether a court has subject matter jurisdiction is a question of law which we review *de novo*. *Texas Department of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004). Whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law subject to *de novo* review. *Id.* In some cases, disputed evidence of jurisdictional facts that also implicate the merits of the case may require resolution by the finder of fact. *Id.* In that circumstance, the trial court cannot grant the plea, and the fact issue must be resolved by the fact finder. *Id.* at 227–28. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court must rule on the plea as a matter of law. *Id.* at 228. This standard generally mirrors that of a summary judgment under Tex.R.Civ.P. 166a (c). *Id.*

*The Texas Whistleblower Act*

The trial court found that Aguilar failed to properly grieve his reassignment within the District. He had the opportunity to disclose the facts of his whistleblowing activity at the grievance hearing, but deliberately failed to do so. The court also found that Aguilar failed to initiate a grievance of his alleged constructive discharge.

Section 554.006 of the Texas Government Code provides:

*788 (a) A public employee must initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment, or adverse personnel action before suing under this chapter.

(b) The employee must invoke the applicable grievance or appeal procedures not later than then 90th day after the date on which the alleged violation of this chapter:

(1) occurred; or

(2) was discovered by the employee through reasonable diligence.

(c) Time used by the employee in acting under the grievance or appeal procedures is excluded, except as provided by Subsection (d), from the period established by Section 554.005.

(d) If a final decision is not rendered before the 61st day after the date procedures are initiated under Subsection (a), the employee may elect to:

(1) exhaust the applicable procedures under Subsection (a), in which event the employee must sue not later than the 30th day after the date those procedures are exhausted to obtain relief under this chapter; or

(2) terminate procedures under Subsection (a), in which event the employee must sue within the time remaining under Section 554.005 to obtain relief under this chapter.

Tex.Gov't Code Ann. § 554.006 (Vernon 2004) .

Prior to 1995, subsection (a) of Section 554.006 required an employee to *exhaust* any applicable grievance or appeal procedures before filing suit. Act of May 22, 1993, 73rd Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 610 (amended 1995)(current version at Tex.Gov't Code Ann. § 554.006). The current statute provides that the employee must " *initiate* action under the grievance or appeal procedures" of the employing entity before filing suit. [Emphasis added]. Tex.Gov't Code Ann. § 554.006. The issue squarely before the court is the intent of the statutory amendment and the meaning of "initiate."

*"Initiate" a Grievance under Section 554.006*

Aguilar contends that in a whistleblower action, a claimant need only initiate a grievance; exhaustion is no longer required. By filing the proper grievance under the District's procedures that ulti-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

296 S.W.3d 785, 250 Ed. Law Rep. 825, 29 IER Cases 1136
(Cite as: 296 S.W.3d 785)

mately culminated in an arbitrator's recommendation, Aguilar insists he properly "initiated" a grievance under the statute. Otherwise, the trial court will be placed in the position of having to measure the quality of participation in a grievance hearing. SISD counters that even though Aguilar filed a written grievance, he deliberately refused to participate in the grievance process and deprived SISD of its statutory opportunity to resolve the complaint before facing litigation. The District suggests the facts demonstrate that (1) a hostile relationship existed between Aguilar and Dr. Duron; (2) Aguilar submitted a handwritten cryptic note to Dr. Duron; (3) Aguilar presented neither his government representatives nor any corroboration that the FBI had demanded his silence; and (4) Aguilar "cloaked" himself in secrecy on advice of counsel. It concludes that if these actions satisfy Section 554.006, the statute's requirements are meaningless.

We begin our analysis with *The University of Texas Medical Branch at Galveston v. Barrett,* 159 S.W.3d 631 (Tex.2005). There, a doctor sued his former employer only 27 days after initiating grievance procedures complaining of the termination of his employment. *Id.* at 632. The court held that if a public employee prematurely files suit under the Texas Whistleblower *789 Act before the expiration of the 60–day period for a public employer to complete its grievance or appeal procedures, the suit should be abated until the end of the 60–day period rather than being dismissed, provided that the procedures have been timely initiated and can continue for the required 60 days or until a final decision is rendered, whichever occurs first. *Id.* at 632–33. The court disapproved of the contrary holdings in *Watson v. Dallas Indep. Sch. Dist.,* 135 S.W.3d 208 (Tex.App.-Waco 2004, no pet.), *Harris County v. Lawson,* 122 S.W.3d 276 (Tex.App.-Houston [1st Dist.] 2003, pet. denied), *Bellows v. Hendrick,* 2004 WL 1854240 (Tex.App.-Corpus Christi Aug. 19, 2004, pet. filed), and *City of San Antonio v. Marin,* 19 S.W.3d 438 (Tex.App.-San Antonio 2000, pet. denied).

In *Marin,* the City contended that the claimants failed to exhaust the grievance procedure. *City of San Antonio v. Marin,* 19 S.W.3d 438 (Tex.App.-San Antonio 2000, pet. denied), *disapproved in University of Texas Medical Branch at Galveston v. Barrett,* 159 S.W.3d 631, 632 (Tex.2005). The claimants initiated a grievance proceeding two days before filing their lawsuit. *Marin,* 19 S.W.3d at 440. In interpreting the practical effect of the amendment to Section 554.006, the court looked to legislative intent, examining the statute as a whole rather than mere isolated provisions. *Id., citing Chevron Corp. v. Redmon,* 745 S.W.2d 314, 316 (Tex.1987) and *Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex.1985). The statute provides that if a final decision has not been rendered in the grievance procedure within 60 days of the date the grievance is filed, the employee has the option of (1) exhausting the grievance without losing the right to sue for 30 days following exhaustion or (2) terminating the grievance procedure and filing suit within the time remaining under the statute of limitations. *Id. citing* Tex.Gov't Code Ann. § 554.006(d). In practical effect, the employee did not have to exhaust his administrative remedies if the grievance procedure was not expeditiously resolved. *Id., citing Gregg County v. Farrar,* 933 S.W.2d 769, 776 (Tex.App.-Austin 1996, no writ) (noting that legislative history indicated that 30–day deadline was designed to protect the employee from unfair delays). In light of subsection (d), the change in the wording from "exhaust" to "initiate" in subsection (a) had no effect on the implementation of the statute. *Id.* at 441. "The use of the word 'initiate' in the current version appears to be an attempt by the Legislature to clarify the language of sub-section (a) so that it more accurately reflects the true process of events under the statute as a whole." *Id.* This interpretation upholds the purpose of Section 554.006, which is to afford the employer "the opportunity to correct its errors by resolving disputes before being subjected to the expense and effort of litigation." *Id., citing Farrar,* 933 S.W.2d at 775, *citing* House Research Organization, Bill Analysis. Tex. H.B. 1405, 71st Leg.,

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

296 S.W.3d 785, 250 Ed. Law Rep. 825, 29 IER Cases 1136
(Cite as: 296 S.W.3d 785)

R.S. (1989). "To take the Legislature's action in substituting the word 'initiate' for the word 'exhaust' in sub-section (a) to mean that an employee could initiate a grievance procedure and then, two minutes, two hours, or two days later, file a lawsuit under the Whistle–Blower Act would not only render the remainder of the statute meaningless, it would completely abdicate the purpose of Section 554.006." *Id.*

The Texas Whistleblower Act does not define what actions are required to "initiate" the appeals procedure. *See* Tex.Gov't Code Ann. § 554.006(a). *Barrett* and *Marin* discuss Section 554.006, but both cases deal with the situation where the complainant filed a grievance and then filed suit before either the expiration of the 60 day resolution period or the rendition of a final decision. Here, Aguilar's grievance culminated in an arbitrator's recommendation, but it was Aguilar's refusal to participate *790 in the arbitration that caused the trial court to grant SISD's plea to the jurisdiction. Although *Barrett* specifically disapproved of the holding in *Marin* and ruled that the case be abated instead of dismissed for want of jurisdiction, the dicta in *Marin* regarding the statutory amendments is helpful to our analysis.

The record reveals that Aguilar did not fully cooperate with the arbitrator's request for information during the hearing. The arbitrator commented that Aguilar's attorney admitted that the grievance was filed simply to comply with the administrative procedures and that the proper forum would be a court of law. By not complying with the arbitrator's requests for information or presenting information that would allow the arbitrator to reach a decision, Aguilar's action did not serve the purpose of the statute—to afford the employer "the opportunity to correct its errors by resolving disputes before being subjected to the expense and effort of litigation." *See Marin,* 19 S.W.3d at 441, *citing Farrar,* 933 S.W.2d at 775, *citing* House Research Organization, Bill Analysis. Tex. H.B. 1405, 71st Leg., R.S. (1989). Allowing a complainant to simply file a

grievance and then refuse to participate in the grievance hearing before filing suit is analogous to the situation where a complainant files a grievance then files suit immediately thereafter. Aguilar's tactical decision completely circumvents the purpose of Section 554.006. We overrule Aguilar's sole point and affirm the judgment of the trial court.

Tex.App.–El Paso,2009.
Aguilar v. Socorro Independent School Dist.
296 S.W.3d 785, 250 Ed. Law Rep. 825, 29 IER Cases 1136

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

# APPENDIX
# 13



Not Reported in S.W.3d, 2011 WL 3612288 (Tex.App.-Hous. (1 Dist.))
(Cite as: 2011 WL 3612288 (Tex.App.-Hous. (1 Dist.)))

▷
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION AND SIGNING OF OPINIONS.

**MEMORANDUM OPINION**

Court of Appeals of Texas,
Houston (1st Dist.).
WEST HOUSTON CHARTER SCHOOL ALLI-ANCE, Appellant
v.
Jean PICKERING, Appellee.

No. 01–10–00289–CV.
Aug. 18, 2011.

On Appeal from the 125th District Court, Harris County, Texas, Trial Court Case No.2009–64131.
Christopher B. Gilbert, for West Houston Charter School Alliance.

Lawrence W. Watts, for Jean Pickering.

Panel consists of Chief Justice RADACK and Justices BROWN and HUDDLE.

**MEMORANDUM OPINION**
HARVEY BROWN, Justice.

*1 This interlocutory appeal from the trial court's denial of a school's plea to the jurisdiction arises out of Jean Pickering's claim that the school demoted and constructively discharged her in retaliation for reporting that the school board had violated the Texas Open Meetings Act. Because we conclude that Pickering failed to initiate the school's grievance procedure before filing her whistleblower action, we reverse the trial court's denial of the school's plea to the jurisdiction and dismiss Pickering's claims against the school for lack of jurisdiction.

**Background**

Pickering, the school's administrator, filed a suit against West Houston Charter School Alliance and several of its board members, asserting that the school violated the Texas Whistleblower Act by retaliating against her after she reported to the Texas Education Agency that the board was holding meetings in violation of the Texas Open Meetings Act. [FN1] *See* TEX. GOV'T CODE ANN. § 554.002(a) (West 2004) (prohibiting governmental entity from taking adverse personnel action against public employee who, in good faith, reports violation of law by employer or another public employee to appropriate law enforcement authority); *id.* § 551.001–.146 (governing open meeting requirements for governmental bodies). Pickering alleged two incidents of retaliatory conduct. First, the school board placed her on "a corrective plan at a final warning stage," which Pickering asserted stripped her of her responsibilities and was designed to serve as a demotion. The school board presented the corrective action plan to Pickering at a July 9, 2009 board meeting. Second, Pickering alleged that the board members damaged her reputation in the community and forced her to resign on August 3, 2009, which constituted a constructive discharge.

> FN1. Pickering pled that the individual school board members conspired with the school to violate the Whistleblower Act and asserted a claim against them for intentional infliction of emotional distress. The claims against the individual defendants are not at issue here.

After Pickering initiated this action, the school filed a plea to the jurisdiction, contending that Pickering failed to initiate a grievance under the school's grievance procedure before filing suit. Pickering responded that the school's grievance procedure did not apply to her and that she had appealed the school's actions by a letter her attorney sent to the school board on July 22, "seeking a fundamentally fair hearing on the matter."

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2011 WL 3612288 (Tex.App.-Hous. (1 Dist.))
(Cite as: 2011 WL 3612288 (Tex.App.-Hous. (1 Dist.)))

The trial court denied the school's plea to the jurisdiction. In its order, the trial court stated:

All parties having appeared in open court by and through their attorneys and all parties having agreed on the record that plaintiff by and through her counsel did, on or about July 22, 2009, within 90 days of the claimed adverse employment action[,] g[i]ve written notice to the Defendant's Board of Trustees that the Plaintiff "appeal[ed] the decision to place her on a professional growth plan and specifically request[ed] that as part of that appeal, she be afforded a due process, meaningful hearing pursuant to the mandates of *Ferguson v. Thomas,* before an impartial and academically oriented hearing officer or panel."

*2 Having heard arguments of counsel and considered the documents filed herein, the Court is of the opinion and finds that Plaintiff initiated Defendant's appeal procedures, or that a fact dispute exists as to whether Plaintiff's actions initiated Defendant's appeal procedures, and that Defendant's Plea to the Jurisdiction is not established as a matter of law.

This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (authorizing interlocutory appeal from the grant or denial of a governmental unit's plea to the jurisdiction); *LTTS Charter Sch., Inc. v. C2 Constr., Inc.,* No. 09–0794, 2011 WL 2420204, at *5–6 (Tex. June 17, 2011) (holding that an open-enrollment charter school is a "governmental unit" for purposes of section 51.014(a)(8)).[FN2]

FN2. West Houston Charter School Alliance is an open-enrollment charter school.

### Standard of Review

The school's plea to the jurisdiction is a dilatory plea that seeks dismissal of Pickering's claims against it for lack of subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000); *Univ. of Houston v. Barth,* 178 S.W.3d 157, 160–61 (Tex.App.-Houston [1st Dist.] 2005,

no pet.). Subject-matter jurisdiction is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443 (Tex.1993); *Barth,* 178 S.W.3d at 161. The existence of subject-matter jurisdiction is a question of law that we review de novo. *State Dep't of Hwys. & Pub. Transp. v. Gonzalez,* 82 S.W.3d 322, 327 (Tex.2002); *Kamel v. Univ. of Tex. Health Sci. Ctr. at Houston,* 333 S.W.3d 676, 681 (Tex.App.-Houston [1st Dist.] 2010, pet. denied).

When a plea to the jurisdiction challenges the existence of jurisdictional facts, we apply a standard of review that mirrors the standard applicable to traditional summary judgments. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 228 (Tex.2004); *see also* TEX.R. CIV. P. 166a(c). The school bore the initial burden of establishing that one or more facts necessary to jurisdiction does not exist. *See id.* (observing that this standard protects claimant from having to put on her case simply to establish jurisdiction); *Porretto v. Patterson,* 251 S.W.3d 701, 711 (Tex.App.-Houston [1st Dist.] 2007, no pet.). If the school satisfied its initial burden, the burden shifted to Pickering to put on evidence raising a fact issue on the jurisdictional issue. *Miranda,* 133 S.W.3d at 228; *Patterson,* 251 S.W.3d at 711. In determining whether these burdens have been met, we review the evidence in the light most favorable to Pickering, indulging every reasonable inference in her favor and resolving any doubts in her favor. *Miranda,* 133 S.W.3d at 228.

### The School's Plea to the Jurisdiction

In its plea to the jurisdiction, the school asserted that the trial court lacked jurisdiction over Pickering's whistleblower action because she had not satisfied the Whistleblower Act's requirement that she initiate a grievance before filing suit in district court. In response, Pickering argued that the school's grievance procedure did not apply to Pickering's complaints and, alternatively, the letters she sent to the school board satisfied whatever obligation she had under the grievance procedure. We conclude that the school's grievance procedure ap-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2011 WL 3612288 (Tex.App.-Hous. (1 Dist.))
(Cite as: 2011 WL 3612288 (Tex.App.-Hous. (1 Dist.)))

plied to Pickering's complaints and that the evidence demonstrates that Pickering failed to initiate a grievance under that procedure.

**A. The Whistleblower Act's grievance initiation requirement**

*3 As a prerequisite to initiating suit under the Whistleblower Act, a claimant must first "initiate action under the grievance or appeal procedures" of her governmental employer. TEX. GOV'T CODE ANN. § 554.006(a) (West 2004). This requirement is a jurisdictional prerequisite, such that compliance is essential to the trial court's jurisdiction over a whistleblower action. *Barth,* 178 S.W.3d at 161–62. Section 554.006 does not require a claimant to exhaust her administrative remedies before filing suit; instead, she is only required to initiate the grievance or appeal and allow the grievance authority sixty days in which to render a decision. *See Univ. of Tex. Med. Branch v. Barrett,* 159 S.W.3d 631, 632 (Tex.2005); *Hitchcock Indep. Sch. Dist. v. Walker,* No. 01–10–00669–CV, 2010 WL 5117912 (Tex.App.-Houston [1st Dist.] Dec. 16, 2010, no pet.) (mem.op.). After the grievance authority issues a decision, or after sixty days if no decision has been issued, then the claimant has two choices: she may either exhaust the remedies available to her under the employer's grievance procedure or terminate the grievance and file suit. *See* TEX. GOV'T CODE ANN. § 554.006(d). The option she chooses determines the time period within which her suit must be filed. *See id.* §§ 554.006(d), 554.005.

The issue here is whether Pickering initiated a grievance under the school's grievance procedure, thus commencing the school's sixty-day period for issuing a decision, regardless of whether she exhausted her administrative remedies under the grievance procedure. *See id.* §§ 554.006(d)(2), 554.005.

**B. The evidence on whether Pickering initiated a grievance**

In support of its plea to the jurisdiction, the school filed evidentiary exhibits: an affidavit, three letters exchanged between Pickering and the school, and a copy of the school's grievance procedure, which the school sent to Pickering. David Dwyer, former school board president, testified in his affidavit that Pickering did not file a grievance with the school relating to the July 9, 2009 corrective action plan or her August 3, 2009 resignation.

The correspondence exhibits begin with a July 22 letter from Pickering's counsel to the school board, which accused the school board of violating the Texas Open Meetings Act and retaliating against Pickering for reporting the violations to the Texas Education Agency. It then stated:

I am notifying you that Ms. Pickering appeals the decision to place her on a professional growth plan and specifically requests that as part of that appeal, she be afforded a due process, meaningful hearing pursuant to the mandates of *Ferguson v. Thomas,* before an impartial and academically oriented hearing officer or panel. Specifically, Ms. Pickering requests that the hearing occur on July 27, 2009.

The school responded on July 27. In that letter, counsel for the school defended the school's actions, rejected opposing counsel's interpretation of *Ferguson v. Thomas* and the due process implications of the situation, and disagreed that Pickering was entitled to a hearing different from that afforded by the school's grievance procedure. The school's counsel noted that Pickering had the opportunity to express concerns and address issues with the school board at the July 9 meeting, but declined to do so. She then stated:

*4 However, if she would like to grieve the Board's action, she may do so in accordance with the attached West Houston Charter School Grievance procedure. In lieu of submitting to the School Administrator,[FN3] as the procedure states, she should address the grievance to the School Board's President, Mr. David Dwyer, c/o Maureen Singleton, Thompson & Horton, 711 Louisiana, Suite 2100, Houston, Texas 77002.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2011 WL 3612288 (Tex.App.-Hous. (1 Dist.))
(Cite as: 2011 WL 3612288 (Tex.App.-Hous. (1 Dist.)))

FN3. Pickering was the school administrator.

The final correspondence in the record is Pickering's resignation letter to Dwyer on August 3, 2009. In the letter, Pickering attacked Dwyer's leadership of the school board, made accusations regarding his wife's service on a school committee, asserted that the corrective action plan was based on false claims, complained of the process by which the corrective action plan was adopted, and stated that the board's actions against her had undermined her authority with staff. Pickering then gave two weeks' notice of her resignation, which she asserted was forced by the "illegal conduct of your Board and the clear intent to damage my career."

The record does not contain any evidence filed by Pickering with respect to the school's plea to the jurisdiction. In the text of her response, Pickering relied on a letter she sent the school board on July 9, 2009. But she did not attach that letter to her response or otherwise make it part of the record. Thus, although it is undisputed that Pickering sent the school board a letter on this date, the letter itself is not in the record. Pickering appended the letter to her appellate brief, but we may not consider material appended to an appellate brief that is not in the record. *E.g., Sowell v. The Kroger Co.,* 263 S.W.3d 36, 38 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (holding that requests for disclosure filed as an appendix to appellate brief could not be considered because they were not made part of the record); *Till v. Thomas,* 10 S.W.3d 730, 733–34 (Tex.App.-Houston [1st Dist.] 1999, no pet.) ("We cannot consider documents attached to an appellate brief that do not appear in the record.").

## C. Pickering is not excluded from the school's grievance procedure

Pickering contends in her brief that the school's grievance policy does not apply to a dispute between the school's administrator, Pickering, and the school board. In support of this argument, Pickering relies exclusively on the language of the school's grievance procedure. The procedure addresses grievances by an employee:

> The Board will provide an opportunity at its regular and/or special meetings for employees to present grievances for consideration and re- sponse.

> Any employee who requests a hearing before the Board to complain of the employee's conditions of employment, the failure to promote, or termination may do so by submitting a request to the School Administrator [Pickering] within ten (10) calendar days of the incident or his or her receipt of notification of the event that forms the basis of the person's complaint. The Board may hear the complaint at a regular or special Board meeting mutually convenient to the School and the employee, and as permitted by law. The board will hear grievances involving appointment, employment, evaluation, reassigned duties, discipline, or dismissal/termination of an employee in closed session unless the employee makes a written request that the hearing be conducted in open session.

*5 The school's grievance procedure also provides for the submission of documents, the right to be represented by counsel, and time limits on the employee's presentation of the grievance and the administration's response. The procedure requests that the employee submit any documents she intends to rely on at the meeting at least one week before the meeting. Finally, it provides that the board will provide a response to the employee within twenty days of the meeting at which the employee's grievance is presented.

We do not agree that the school's grievance procedure does not apply to Pickering's complaints. The procedure specifically states that "[a]ny employee" may request a hearing by submitting the request to the school administrator within the ten-day period, and it specifically lists "the employee's conditions of employment" and "termination" among the topics upon which a grievance may be filed. By

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2011 WL 3612288 (Tex.App.-Hous. (1 Dist.))
(Cite as: 2011 WL 3612288 (Tex.App.-Hous. (1 Dist.)))

its plain language, the grievance procedure applied to Pickering and the complaints she maintains here. *See Davis v. Dallas Cnty. Schs.*, 259 S.W.3d 280, 283–84 (Tex.App.-Dallas 2008, no pet.) (rejecting argument that procedure that authorized grievance concerning "conditions of work" did not apply to retaliatory discharge claim); *cf. City of Houston v. Williams*, No. 09–0770, 2011 WL 923980, at *15 (Tex. Mar.18, 2011) (holding that grievance procedures in collective bargaining agreement did not apply to retired firefighters, where procedures only allowed for grievance by union or "bargaining unit firefighter," which was defined to include only full-time employees); *see also Tucker v. City of Houston*, No. 01–00–01194–CV, 2001 WL 754487, *2–3 (Tex.App.-Houston [1st Dist.] July 5, 2001, pet. denied) (holding that city's appeal procedure applied to employee and employee's letter stating that he would not pursue appeal provisions of city's procedure did not initiate grievance or appeal procedure).

We can, however, see how the procedure may have left Pickering uncertain as how she should go about requesting a hearing, since she is the person to whom such requests are submitted under the policy. On July 27, 2009, the school sent Pickering a copy of the grievance procedure and requested that if she wished to submit a grievance, she submit it to the school board president, Dwyer, at the address provided in the letter. While Pickering did not have this information when she sent the July 22 letter that she contends was sufficient to initiate the school's grievance procedure, she did send that letter to Dwyer and the other board members.

We conclude there was some uncertainty in the policy as to whom Pickering should submit her request for hearing, at least until July 27, 2009. But this uncertainty did not prejudice her because her letter was sent to the appropriate official. More importantly, such uncertainty does not excuse her from her obligation to initiate a grievance under the school's grievance policy. *See Univ. of Tex. Med. Branch v. Hohman*, 6 S.W.3d 767, 775

(Tex.App.-Houston [1st Dist.] 1999, pet. dism'd w.o.j.) ("When it is unclear whether the employer has a post-termination grievance procedure, or it is unclear what the procedure is, and the terminated employees timely notify the employer that they are invoking the grievance procedure, terminated employees have adequately implicated the grievance procedures.") (citing *Beiser v. Tomball Hosp. Auth.*, 902 S.W.2d 721, 724 (Tex.App.-Houston [1st Dist.] 1995, writ denied)); *see also Berry v. Bd. of Regents of Tex. S. Univ.*, 116 S.W.3d 323, 325 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) ("To the extent the steps in such a [grievance] procedure are unclear, as in this case, an employee's request to ranking officials of the employer to invoke the procedure (*i.e.*, whatever it may be) can hardly be denied effect, but an employee is not relieved of the requirement to initiate a grievance."). The school's grievance procedure clearly informed Pickering that to initiate a grievance she needed to request a hearing before the school board. We therefore review the evidence to determine if Pickering submitted a request for a hearing before the school board to any board member or other appropriate person associated with the school.

**D. Pickering did not comply with the school's grievance procedure**

*6 Pickering's petition asserts two incidents on which her claims rest: the July 9 corrective action plan and Pickering's August 3 "constructive discharge." In its plea to the jurisdiction, the school asserts that Pickering failed to initiate a grievance within ninety days of both incidents, as required by the Whistleblower Act. TEX. GOV'T CODE ANN. § 554.006(b). [FN4] We therefore turn to that issue.

> FN4. Both the statute and the school's grievance procedure allow for this deadline to run from the date an incident is discovered through reasonable diligence, but the record establishes that Pickering was aware of these incidents as of July 9 and August 3, respectively.

**1. Pickering's alleged constructive discharge**

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2011 WL 3612288 (Tex.App.-Hous. (1 Dist.))
(Cite as: 2011 WL 3612288 (Tex.App.-Hous. (1 Dist.)))

School board president Dwyer's affidavit states that Pickering did not initiate a grievance relating to her alleged August 3, 2009 constructive discharge. The only communication in the record that makes any reference to Pickering's resignation or constructive discharge is her August 3rd resignation letter, which does not request a hearing or make any mention of a grievance or appeal, though she had a copy of the grievance procedure at that time. Pickering's timeline of events in her petition does not indicate she had any communications with the school board after her August 3rd resignation. Nor does she contend on appeal that she initiated or attempted to initiate a grievance with respect to her August 3rd resignation. The trial court's ruling is expressly based on Pickering's July 22 letter, which predated Pickering's resignation. This letter does not reference Pickering's resignation. The record thus establishes that Pickering did not initiate a grievance with respect to the August 3, 2009 constructive discharge alleged in her petition. *See Jordan v. Ector Cnty.,* 290 S.W.3d 404, 406 (Tex.App.-Eastland 2009, no pet.) (holding that grievance filed before employee's termination could not satisfy section 554.006 with respect to her whistleblower claim based on retaliatory termination). The trial court therefore erred in denying the school's plea to the jurisdiction with respect to Pickering's constructive discharge claim.

**2. Pickering's alleged demotion**

On appeal, Pickering relies extensively on her July 9 letter to the school board to show that she initiated a grievance regarding her "demotion" via the corrective action plan. But we cannot determine whether this letter was sufficient to initiate grievance because we cannot consider its contents, which were not made part of the record. *See Sowell,* 263 S.W.3d at 38; *Till,* 10 S.W.3d at 733–34. Although the letter's existence is not disputed, the mere existence of a letter from Pickering to the school board does not establish compliance with the school's grievance procedure. We cannot tell whether the letter notified the school that Pickering sought to invoke its grievance procedure. *See Hoh-*

*man,* 6 S.W.3d at 775 (noting that, when grievance procedure is unclear, employee may satisfy statutory requirement by timely notifying employer that she is invoking the grievance procedure); *Berry,* 116 S.W.3d at 325 (noting that when grievance procedures are unclear, an employee's request to ranking officials to invoke the grievance procedure will be effective). The July 9 letter, therefore, is not evidence that Pickering initiated the school's grievance policy for her alleged demotion.

*7 In her July 22 letter, relied on by the trial court, Pickering complained of the board's negative appraisal of her performance and specifically stated that Pickering "appeals the decision to place her on a professional growth plan," but does not contend that such action constituted a demotion. She then requested that "as part of that appeal, she be afforded due process, meaningful hearing pursuant to the mandates of *Ferguson v. Thomas,* before an impartial and academically oriented hearing officer or panel." Essentially, Pickering communicated a desire to appeal the school board's decision to place her on a corrective action plan but not a desire to do so through the school's grievance procedure, which only entitled her to a hearing before the board. Instead, Pickering's counsel wanted the school to create a certain type of hearing procedure for Pickering so that her claims could be heard by a different authority, presumably because her complaints related to alleged misconduct by board members themselves.

Although Pickering's counsel represented that Pickering had a due process right to this type of hearing, he provided no basis for that assertion. The evidence demonstrates that Pickering was an at-will employee of the school. At-will employees generally have no property right in their continued employment that will support a due process claim, and the existence of a grievance procedure does not, alone, create such a property right. *See Cnty. of Dallas v. Wiland,* 216 S.W.3d 344, 353–54 (Tex.2007) (stating that administrative system that provides at-will employees procedures for hearing

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2011 WL 3612288 (Tex.App.-Hous. (1 Dist.))
(Cite as: 2011 WL 3612288 (Tex.App.-Hous. (1 Dist.)))

and deciding grievances does not, alone, create property rights); *Trostle v. Combs,* 104 S.W.3d 206, 211 (Tex.App.-Austin 2003, no pet.) ("A protected property interest in employment, process, or benefit exists only when an employee has a 'legitimate claim of entitlement' to the employment, process, or benefit.... The presumption that employment in Texas is at will is difficult to overcome.") (internal citations omitted); *see also Hitchcock v. Bd. of Trs. Cypress–Fairbanks Indep. Sch. Dist.,* 232 S.W.3d 208, 217–18 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (rejecting due process, open courts, and equal protection challenges to school's fifteen-day deadline for initiating grievance procedure).

In her July 27 response to Pickering's July 22 letter, the school's counsel told Pickering that the due process rights she invoked were not applicable to her as an at-will employee. The school's counsel invited Pickering to initiate a grievance pursuant to the school's grievance procedure, which she provided to Pickering as an attachment to the letter, and advised Pickering on where to send a request for hearing. Pickering did not respond or take further action to initiate a grievance. Pickering's only further communication with the school was her August 3 resignation letter.

We conclude that Pickering's July 22 letter put the school on notice that Pickering wished to challenge the board's decision to place her on a corrective action plan. *See Hitchcock Indep. Sch. Dist. v. Walker,* No. 01–10–00669–CV, 2010 WL 5117912, at *6 (Tex.App.-Houston [1st Dist.] Dec. 16, 2010, no pet.) (holding that properly filed grievance contained sufficient reference to basis for retaliation claim to satisfy section 554.006's initiation requirement). [FN5] But Pickering's request for a hearing before a different grievance authority, and her decision not to take any further action after the school declined that request and provided her with a copy of the school's grievance procedure, demonstrates that Pickering neither expected nor desired a hearing before the school board—the only grievance process recognized in the school's grievance pro-

cedure. The school's July 27 letter made Pickering aware that it did not believe she had initiated a grievance, and her subsequent conduct demonstrates that she also did not believe she had initiated the school's grievance procedure by her July 22 letter. She never responded that she felt her July 22 letter was sufficient and no request to Dwyer was necessary. She never inquired when her hearing before the board would be. She never submitted any documents in anticipation of a hearing. Rather, her conduct indicates that she believed she was entitled to an independent grievance authority and was unwilling to have her grievance heard by the school board, as provided in the school's grievance procedure.

> FN5. The facts of this case are, in some ways, the inverse of the facts in *Walker.* In *Walker* it was undisputed that Walker properly filed a level one grievance according to the school's grievance procedure, but the parties disputed whether the substance of that grievance was sufficient to put the school on notice of Walker's whistleblower claim. *Walker,* 2010 WL 5117912, at *6. Here, there is little dispute that the school understood the nature of Pickering's retaliation complaint, but the parties disagree about whether Pickering properly filed a grievance in accordance with the school's grievance procedure.

*8 Merely complaining of the school board's action, without attempting to comply with the grievance procedure provided by the school, does not satisfy section 554.006's requirement that a claimant initiate a grievance or appeal before filing suit. *See Ruiz v. Austin Indep. Sch. Dist.,* No. 03–02–00798–CV, 2004 WL 1171666, at *7 (Tex.App.-Austin May 27, 2004, no pet.) (holding that employee who had copy of grievance procedure did not satisfy section 554.006 by raising concerns in meetings with school and its attorneys when employee failed to formally initiate a grievance). The purpose of section 554.006's initiation

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2011 WL 3612288 (Tex.App.-Hous. (1 Dist.))
**(Cite as: 2011 WL 3612288 (Tex.App.-Hous. (1 Dist.)))**

requirement is "to afford the governmental entity with the opportunity to investigate and correct its errors and to resolve disputes before incurring the expense of litigation." *Walker,* 2010 WL 5117912, at *6. The school's grievance procedure provided a process by which the school could conduct such an investigation, allowing for the presentation of the grievance by the complainant or her counsel, response from a representative of the administration, and the submission of documents. By declining to participate in a hearing before the school board, Pickering denied the school a full opportunity to investigate her allegations and to adequately develop a basis for resolving her complaints. *See Aguilar v. Socorro Indep. Sch. Dist .,* 296 S.W.3d 785, 789–90 (Tex.App.-El Paso 2009, no pet.) (holding that claimant did not satisfy section 554.006's initiation requirement when she filed a grievance but then refused to participate in school's arbitration hearing and observing that "[b]y not complying with the arbitrator's requests for information or presenting information that would allow the arbitrator to reach a decision, Aguilar's action did not serve the purpose of the statute—to afford the employer 'the opportunity to correct its errors by resolving disputes before being subjected to the expense and effort of litigation.' ").

Pickering contends that the school owed her a duty to respond to her "appeal" by informing her that it was denying her request for a "meaningful hearing" that complied with due process before "an impartial and academically oriented hearing officer or panel" but would grant her a hearing before the board or a hearing pursuant to the written grievance procedure. But the statute places the onus on Pickering to initiate the grievance procedure, and the school provided her with its written grievance procedure and told her where to send her request for hearing. *See* TEX. GOV'T CODE ANN. § 554.006(a) ("A public employee must initiate action under the grievance or appeal procedures of the employing state or local governmental entity ..."). Pickering elected not to do so.

We hold that a claimant does not properly initiate a grievance when she communicates her complaints but conditions her request for appeal on the provision of a grievance process that she knows to be different than the process in the school's grievance procedure and declines to initiate a grievance under the school's existing procedure after it has been provided to her. *See Ruiz,* 2004 WL 1171666, at *7 (holding claimant did not initiate grievance procedure by making school aware of her whistleblower claims when school informed her of its grievance procedure and claimant failed to take further action); *cf. Van Indep. Sch. Dist. v. McCarty,* 165 S.W.3d 351, 353–54 (Tex.2005) ("We also decline to adopt our dissenting colleague's view that administrative procedures can be ignored if a creative applicant convinces a court that some other procedure was just as good. An employee's letter, phone call, or chance conversation with a member might give a board 'the first chance to consider his grievance,' but exhaustion of administrative remedies generally requires compliance rather than avoidance.").[FN6]

> FN6. Although *McCarty* analyzes whether a party has exhausted administrative remedies, rather than whether a party has initiated an administrative process, its reasoning is analogous to the extent that a whistleblower claimant may be required to comply with the employer's procedure for initiation of a grievance rather than engaging in conduct aimed at avoiding, rather than commencing, the process outlined in the employer's grievance or appeal procedure.

### 3. Summary

*9 There were no disputed facts in this case: the parties agree on what communications were made and when. The dispute here is over the legal import of those communications. Specifically, did the July 22 letter initiate the school's grievance procedure? We hold that the evidence—the grievance policy, the July 22 letter, the July 27 letter, the Au-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2011 WL 3612288 (Tex.App.-Hous. (1 Dist.))
(Cite as: 2011 WL 3612288 (Tex.App.-Hous. (1 Dist.)))

gust 3 letter, and the affidavit—satisfied the school's initial burden of proving that Pickering did not initiate a grievance with respect to its July 9 corrective action plan or Pickering's August 3 resignation. *See Miranda,* 133 S.W.3d at 228; *Porretto,* 251 S.W.3d at 711. The burden then shifted to Pickering to come forward with evidence raising an issue of fact as to whether she initiated a grievance under the school's grievance procedure. *See Miranda,* 133 S.W.3d at 228; *Patterson,* 251 S.W.3d at 711. Pickering presented no evidence, and we find no evidence in the record, raising a fact question as to whether she "initiate[d] action under the [school's] grievance or appeal procedures." TEX. GOV'T CODE ANN. § 554.006(a). The trial court therefore erred in denying the school's plea to the jurisdiction. *See Miranda,* 133 S.W.3d at 228; *Patterson,* 251 S.W.3d at 711.

### Conclusion

We hold that the evidence before the trial court on the school's plea to the jurisdiction conclusively established that Pickering failed to initiate a grievance in accordance with the school's grievance procedure. Because initiation of a grievance or appeal is a jurisdictional prerequisite to suit under the Whistleblower Act, the trial court erred in denying the school's plea to the jurisdiction. We reverse the trial court's order and dismiss Pickering's claims against the school for lack of jurisdiction.

Tex.App.-Houston [1 Dist.],2011.
West Houston Charter School Alliance v. Pickering
Not Reported in S.W.3d, 2011 WL 3612288 (Tex.App.-Hous. (1 Dist.))

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

# APPENDIX
# 14

Westlaw.

Not Reported in S.W.3d, 2004 WL 1171666 (Tex.App.-Austin)
**(Cite as: 2004 WL 1171666 (Tex.App.-Austin))**

▷
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION
AND SIGNING OF OPINIONS.

*MEMORANDUM OPINION*

Court of Appeals of Texas,
Austin.
Patricia RUIZ and Chantell Ruiz, Appellants
v.
AUSTIN INDEPENDENT SCHOOL DISTRICT,
Andy Welch, Principal Darrell Baker, and Coach
Lee Thompson, Appellees.

No. 03–02–00798–CV.
May 27, 2004.

**Background:** Mother and daughter, who had been
terminated from their jobs as hall monitor and
freshman girls basketball coach for high school fol-
lowing an altercation with the head basketball
coach, brought action against school district, its
communications director, the principal of the high
school, and the head coach, alleging defamation
and whistleblower causes of action. The 98th Judi-
cial District Court, Travis County, Scott H. Jenkins,
J., granted summary judgment in favor of defend-
ants. Plaintiffs appealed.

**Holdings:** The Court of Appeals, Puryear, J., held
that:
(1) defamation claims were time barred, and
(2) plaintiffs' failure to initiate a grievance or ap-
peal of their termination precluded whistleblower
claims.

Affirmed.

West Headnotes

**[1] Limitation of Actions 241 ☜55(1)**

241 Limitation of Actions

241II Computation of Period of Limitation
241II(A) Accrual of Right of Action or De-
fense
241k55 Torts
241k55(1) k. In general. Most Cited
Cases
Defamation claims brought by high school's
former freshman girls basketball coach and her
mother, which stemmed from news reports indicat-
ing that she was relieved of her coaching duties
after allowing her team to look at sexually explicit
playing cards, had to be filed within one year of the
last news report on that topic. V.T.C.A., Civil Prac-
tice & Remedies Code § 16.002.

**[2] Limitation of Actions 241 ☜130(6)**

241 Limitation of Actions
241II Computation of Period of Limitation
241II(H) Commencement of Proceeding; Re-
lation Back
241k130 New Action After Dismissal or
Nonsuit or Failure of Former Action
241k130(6) k. New action in different
forum. Most Cited Cases
One-year statute of limitations for defamation
claims brought by former school district employees
was not tolled, even though their case against
school district was removed to federal court and
that court ultimately dismissed the claims, since
plaintiffs did not refile their claims in state court
until 79 days after the federal court's dismissal.
V.T.C.A., Civil Practice & Remedies Code §§
16.002, 16.064.

**[3] Limitation of Actions 241 ☜130(7)**

241 Limitation of Actions
241II Computation of Period of Limitation
241II(H) Commencement of Proceeding; Re-
lation Back
241k130 New Action After Dismissal or
Nonsuit or Failure of Former Action
241k130(7) k. Failure of action for

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2004 WL 1171666 (Tex.App.-Austin)
**(Cite as: 2004 WL 1171666 (Tex.App.-Austin))**

want of jurisdiction. Most Cited Cases

Statute allowing the tolling of the one-year statute of limitations for defamation claims when an action is dismissed for lack of jurisdiction and then refiled in a court of proper jurisdiction within 60 days applied to action that was initially filed in state court but then removed by the defendants to federal court, which refused to exercise jurisdiction. V.T.C.A., Civil Practice & Remedies Code §§ 16.002, 16.064.

**[4] Limitation of Actions 241 ⬤⟿104.5**

241 Limitation of Actions
    241II Computation of Period of Limitation
        241II(G) Pendency of Legal Proceedings, Injunction, Stay, or War
            241k104.5 k. Suspension or stay in general; equitable tolling. Most Cited Cases

Equitable tolling theory would not be used to extend one-year limitations period for former school district employees' defamation claims against school district, since the case did not include a pleading error and plaintiffs did not exercise diligence in avoiding the running of the limitations period. V.T.C.A., Civil Practice & Remedies Code § 16.002.

**[5] Education 141E ⬤⟿420**

141E Education
    141EII Public Primary and Secondary Schools
        141EII(C) Officers and Employees
            141Ek411 Appointment and Tenure
                141Ek420 k. Proceedings and review.
Most Cited Cases
    (Formerly 345k63(1) Schools)

Former employees of school district who were terminated following altercation with high school's head basketball coach were required only to initiate grievance process, and not exhaust all administrative remedies, in order to bring whistleblower claims. V.T.C.A., Government Code §§ 554.002, 554.006(a).

**[6] Education 141E ⬤⟿420**

141E Education
    141EII Public Primary and Secondary Schools
        141EII(C) Officers and Employees
            141Ek411 Appointment and Tenure
                141Ek420 k. Proceedings and review.
Most Cited Cases
    (Formerly 345k63(1) Schools)

Former employees of school district who were terminated following altercation with high school's head basketball coach did not "initiate" grievance process, as required to bring whistleblower claims, where they merely raised their concerns regarding retaliation at a meeting with the school district's executive director of human resources, director of employee relations, and attorney, and did not avail themselves of the grievance appeal process described in the termination letter. V.T.C.A., Government Code §§ 554.002, 554.006(a).

From the District Court of Travis County, 98th Judicial District, No. GN201207; Scott H. Jenkins, Judge Presiding.Jimmie L.J. Brown Jr., for Patricia Ruiz and Chantell Ruiz.

Oscar G. Trevino, for Austin Independent School District.

Dorcas A. Green, for Andy Welch, Principal Darrell Baker and Coach Lee Thompson.

Eric W. Schulze, for Austin Independent School District, Andy Welch, Principal Darrell Baker and Coach Lee Thompson.

Before Chief Justice LAW, Justices B.A. SMITH and PURYEAR.

***MEMORANDUM OPINION***
DAVID PURYEAR, Justice.

\*1 Appellants Patricia Ruiz and Chantell Ruiz (the "Ruizes") sued appellees Austin Independent School District, Andy Welch, Darrell Baker, and Lee Thompson (collectively "appellees"), alleging defamation and whistleblower causes of action. Ap-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2004 WL 1171666 (Tex.App.-Austin)
(Cite as: 2004 WL 1171666 (Tex.App.-Austin))

pellees moved for summary judgment based on their defenses of (1) limitations, (2) governmental and statutory immunity, and (3) failure to exhaust administrative remedies. The trial court granted appellees' motion for summary judgment without specifying the basis for doing so, and the Ruizes appeal. We will affirm the trial court's summary judgment.

## BACKGROUND[FN1]

FN1. These facts are taken from the parties' briefs and summary-judgment evidence. Our factual summary includes some evidence that favors the judgment. *But see Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999) ("When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant."). We include this evidence only to provide a context for the proceedings in the trial court; our factual summary should not be construed as a conclusive finding of any fact.

Patricia and Chantell Ruiz are mother and daughter, respectively. Both were employed by Austin Independent School District ("AISD") at the Johnston High School campus. Patricia worked as a hall monitor, and Chantell was a special education aide and freshman girls basketball coach; Chantell was supervised by head basketball coach Lee Thompson.

During the 2000 fall semester, Darrell Baker, principal of Johnston High School, received information that caused him to believe that Patricia was involved in an organized effort to remove Thompson from his position as head basketball coach at the high school. As a result, Baker directed Patricia not to interfere with the basketball program. On November 17, 2000, Chantell, accompanied by her mother, made a complaint to Principal Baker that Coach Thompson violated University Interscholastic League policy by using an ineligible player. Chantell later learned that despite Baker's

assurances, he did not report the violation to the University Interscholastic League.

On January 2, 2001, at a high school basketball game, Chantell witnessed several female Johnston High School basketball players looking at playing cards with pictures of naked men on the cards. Chantell confiscated the cards and returned them to an adult relative of one of the players. Two weeks later, after learning about the incident from parents, AISD Area Superintendent Rosalinda Hernandez informed Principal Baker about the basketball players and the naked picture playing cards. Baker investigated the incident by contacting the parents who had reported the incident and then by interviewing the students. Baker then met with Coach Thompson and Chantell, and Chantell stated that the girls had been using inappropriate playing cards at a basketball game, that she had taken up the playing cards, and had given them to the parent of one of the girls. Baker also discussed the lack of support Chantell had demonstrated toward Thompson throughout the season, and Chantell and Thompson were instructed to get along for the remainder of the season. Baker claims he told Chantell to support Thompson one hundred percent for the remainder of the season.

On January 31, Richard Welch, the communications director for AISD, was contacted by a television reporter for K–EYE News, seeking information about a coach at Johnston High School who was under investigation for "pornographic" playing cards. Welch informed the reporter that he did not know any facts related to her questions but would investigate and return her call. Welch then called Baker, who informed him that he was investigating a complaint involving the freshman girls basketball players but had not yet taken any administrative action.

*2 On February 2, Thompson was preparing the gym for the school's annual parents' appreciation game and noticed that he had not seen Chantell or the freshman girls basketball team. He found Chantell in the parking lot with some of her

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2004 WL 1171666 (Tex.App.-Austin)
**(Cite as: 2004 WL 1171666 (Tex.App.-Austin))**

players; Chantell was discussing game strategy with the players on their way into the gym for the game. Thompson approached the group, telling the students to go into the gym to help decorate for the game. A confrontation between Thompson and Chantell ensued, in which both were yelling. Thompson later told Baker about the confrontation, and Baker spoke to both Thompson and Chantell, as well as an assistant principal who witnessed the incident. Baker then suspended Chantell from her coaching duties.

According to Thompson, later that evening, when Chantell's parents came to pick her up at school, Chantell informed her parents of Baker's decision to suspend her from her coaching duties, and another confrontation ensued inside the gym between the Ruiz family (Chantell, Patricia, and Patricia's husband) and Thompson. Thompson claimed to have felt threatened by the Ruizes' raised voices, language, and conduct, and was concerned for his safety.[FN2]

> FN2. Chantell disputes Thompson's account of the events of that evening.

Also on February 2, during its 10:00 p.m. newscast, K–EYE aired a story in which the reporter stated that at least two parents told the school board that sexually explicit playing cards were being passed through the hands of players and an unnamed coach. During the same report, the reporter asked Welch about the unnamed coach's response to the allegations, and he responded, "[S]he just did not deny it, that basically that it was, it was of an adult situation." Finally, Welch informed the reporter that the coach had been suspended pending further investigation. On February 3, 2001, the Austin American–Statesman ran a story about Chantell being relieved of her coaching duties after allowing her team to look at sexually explicit playing cards.

On February 5, Thompson relayed to Baker his version of the incident that occurred on the evening of February 2 in the gym. A parent who witnessed the incident corroborated Thompson's story. Baker decided to suspend both Chantell and her mother with pay. Baker further recommended to AISD that Chantell and Patricia be terminated for "failure to follow ... directives that they cooperate and support Coach Thompson" and for conduct that was "inappropriate, unprofessional, was not conducive to the learning environment at Johnston High School, and further constituted disorderly and disruptive conduct on school premises."

On February 7, the Austin American–Statesman ran a second story, reporting that Chantell was placed on administrative leave while school officials investigated allegations that she allowed members of the girls basketball team to look at playing cards depicting naked men. The article also reported that Chantell denied the allegations, saying she had confiscated the cards from a student.

On February 13, K–EYE news ran its second report in which a student basketball player stated that the players had shown Chantell a couple of cards and she just looked at the cards as the basketball players were laughing and making comments. The report also included a confirmation by Superintendent Hernandez that Chantell was relieved of her coaching responsibilities pending investigation.

*3 On February 22, both Chantell and Patricia were terminated from their employment and were notified in writing by Michael Houser, the AISD executive director of human resources. In his letter, Houser informed Chantell and Patricia of their right to appeal AISD's termination decision. Neither Chantell nor Patricia filed an appeal.

On March 22, Chantell and Patricia filed a suit in Travis County district court against AISD, Welch, Baker, and Thompson, alleging violations of due process and freedom of speech under the federal constitution, violations of Chantell's and Patricia's civil rights, defamation, invasion of privacy, and a whistleblower claim. The case was removed to federal district court in April. On January 23, 2002, the federal court entered judgment in favor of

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2004 WL 1171666 (Tex.App.-Austin)
**(Cite as: 2004 WL 1171666 (Tex.App.-Austin))**

appellees on all federal claims, declined to entertain supplemental jurisdiction over the Ruizes' state-law claims, and dismissed the Ruizes' state-law claims without prejudice to refiling.

On April 12, the Ruizes filed their second lawsuit in the Travis County district court, raising the same state-law causes of action against the same parties that had been raised and dismissed in their first suit—slander, libel, defamation, and whistleblower claims. Appellees filed a motion for summary judgment, alleging (1) limitations, (2) governmental and statutory immunity, (3) failure to exhaust administrative remedies, and (4) no authority to sue individuals under the whistleblower act. The trial court granted appellees' motion for summary judgment without specifying the grounds upon which it relied. This appeal followed.

## DISCUSSION

### Standard of Review

Rule of civil procedure 166a provides that summary judgment is properly granted only when the movant establishes that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Missouri Pac. R.R. v.. Lely Dev. Corp.,* 86 S.W.3d 787, 790 (Tex.App.-Austin 2002, pet. dism'd). Because the propriety of a summary judgment is a question of law, we review the trial court's decision de novo. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 220 (Tex.2003). The standards for review of a traditional summary judgment are well established: (1) the movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true; and (3) the court must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the nonmovant's favor. Tex.R. Civ. P. 166a(c); *Pustejovsky v. Rapid–Am. Corp.,* 35 S.W.3d 643, 645–46 (Tex.2000); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49

(Tex.1985).

A defendant seeking summary judgment must as a matter of law negate at least one element of each of the plaintiff's theories of recovery or plead and prove each element of an affirmative defense. *Missouri Pac.,* 86 S.W.3d at 790. Not until the defendant establishes its right to summary judgment does the plaintiff bear the burden of raising a fact issue. *Id.* If a trial court's order granting summary judgment does not specify the basis for the court's ruling, the summary judgment will be affirmed if any of the theories advanced by the movant are meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989).

### Limitations

*4 By their first two issues, the Ruizes argue that the trial court failed to properly apply the statute of limitations and incorrectly interpreted section 16.064 of the civil practice and remedies code. A defendant claiming entitlement to summary judgment on limitations grounds must conclusively establish his defense of limitations. *Knott,* 128 S.W.3d at 220; *Diaz v. Westphal,* 941 S.W.2d 96, 97–98 (Tex.1997). If a plaintiff asserts the applicability of a tolling provision, the moving defendant bears the burden of negating its applicability as a matter of law. *Diaz,* 941 S.W.2d at 98.

The statute of limitations for defamation claims of slander and libel is one year from the day after the cause of action accrues. Tex. Civ. Prac. & Rem.Code Ann. § 16.002 (West 2002). A cause of action for libel or slander accrues on the date of communication. *Ellert v. Lutz,* 930 S.W.2d 152, 156 (Tex.App.-Dallas 1996, no writ); *Salazar v. Amigos Del Valle, Inc.,* 754 S.W.2d 410, 412 (Tex.App.-Corpus Christi 1988, no writ). The defendant must prove when the cause accrued. *Burns v. Thomas,* 786 S.W.2d 266, 267 (Tex.1990).

[1] The Ruizes' defamation cause of action stemmed from the K–EYE news reports and the articles in the Austin American–Statesman. The Austin–American Statesman ran its last story about

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2004 WL 1171666 (Tex.App.-Austin)
(Cite as: 2004 WL 1171666 (Tex.App.-Austin))

Chantell on February 7, 2001, and K–EYE ran its last report on February 13, 2001. The Ruizes were thus required to file their defamation claims by February 13, 2002. They filed their first lawsuit on March 22, 2001. That case was removed to federal court, and the federal court ultimately dismissed the defamation claims on January 23, 2002. The Ruizes filed their second suit on April 12, 2002, more than a year after the cause of action accrued. Thus, their cause of action was barred by the statute of limitations unless a tolling provision applies.

[2] Section 16.064 of the civil practice and remedies code allows the tolling of the one-year statute of limitations under two conditions: (1) the first cause of action was dismissed because of a lack of jurisdiction in the trial court where the action was first filed; and (2) not later than the sixtieth day after the date of dismissal, the action is commenced in a court of proper jurisdiction. Tex. Civ. Prac. & Rem.Code Ann. § 16.064 (West 1997). [FN3] This Court has held that a federal court's refusal to exercise jurisdiction over a pendent state claim is tantamount to a dismissal for lack of jurisdiction. *Vale v. Ryan,* 809 S.W.2d 324, 327 (Tex.App.-Austin 1991, no writ). Even with the benefit of this tolling statute, however, the Ruizes failed to satisfy the statute of limitations, for their second lawsuit was not filed until seventy-nine days after the federal court dismissed the first lawsuit.

FN3. Section 16.064 provides in full:

**§ 16.064. Effect of Lack of Jurisdiction**

(a) The period between the date of filing an action in a trial court and the date of a second filing of the same action in a different court suspends the running of the applicable statute of limitations for the period if:

(1) because of lack of jurisdiction in the trial court where the action was first filed, the action is dismissed or the judgment is set aside or annulled in a direct proceeding; and

(2) not later than the 60th day after the date the dismissal or other disposition becomes final, the action is commenced in a court of proper jurisdiction.

(b) This section does not apply if the adverse party has shown in abatement that the first filing was made with intentional disregard of proper jurisdiction.

Tex. Civ. Prac. & Rem.Code Ann. § 16.064 (West 1997).

[3] The Ruizes do not contest the date that their defamation cause of action accrued, nor the dates on which they filed suit. Instead, they argue that neither section 16.064 nor the statute of limitations should apply in this situation. They argue first that section 16.064 does not apply to them because the trial court in which the action was first filed—a Travis County district court—did not lack jurisdiction, as required by the statute. Although the suit was subsequently removed to federal court and that court refused to exercise jurisdiction, the Ruizes argue that the federal court is not the court in which the suit was first filed. And because section 16.064 does not apply to their situation, the Ruizes contend that a statute of limitations should likewise not apply. The appellees' removal of the suit to federal court is the reason the statute of limitations ran, argue the Ruizes, and appellees should not now be allowed to assert limitations as an affirmative defense since they are the parties that removed the suit and caused the statute of limitations to run. The Ruizes invoke principles of estoppel to support their argument.

*5 We refuse to abrogate the statute of limitations in the manner requested by the Ruizes. In setting a one-year statute of limitations for claims like the Ruizes', the legislature has determined that one year is a reasonable period of time for plaintiffs to present their claims. *Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 828 (Tex.1990); *Anders v.*

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2004 WL 1171666 (Tex.App.-Austin)
**(Cite as: 2004 WL 1171666 (Tex.App.-Austin))**

*Weslaco Indep. Sch. Dist.*, 960 S.W.2d 289, 292 (Tex.App.-Corpus Christi 1997, no pet.). We are not at liberty to change that to a period that the Ruizes believe is more reasonable. *See Anders*, 960 S.W.2d at 292. Moreover, we note that the federal court dismissed the Ruizes' state-law claims on January 23, 2002—before the statute of limitations had run on their defamation claims. Thus, they had an opportunity to comply with the statute of limitations, despite appellees' removal of the Ruizes' suit to federal court, but they failed to do so.

The Ruizes counter that in some instances, the legislative purpose behind the statute of limitations does not require the harsh result of its application, and this is such an instance. Indeed, the Ruizes correctly point out that this Court has recognized an equitable tolling theory, reasoning that "statutes of limitations should not apply in situations in which no party is misled or disadvantaged by an error in pleading." *Walls v. Travis County*, 958 S.W.2d 944, 946 (Tex.App.-Austin 1998, pet. denied) (recognizing that "[a]t times, courts apply limitations rules equitably rather than rigidly"); *see also Enserch Corp. v. Parker*, 794 S.W.2d 2, 5–6 (Tex.1990); *Palmer v. Enserch Corp.*, 728 S.W.2d 431, 433 (Tex.App.-Austin 1987, writ ref'd n.r.e.). The equitable tolling theory has been applied "when the wrong defendant is sued and the proper defendant is not named until after limitations has expired." *Walls*, 958 S.W.2d at 946.

[4] This case, however, does not present a situation in which the wrong defendant has been sued, the defendant has been misidentified, or any other type of pleading error. Rather, the Ruizes' federal suit was dismissed before the statute of limitations ran, and they did not re-file their suit until seventy-nine days after the federal court dismissed their claims. A plaintiff must exercise diligence in the prosecution of her suit. *Palmer*, 728 S.W.2d at 434. The party must plead and prove that she exercised due care to prevent the running of the statute or she cannot overcome the properly asserted defense of limitations. *Id.* The Ruizes have not shown that they exercised diligence in preventing the running of the statute of limitations. We see no reason to apply an equitable tolling theory to allow for an indefinite period of time within which to re-file a suit in this case. Thus, we hold that appellees proved as a matter of law that the Ruizes' defamation claims were barred by limitations and no tolling provision applied to save their claims. We overrule the Ruizes' first and second issues.

### Exhaustion of Administrative Remedies

*6 By their fourth issue, the Ruizes complain that the trial court erred in granting summary judgment in favor of appellees on the Ruizes' whistleblower claims because the court misapplied the exhaustion of administrative remedies requirement. The Ruizes contend that (1) the act does not require them to "exhaust" their administrative remedies, only initiate them, and (2) they initiated their administrative remedies when they attended a meeting with AISD personnel on February 20, 2001.

The whistleblower act provides that "[a] state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." Tex. Gov't Code Ann. § 554.002 (West Supp.2004). Before an employee may file suit in district court under the act, the employee must first initiate the grievance or appeal procedures of the employing state or governmental entity. Tex. Gov't Code Ann. § 554.006(a) (West Supp.2004). The employee must initiate the grievance procedures within ninety days after the alleged violation occurred or was discovered. *Id.* § 554.006(b). If the employer does not render a decision within sixty days from the date the employee initiated the grievance, the employee may file suit in district court. *Id.* § 554.006(d).

The whistleblower act has two purposes: (1) to protect public employees from retaliation by their employers for reporting violations of law in good faith and (2) to secure lawful conduct from those

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2004 WL 1171666 (Tex.App.-Austin)
(Cite as: 2004 WL 1171666 (Tex.App.-Austin))

who direct and conduct the affairs of public bodies. *Gregg County v. Farrar,* 933 S.W.2d 769, 775 (Tex.App.-Austin 1996, writ denied). In addition, the act affords the governmental entity an opportunity to correct its errors by resolving disputes before facing litigation, as the cost of litigation is ultimately borne by the public. *Fort Bend Indep. Sch. Dist. v. Rivera,* 93 S.W.3d 315, 318 (Tex.App.-Houston [14th Dist.] 2002, no pet.); *Farrar,* 933 S.W.2d at 775. The act encourages compliance through informal processes rather than litigation. *Rivera,* 93 S.W.3d at 318; *Farrar,* 933 S.W.2d at 775 (quoting *Texas Air Control Bd. v. Travis County,* 502 S.W.2d 213, 215 (Tex.Civ.App.-Austin 1973, no writ)).

This Court has held that failure to comply with the exhaustion of administrative remedies requirement deprives a court of jurisdiction over a whistleblower claim. *Farrar,* 933 S.W.2d at 777. The absence of subject-matter jurisdiction may be raised by a plea to the jurisdiction or a motion for summary judgment. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000).

[5] Regarding the Ruizes' first argument—that they were required only to initiate the grievance process, not exhaust all administrative remedies—we agree. In 1995, the legislature amended section 554.006(a) by replacing the word "exhaust" with the word "initiate." Act of May 22, 1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 610, *amended by* Act of June 15, 1995, 74th Leg., R.S., ch. 721, § 6, 1995 Tex. Gen. Laws 3812, 3813. The amendment was apparently intended to clarify the procedural requirements under the act so that it more accurately reflects the true process of events required under the statute. *City of San Antonio v. Marin,* 19 S.W.3d 438, 441 (Tex.App.-San Antonio 2000, no pet.). Even before the statute was amended, however, complete exhaustion of administrative remedies was not required. *Id.* Thus, we agree with the Ruizes; they were not required to completely exhaust their administrative remedies before filing suit.

*7 [6] Although the whistleblower act does not require complete exhaustion of remedies, an employee is nevertheless required to initiate the grievance procedure and allow the employer an opportunity to reach a final decision within sixty days before filing suit. Tex. Gov't Code Ann. § 554.006(d); *Rivera,* 93 S.W.3d at 319-20. This the Ruizes failed to do, as evidenced by the exhibits attached to appellees' motion for summary judgment. In the termination letter sent to the Ruizes by Houser, the executive director of human resources for AISD, Houser informed the Ruizes of their right to file a grievance appeal regarding AISD's decision to terminate employment. An excerpt from a deposition of Chantell reveals that she did not avail herself of the grievance appeal process described in the letter:

Q. Ms. Ruiz, have you ever complained to the Austin school district board of trustees about your termination?

A. No, ma'am.

Q. Have you ever been to an Austin school district board meeting?

A. No, ma'am.

Q. Have you ever met with superintendent, Dr. Forgione, about your termination?

A. No, ma'am.

Q. Did you ever me[e]t with general counsel, Mel Waxler, about your termination?

A. No, ma'am.

....

Q. Have you met with Principal Darrell Baker since you were terminated?

A. No.

Q. Have you met with any other A.I.S.D. offi- cial?

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2004 WL 1171666 (Tex.App.-Austin)
**(Cite as: 2004 WL 1171666 (Tex.App.-Austin))**

A. No.

....

Q. Have you met with anyone at the Austin Independent School District after February 22nd, 2001 [the date of the Ruizes' termination]?

A. No.

Similarly, Patricia's deposition reveals that she acknowledged receiving correspondence from the office of the attorney general informing her of the requirement to initiate administrative remedies before filing a whistleblower suit; however, she did not initiate any grievance procedure with the school district:

Q. Did you initiate a grievance procedure with the Austin Independent School District?

A. I just filed a suit against them is all I did.

Finally, appellees included a letter that was sent by the Ruizes' counsel to AISD's counsel and to Houser, informing them that he did "not believe the administrative process is possible, in light of the whistleblower claims which both my clients have which requires a more timely filing than that permitted by pursuing the administrative process."

The Ruizes contend that they did in fact initiate a grievance appeal. They claim that they did so when they attended a meeting on February 20, 2001 with Houser, Laura Otey, director of employee relations, and AISD's attorney. The Ruizes claim that they raised their concerns regarding retaliation under the whistleblower act at that meeting. This meeting, however, did not satisfy the requirement that they invoke a grievance procedure before filing suit. The Ruizes were terminated by letter dated February 22. In that letter, the Ruizes were informed of their right to appeal AISD's decision to terminate them by "following the Administrative Appeal Procedures for Classified Employees Being Terminated contained on the reverse side of the attached *Administrative Appeal for Termination Form.*" The Ruizes chose not to do so. We con-

clude that the Ruizes failed to initiate action under the district's formal appeal process as described in the February 22 termination letter. Because the Ruizes failed to initiate a grievance or appeal of their termination before filing suit, the trial court was without subject-matter jurisdiction to consider their whistleblower claim. We therefore overrule the Ruizes' fourth issue.

**CONCLUSION**
**\*8** We hold that the Ruizes' defamation claims were barred by the statute of limitations as a matter of law, and the trial court was without jurisdiction to consider their whistleblower claims because they failed to initiate a grievance or appeal of their termination.[FN4] Accordingly, the trial court properly granted summary judgment in favor of appellees, and we affirm that judgment.

> FN4. In light of our holding that all of the Ruizes' claims were barred either because the statute of limitations had run or because they failed to exhaust their administrative remedies, we do not reach the Ruizes' issues challenging appellees' assertion of governmental and statutory immunity as bases for the summary judgment. *See* Tex.R.App. P. 47.1 (opinion should be as brief as practicable).

Tex.App.-Austin,2004.
Ruiz v. Austin Independent School Dist.
Not Reported in S.W.3d, 2004 WL 1171666 (Tex.App.-Austin)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

# APPENDIX
# 15

Westlaw.

183 S.W.3d 94, 24 IER Cases 113
**(Cite as: 183 S.W.3d 94)**

▷

Court of Appeals of Texas,
Dallas.
DALLAS COUNTY and Mike Dupree, Appellants,
v.
Armando H. GONZALES, Appellee.

No. 05–04–01015–CV.
Jan. 23, 2006.
Rehearing Overruled March 3, 2006.

**Background:** Deputy constable brought an action against county under the Whistleblower Act and brought another action against county and constable, alleging wrongful termination for filing a workers' compensation claim, interference with his rights under the Workers' Compensation Act, and a § 1983 claim. The defendants filed a plea to the jurisdiction in both actions and a summary judgment motion in the latter action. The 116th District Court, Dallas County, Robert H. Frost, J., denied the pleas and the summary judgment motion. County appealed.

**Holdings:** After consolidation of appeals, and on rehearing, the Court of Appeals, Fitzgerald, J., held that:
(1) deputy was terminated as required for Whistleblower Act claim;
(2) trial court had jurisdiction over whistleblower claim;
(3) genuine issue of material fact existed as to when deputy filed grievance;
(4) deputy failed to exhaust his administrative remedies regarding his claim under Anti-Retaliation Act;
(5) deputy did not assert federally protected rights in his § 1983 claim; and
(6) constable was protected from suit by official immunity.

Affirmed; affirmed in part, reversed in part, and dismissed in part.

West Headnotes

**[1] States 360 ☞191.4(1)**

360 States
   360VI Actions
      360k191 Liability and Consent of State to Be Sued in General
         360k191.4 Necessity of Consent
            360k191.4(1) k. In general. Most Cited Cases
      Sovereign immunity deprives a trial court of subject-matter jurisdiction over lawsuits against the State or other governmental units unless the State consents to suit.

**[2] Courts 106 ☞39**

106 Courts
   106I Nature, Extent, and Exercise of Jurisdiction in General
      106I(A) In General
         106k39 k. Determination of questions of jurisdiction in general. Most Cited Cases
      Whether a court has subject-matter jurisdiction is a question of law.

**[3] Pleading 302 ☞104(1)**

302 Pleading
   302III Responses or Responsive Pleadings in General
      302III(B) Dilatory Pleas and Matter in Abatement
         302k104 Plea to the Jurisdiction
            302k104(1) k. In general. Most Cited Cases
      When a plea to the jurisdiction challenges the pleadings, the court determines if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause.

**[4] Pleading 302 ☞111.36**

302 Pleading

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

183 S.W.3d 94, 24 IER Cases 113
(Cite as: 183 S.W.3d 94)

302III Responses or Responsive Pleadings in General
302III(B) Dilatory Pleas and Matter in Abatement
302k111 Decision of Issue, and Proceedings Thereon
302k111.36 k. Scope of inquiry and matters considered in general. Most Cited Cases

Pleading 302 ⬤⟶111.43

302 Pleading
302III Responses or Responsive Pleadings in General
302III(B) Dilatory Pleas and Matter in Abatement
302k111 Decision of Issue, and Proceedings Thereon
302k111.43 k. Questions of law and fact. Most Cited Cases

If a plea to the jurisdiction challenges the existence of jurisdictional facts, the court considers relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised; if the evidence creates a fact question regarding the jurisdictional issue, then the plea to the jurisdiction must be denied, but if the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the trial court rules on the plea to the jurisdiction as a matter of law.

[5] Sheriffs and Constables 353 ⬤⟶21

353 Sheriffs and Constables
353I Appointment, Qualification, and Tenure
353I(C) Deputies and Assistants, Substitutes, and Special Officers
353k16 Deputies and Delegation of Powers
353k21 k. Term and tenure of office. Most Cited Cases

In the absence of evidence that the violations of law by an elected constable, of which deputy constable complained, were not those of an employing governmental entity, the county failed to prove that the Whistleblower Act was not applicable to

deputy, who was allegedly discharged after complaining of constable's conduct. V.T.C.A., Government Code § 554.002(a).

[6] Sheriffs and Constables 353 ⬤⟶21

353 Sheriffs and Constables
353I Appointment, Qualification, and Tenure
353I(C) Deputies and Assistants, Substitutes, and Special Officers
353k16 Deputies and Delegation of Powers
353k21 k. Term and tenure of office. Most Cited Cases

Deputy constable was terminated by a local government entity as required for a claim under the Whistleblower Act, even if county reinstated deputy; under county code, the fact that deputy was later reinstated after bringing a grievance did not change the fact that he had been terminated. V.T.C.A., Government Code § 554.002(a).

[7] Officers and Public Employees 283 ⬤⟶69.7

283 Officers and Public Employees
283I Appointment, Qualification, and Tenure
283I(G) Resignation, Suspension, or Removal
283k69 Restrictions of Civil Service Laws and Rules as to Removals
283k69.7 k. Grounds for removal or discipline. Most Cited Cases

When the grievance procedure does not fully redress the employee's complaint, the Whistleblower Act does not bar a claim for actual damages not satisfied by the redress the governmental employer provided. V.T.C.A., Government Code § 554.002(a).

[8] Sheriffs and Constables 353 ⬤⟶21

353 Sheriffs and Constables
353I Appointment, Qualification, and Tenure
353I(C) Deputies and Assistants, Substitutes, and Special Officers
353k16 Deputies and Delegation of

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

183 S.W.3d 94, 24 IER Cases 113
(Cite as: 183 S.W.3d 94)

Powers
      353k21 k. Term and tenure of office.
Most Cited Cases

Deputy constable exhausted his administrative remedies for at least one of his claims for damages in his action brought under the Whistleblower Act, and thus the trial court had jurisdiction over the entire Whistleblower cause of action. V.T.C.A., Government Code § 554.002.

**[9] Pleading 302 ☞104(1)**

302 Pleading
    302III Responses or Responsive Pleadings in General
      302III(B) Dilatory Pleas and Matter in Abatement
        302k104 Plea to the Jurisdiction
          302k104(1) k. In general. Most Cited Cases

The issue before a court in a plea to the jurisdiction is whether the plaintiff has pleaded a cause of action over which the trial court has subject-matter jurisdiction, not the plaintiff's right to recover each element of damages it pleaded.

**[10] Judgment 228 ☞181(7)**

228 Judgment
    228V On Motion or Summary Proceeding
      228k181 Grounds for Summary Judgment
        228k181(5) Matters Affecting Right to Judgment
          228k181(7) k. Bar of statute of limitations. Most Cited Cases

Genuine issue of material fact existed as to when deputy constable filed his grievance regarding his termination, precluding summary judgment in deputy's Whistleblower Act claim based on the limitations period for filing such claims. V.T.C.A., Government Code § 554.005(1).

**[11] Records 326 ☞7**

326 Records
    326I In General
      326k7 k. Filing written instruments or copies thereof. Most Cited Cases

A document is filed when it is given into the custody of the clerk; file stamp is prima facie evidence of the date of filing, but it is subject to rebuttal.

**[12] Appeal and Error 30 ☞762**

30 Appeal and Error
    30XII Briefs
      30k762 k. Reply briefs. Most Cited Cases

A reply brief may not be used to raise new issues.

**[13] Appeal and Error 30 ☞762**

30 Appeal and Error
    30XII Briefs
      30k762 k. Reply briefs. Most Cited Cases

County waived on appeal its argument that statute of limitations period precluded suit in state court under Whistleblower Act, where it raised argument for the first time in its reply brief. V.T.C.A., Government Code § 554.005(1).

**[14] Sheriffs and Constables 353 ☞21**

353 Sheriffs and Constables
    353I Appointment, Qualification, and Tenure
      353I(C) Deputies and Assistants, Substitutes, and Special Officers
        353k16 Deputies and Delegation of Powers
          353k21 k. Term and tenure of office. Most Cited Cases

Deputy constable was not required to appeal civil service commission's decision to district court prior to filing action under the Whistleblower Act, where deputy was not demoted, suspended, or removed by the commission, but rather was reinstated. V.T.C.A., Government Code § 554.002; V.T.C.A., Local Government Code § 158.012.

**[15] Sheriffs and Constables 353 ☞21**

353 Sheriffs and Constables

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

183 S.W.3d 94, 24 IER Cases 113
(Cite as: 183 S.W.3d 94)

353I Appointment, Qualification, and Tenure
353I(C) Deputies and Assistants, Substitutes, and Special Officers
353k16 Deputies and Delegation of Powers
353k21 k. Term and tenure of office. Most Cited Cases
Although immunity against suit for the Anti-Retaliation Law was waived by the Applications Act, deputy constable's failure to exhaust administrative remedies before bringing suit on the Anti-Retaliation Law deprived trial court of jurisdiction over that cause of action. V.T.C.A., Labor Code §§ 451.001, 504.002.

**[16] Sheriffs and Constables 353 ⇒21**

353 Sheriffs and Constables
353I Appointment, Qualification, and Tenure
353I(C) Deputies and Assistants, Substitutes, and Special Officers
353k16 Deputies and Delegation of Powers
353k21 k. Term and tenure of office. Most Cited Cases
Discharged Deputy constable failed to exhaust his administrative remedies regarding his retaliation claim, and thus, trial court lacked subject-matter jurisdiction over claim, where he failed to assert in his grievance to civil service commission that his termination was the result of his filing a workers' compensation claim. V.T.C.A., Labor Code §§ 451.001, 504.002.

**[17] Action 13 ⇒34**

13 Action
13II Nature and Form
13k33 Statutory Remedies
13k34 k. In general. Most Cited Cases

**Action 13 ⇒35**

13 Action
13II Nature and Form
13k33 Statutory Remedies

13k35 k. Cumulative or exclusive remedies. Most Cited Cases
The general rule is that where the cause of action and remedy for its enforcement are derived not from the common law but from the statute, the statutory provisions are mandatory and exclusive.

**[18] Labor and Employment 231H ⇒852**

231H Labor and Employment
231HVIII Adverse Employment Action
231HVIII(B) Actions
231Hk852 k. Existence of other remedies; exclusivity. Most Cited Cases
The enforcement remedy provided in the Workers' Compensation Act, the Anti-Retaliation Law, was the exclusive remedy for discrimination from the filing of a workers' compensation claim in deputy constable's action alleging that county interfered with his rights under the Workers' Compensation Act by terminating him. V.T.C.A., Labor Code § 451.001.

**[19] Civil Rights 78 ⇒1308**

78 Civil Rights
78III Federal Remedies in General
78k1306 Availability, Adequacy, Exclusivity, and Exhaustion of Other Remedies
78k1308 k. Administrative remedies in general. Most Cited Cases
The failure to exhaust administrative remedies does not deprive a trial court of jurisdiction over a § 1983 claim. 42 U.S.C.A. § 1983.

**[20] Federal Courts 170B ⇒2371**

170B Federal Courts
170BV Suits Against States; Eleventh Amendment and Sovereign Immunity
170Bk2371 k. In general. Most Cited Cases
(Formerly 170Bk265)

**Federal Courts 170B ⇒2384**

170B Federal Courts
170BV Suits Against States; Eleventh Amend-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

183 S.W.3d 94, 24 IER Cases 113
**(Cite as: 183 S.W.3d 94)**

ment and Sovereign Immunity
    170Bk2379 What Are Suits Against States;
Entities and Individuals Entitled to Immunity
        170Bk2384 k. Agencies, officers, and
public employees. Most Cited Cases
    (Formerly 170Bk269)

**Federal Courts 170B ☞2383(2)**

170B Federal Courts
    170BV Suits Against States; Eleventh Amend-
ment and Sovereign Immunity
    170Bk2379 What Are Suits Against States;
Entities and Individuals Entitled to Immunity
        170Bk2383 Political Subdivisions
            170Bk2383(2) k. Counties; parishes.
Most Cited Cases
    (Formerly 170Bk270)

    Although the Eleventh Amendment provides
immunity to the state and its agencies from suits
under § 1983, that immunity does not extend to the
county. U.S.C.A. Const.Amend. 11; 42 U.S.C.A. §
1983.

**[21] Civil Rights 78 ☞1398**

78 Civil Rights
    78III Federal Remedies in General
        78k1392 Pleading
            78k1398 k. Defenses; immunity and good
faith. Most Cited Cases
    To be entitled to the government's lack of im-
munity under § 1983, the plaintiff must plead a
cause of action in which the deprivation of a federal
right is implicated. 42 U.S.C.A. § 1983.

**[22] Constitutional Law 92 ☞1555**

92 Constitutional Law
    92XVIII Freedom of Speech, Expression, and
Press
    92XVIII(A) In General
    92XVIII(A)3 Particular Issues and Ap-
plications in General
        92k1555 k. Matters of public concern.
Most Cited Cases

(Formerly 92k90.1(1))
    To prevail on a claim of First Amendment re-
taliation under § 1983, the plaintiff's speech must
have involved a matter of public concern. U.S.C.A.
Const.Amend. 1; 42 U.S.C.A. § 1983.

**[23] Constitutional Law 92 ☞1929**

92 Constitutional Law
    92XVIII Freedom of Speech, Expression, and
Press
    92XVIII(P) Public Employees and Officials
        92k1929 k. Public or private concern;
speaking as "citizen". Most Cited Cases
    (Formerly 92k90.1(7.2))
    In a § 1983 action alleging retaliation for a
public employee's exercise of free speech under the
First Amendment, whether an employee's speech
addresses a matter of public concern must be de-
termined by the content, form, and context of a giv-
en statement, as revealed by the whole record.
U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

**[24] Constitutional Law 92 ☞1929**

92 Constitutional Law
    92XVIII Freedom of Speech, Expression, and
Press
    92XVIII(P) Public Employees and Officials
        92k1929 k. Public or private concern;
speaking as "citizen". Most Cited Cases
    (Formerly 92k90.1(7.2))
    Discrimination by a public agency for an em-
ployee's speech that concerns only matters of the
employee's personal interest and not matters of
public interest is not actionable under § 1983 as a
violation of the employee's First Amendment rights.
U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

**[25] Civil Rights 78 ☞1426**

78 Civil Rights
    78III Federal Remedies in General
        78k1425 Questions of Law or Fact
        78k1426 k. In general. Most Cited Cases
    Whether speech involves a matter of public

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

183 S.W.3d 94, 24 IER Cases 113
**(Cite as: 183 S.W.3d 94)**

concern, as required in a § 1983 claim alleging discrimination based on an exercise of First Amendment rights, is a question of law. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

**[26] Constitutional Law 92 ☞1955**

92 Constitutional Law
   92XVIII Freedom of Speech, Expression, and Press
         92XVIII(P) Public Employees and Officials
            92k1955 k. Police and other public safety officials. Most Cited Cases
     (Formerly 92k90.1(7.2))

**Sheriffs and Constables 353 ☞21**

353 Sheriffs and Constables
   353I Appointment, Qualification, and Tenure
         353I(C) Deputies and Assistants, Substitutes, and Special Officers
            353k16 Deputies and Delegation of Powers
              353k21 k. Term and tenure of office. Most Cited Cases
     Discharged deputy constable's workers' compensation claim and assertion of rights under the Workers' Compensation Act only involved matters of his personal interest, rather than speech involving issues of public concern, and thus, deputy did not assert deprivation of a federally protected right in his § 1983 claim against county for First Amendment retaliation, and trial court lacked subject-matter jurisdiction over the action. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

**[27] Constitutional Law 92 ☞3867**

92 Constitutional Law
   92XXVII Due Process
         92XXVII(B) Protections Provided and Deprivations Prohibited in General
         92k3867 k. Procedural due process in general. Most Cited Cases
     (Formerly 92k251.5)
     In analyzing a claim of deprivation of proced-

ural due process, the Court of Appeals applies a two-part test: it must determine (1) whether the plaintiff had a liberty or property interest entitled to procedural due process; and (2) if so, what process is due. U.S.C.A. Const.Amend. 14.

**[28] Constitutional Law 92 ☞3893**

92 Constitutional Law
   92XXVII Due Process
         92XXVII(B) Protections Provided and Deprivations Prohibited in General
         92k3892 Substantive Due Process in General
         92k3893 k. In general. Most Cited
   (Formerly 92k278(1), 92k278.1)
     In a substantive due process analysis, the Court of Appeals determines whether the plaintiff had a protected property interest and if the government deprived him of that interest capriciously and arbitrarily. U.S.C.A. Const.Amend. 14.

**[29] Constitutional Law 92 ☞3874(1)**

92 Constitutional Law
   92XXVII Due Process
         92XXVII(B) Protections Provided and Deprivations Prohibited in General
         92k3868 Rights, Interests, Benefits, or Privileges Involved in General
            92k3874 Property Rights and Interests
              92k3874(1) k. In general. Most Cited Cases
     (Formerly 92k277(1))

**Constitutional Law 92 ☞3874(2)**

92 Constitutional Law
   92XXVII Due Process
         92XXVII(B) Protections Provided and Deprivations Prohibited in General
         92k3868 Rights, Interests, Benefits, or Privileges Involved in General
            92k3874 Property Rights and Interests
              92k3874(2) k. Source of right or in-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

183 S.W.3d 94, 24 IER Cases 113
(Cite as: 183 S.W.3d 94)

terest. Most Cited Cases
(Formerly 92k277(1))

A constitutionally protected property interest for purposes of a due process claim is an individual entitlement grounded in state law, which cannot be removed except for cause; the interest cannot be based on a mere unilateral expectation. U.S.C.A. Const.Amend. 14.

**[30] Constitutional Law 92 €═══4171**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(G) Particular Issues and Applications
          92XXVII(G)7 Labor, Employment, and Public Officials
            92k4163 Public Employment Relationships
              92k4171 k. Termination or discharge. Most Cited Cases
(Formerly 92k277(2))

Discharged deputy constable, who had suffered a disabling injury, had no constitutionally protected property interest in his position once his leave was exhausted as was required to maintain a § 1983 claim against the county for deprivation of due process rights, where at the end of deputy's leave he was declared by his doctor to be unfit to work. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

**[31] Officers and Public Employees 283 €═══114**

283 Officers and Public Employees
    283III Rights, Powers, Duties, and Liabilities
        283k114 k. Liabilities for official acts. Most Cited Cases

Official immunity protects public officials from lawsuits arising from performance of their (1) discretionary duties (2) in good faith (3) within the scope of their authority.

**[32] Officers and Public Employees 283 €═══119**

283 Officers and Public Employees
    283III Rights, Powers, Duties, and Liabilities

        283k119 k. Actions by or against officers and employees. Most Cited Cases

Official immunity is an affirmative defense, and the burden of proof is on the official to prove all elements of the defense.

**[33] Judgment 228 €═══185(5)**

228 Judgment
    228V On Motion or Summary Proceeding
        228k182 Motion or Other Application
          228k185 Evidence in General
            228k185(5) k. Weight and sufficiency. Most Cited Cases

To prevail on a motion for summary judgment asserting an affirmative defense, the movant must conclusively prove each element of the defense and establish his entitlement to judgment as a matter of law.

**[34] Appeal and Error 30 €═══70(8)**

30 Appeal and Error
    30III Decisions Reviewable
        30III(D) Finality of Determination
          30k67 Interlocutory and Intermediate Decisions
            30k70 Nature and Scope of Decision
              30k70(8) k. On motion for judgment. Most Cited Cases

Constable's argument on summary judgment that he was not liable under the Anti-Retaliation Law did not involve an assertion of official immunity, and thus, the Court of Appeals did not have jurisdiction to hear constable's interlocutory appeal under statute that allowed interlocutory appeals from the denial of a motion for summary judgment based on the assertion of immunity. V.T.C.A., Civil Practice & Remedies Code § 51.014(a)(5).

**[35] Officers and Public Employees 283 €═══114**

283 Officers and Public Employees
    283III Rights, Powers, Duties, and Liabilities
        283k114 k. Liabilities for official acts. Most Cited Cases

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Official immunity requires that the party was a public official.

### [36] Sheriffs and Constables 353 ⬅︎97

353 Sheriffs and Constables
   353III Powers, Duties, and Liabilities
      353k97 k. Liabilities for official acts in general. Most Cited Cases
      Constable was not a public official before January 1, 2001, and thus, he could not assert official immunity for any actions taken prior to that date.

### [37] Sheriffs and Constables 353 ⬅︎97

353 Sheriffs and Constables
   353III Powers, Duties, and Liabilities
      353k97 k. Liabilities for official acts in general. Most Cited Cases
      Constable was protected from suit for his decision to not re-hire deputy constable, who had been terminated for his inability to work, by official immunity; constable's decision as to whether to swear in plaintiff as a deputy constable was discretionary, and his decision not to swear him in based on his lack of faith and confidence in deputy and deputy's inability to work was made in good faith within the scope of his authority.

*98 Cynthia Keely Timms, Chrysta L. Castaneda, William Scott Hastings, Locke Liddell & Sapp LLP, Dallas, for Appellant.

Emil Lippe, Jr., Law Offices of Lippe & Associates, Dallas, for Appellee.

Before Justices WHITTINGTON, RICHTER, and FITZGERALD.

### OPINION ON REHEARING
Opinion by Justice FITZGERALD.
   We grant Dallas County and Mike Dupree's motion for rehearing. We withdraw the opinion and vacate the judgment of November 1, 2005.

   This case involves two different lawsuits by Armando H. Gonzales against Dallas County and, in one of the lawsuits, Mike Dupree. The County filed pleas to the jurisdiction in both cases, which the trial court denied. Dupree moved for summary judgment asserting official immunity, which the trial court also denied. The County brings interlocutory appeals of the denials of the pleas to the jurisdiction. Dupree also appeals the denial of his motion for summary judgment asserting official immunity. We consolidated the appeals. We affirm the denial of one of the pleas to the jurisdiction and reverse the denial of the other; we affirm the denial of the motion for summary judgment in part and reverse in part.

### PLEA TO THE JURISDICTION
   [1][2][3][4] In Texas, sovereign immunity deprives a trial court of subject-matter jurisdiction over lawsuits against the State or other governmental units unless the State consents to suit. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 224 (Tex.2004). Whether a court has subject-matter jurisdiction is a question of law. *Miranda,* 133 S.W.3d at 226; *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002). When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate*99 the court's jurisdiction to hear the cause. *Miranda,* 133 S.W.3d at 226. If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Id.* at 227. If the evidence creates a fact question regarding the jurisdictional issue, then the plea to the jurisdiction must be denied. *Id.* at 227–28. If the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. This procedure generally mirrors that of a summary judgment under rule of civil procedure 166a(c), and the burden is on the government to meet the summary judgment standard of proof. *Id.* This standard "protect[s] the

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

183 S.W.3d 94, 24 IER Cases 113
(Cite as: 183 S.W.3d 94)

plaintiffs from having to 'put on their case simply to establish jurisdiction.' " *Id.* (quoting *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000)).

Under the rule 166a(c) summary judgment standard, the burden of a defendant moving for summary judgment is to conclusively disprove at least one essential element of the plaintiff's cause of action or to conclusively establish every element of an affirmative defense. *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995); *Thomas v. Omar Inv., Inc.,* 156 S.W.3d 681, 683 (Tex.App.-Dallas 2005, no pet.). Conversely, the plaintiff can bar summary judgment by presenting evidence that creates a fact question on those elements of the plaintiff's case under attack by the defendant or on at least one element of each affirmative defense advanced by the defendant. *McAnally v. Friends of WCC, Inc.,* 113 S.W.3d 875, 879 (Tex.App.-Dallas 2003, no pet.). Alternatively, the plaintiff can defeat the motion by conceding that the material facts are undisputed, but convincing the court that the defendant's legal position is unsound. *Turner v. Church of Jesus Christ of Latter–Day Saints,* 18 S.W.3d 877, 886 (Tex.App.-Dallas 2000, pet. denied).

The appeals from the two lawsuits involve different facts, issues, and parties. Accordingly, we address them separately. Cause number 01–080774–F involves appellee's allegations concerning his termination and reinstatement in 1997–1998, and cause number 01–02585–F involves appellee's termination in 2000–2001.

## TERMINATION BY CONSTABLE CASTILLO

The first issue asserts the trial court erred in denying the plea to the jurisdiction in trial court cause number 01–080774–F.

### Background

In 1997, appellee was a deputy constable working under Dallas County Precinct 6 Constable Castillo. Appellee alleged Castillo told him to tell bail bondsmen they would receive assistance in apprehending bond jumpers if they made political contributions to Castillo. Appellee alleged, "In other words, Castillo was soliciting bribes for performance of his duties as an elected official." Appellee questioned the legality of this practice, and in September 1997, he reported it to a Dallas County assistant district attorney. On October 3, 1997, appellee testified against Castillo before a grand jury investigating Castillo. Appellee was terminated from his position as a Dallas County deputy constable on December 11, 1997.

Appellee alleged in his petition and asserted in an affidavit that he filed a grievance the next day, December 12, 1997, complaining of his termination for reporting Castillo's unlawful activities, but the grievance was not file-stamped until December 15, 1997. In this grievance form, *100 appellee stated the "results sought" were "backpay—No loss in benef[its]."

On December 31, 1997, appellee was sent a letter from the county personnel and civil service department informing him of the date, time, and place of his hearing before the civil service commission. The letter also stated, "Please submit another grievance form and explicitly outline what you are grieving and the relief sought."

On January 20, 1998, appellee filed a "Supplement to Formal Grievance Form" requesting reinstatement "with all rights and benefits previously held and that he be compensated for reasonable attorney's fees and expenses required to appeal said termination."

The civil service commission held a hearing on appellee's grievance on January 26, 1998. Most of the testimony at the hearing concerned a similarly situated deputy constable who had also been terminated by Castillo. As to both deputies, Castillo failed to follow the Dallas County policies for terminating an employee. Castillo agreed to the reinstatement of the other deputy constable and then agreed to appellee's reinstatement with back pay, benefits, and the same service vehicle. Appellee's attorney then inquired of the commissioners about

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

183 S.W.3d 94, 24 IER Cases 113
(Cite as: 183 S.W.3d 94)

appellee's other damages:

> [Appellee's Counsel]: In the context of the Civil Service Commission, how is it addressed as to monetary loss. This man lost his car, had no Christmas for his daughter, hasn't been able to pay his attorney even.
>
> [Commissioner Jackson]: It's not.
>
> [Appellee's Counsel]: He is out all of those things then.
>
> [Commissioner Price]: Right. Yeah, you can do civilly whatever you need to do with reference to the constable if there is some harm that is derived as a result of his action. All I'm saying is as far as this Commission is concerned and the county is concerned, we can only do the back pay, the benefits, full reinstatement.

Appellee returned to work the next day, and on February 3, 1998, the Commissioners Court officially ordered appellee's reinstatement with back pay, no break in service, and all benefits and "structure adjustments."

After being reinstated by the County, appellee filed suit in federal district court against the County, Castillo, and two other individuals alleging various federal causes of action and violation of the Texas Whistleblower Act. In December 1999, the federal court granted the County's motion for summary judgment on all causes of action except the Texas Whistleblower Act. The court denied the motion for summary judgment filed by the individual defendants asserting qualified immunity, and the individual defendants appealed that ruling. On May 4, 2001, the Fifth Circuit Court of Appeals held the individual defendants were entitled to qualified immunity on appellee's federal claims, and it reversed the district court and remanded the case to it. *See Gonzales v. Dallas County, Tex.,* 249 F.3d 406 (5th Cir.2001). The Fifth Circuit issued its mandate on May 31, 2001. On August 14, 2001, the trial court signed an "Agreed Order of Dismissal" dismissing

the suit "in its entirety without prejudice to the plaintiff's right to refile his claim under the Texas Whistleblower Act in the appropriate state forum under Texas law." (Citation omitted.)

Appellee then filed his Whistleblower cause of action and his federal causes of action against the County in state district court. The County moved for summary judgment on appellee's federal causes of action based on res judicata and collateral estoppel from the federal litigation. The County also moved for summary judgment *101 on the Whistleblower cause of action. On April 2, 2003, the trial court granted this first motion for summary judgment as to the federal causes of action but denied it as to the Whistleblower cause of action.

On March 9, 2004, the County filed a plea to the jurisdiction asserting the County was immune from suit and moved to dismiss the suit for want of jurisdiction. The trial court denied the motion on July 2, 2004, and the County filed its notice of appeal on July 19, 2004.

### Timeliness of Appeal

Appellee argues we lack jurisdiction over this interlocutory appeal because the County should have appealed the April 2, 2003 denial of its first motion for summary judgment on the Whistleblower cause of action. Appellee asserts that the first motion for summary judgment was a plea to the jurisdiction, and the County's failure to timely appeal that order bars its appeal of the July 2, 2004 order. Having reviewed the first motion for summary judgment, we conclude it is not a plea to the jurisdiction. Although the first motion for summary judgment contains some of the same arguments that appellee's Whistleblower cause of action lacks merit, it contains no assertion or argument that the trial court lacked subject-matter jurisdiction over the cause. *See Freeman v. Wirecut E.D.M., Inc.,* 159 S.W.3d 721, 725 (Tex.App.-Dallas 2005, no pet.) (describing plea to jurisdiction as challenge to trial court's authority to determine subject matter of suit). Accordingly, it was not a plea to the jurisdiction, and its denial was not subject to an inter-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

183 S.W.3d 94, 24 IER Cases 113
(Cite as: 183 S.W.3d 94)

locutory appeal. We conclude the County's appeal is timely.

**Whistleblower Act**

The Whistleblower Act provides, "A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." TEX. GOV'T CODE ANN. § 554.002(a) (Vernon 2004). Violation of this prohibition entitles the employee to injunctive relief, actual damages, costs, attorney's fees, reinstatement to the former or equivalent position, compensation for lost wages, and reinstatement of benefits and seniority. *Id.* § 554.003. The Act waives the government's sovereign immunity to suit and liability "to the extent of liability for the relief allowed under this chapter for a violation of this chapter." *Id.* § 554.0035. The County argues it is not liable under the Act—and is thus immune from suit—for various reasons. *See Miranda,* 133 S.W.3d at 225–26 (determination of jurisdictional issue may require resolution of merits of case).

*Applicability of Act to Constable's Actions*

[5] The County argues appellee does not qualify for relief under the Act because his "whistleblowing" does not fall under the Act. The violation of the law reported must be "a violation of law by [1] the employing governmental entity or [2] another public employee." TEX. GOV'T CODE ANN. § 554.002(a). In its plea to the jurisdiction and on appeal, the County argues that reporting the illegal activities of Constable Castillo did not fall under the Act because, the County asserts, the constable, as an elected official, is not a "public employee." The County, however, failed to argue that the violations of law by an elected constable are not those of the "employing governmental entity." By not disproving as a matter of law both alternatives under section 554.002(a), the County has failed to meet its burden of conclusively*102 disproving an

element of appellee's cause of action. *See Miranda,* 133 S.W.3d at 228.

*Adverse Personnel Action*

[6] The County next argues it did not violate the Act because it did not terminate appellee's employment or otherwise take adverse personnel action against him. The Act requires the plaintiff be terminated by a "state or local governmental entity," TEX. GOV'T CODE ANN. § 554.002(a); the County argues Constable Castillo, not the County, terminated appellee. The County argues that far from taking adverse personnel action against appellee, the County reinstated appellee. We do not agree that the County did not terminate appellee. The record includes the personnel policies from the County's code, which provide that an employee may bring a grievance after his termination, but "[u]tilizing the grievance system will not alter an employee's termination date." DALLAS COUNTY CODE § 86–595(a). This provision shows, contrary to the County's argument, that an employee who is terminated, brings a grievance, and is reinstated was in fact terminated at the time he brought his grievance; that he was later reinstated does not change the fact that he had been terminated. Regardless of who made the decision or communicated it to appellee, when appellee's employment as a deputy constable ceased between December 11, 1997 and January 26, 1998, it was because he had been terminated by the County, which is a "local governmental entity." *See* TEX. GOV'T CODE ANN. § 554.001(2) (defining "Local governmental entity"). Furthermore, the fact that the County "reinstated" him is evidence that he was terminated; if he had not been terminated, then it would have been unnecessary to reinstate him.

[7] The County next argues that its act of reinstating appellee relieves it of liability under the Act. [FN1] As the County observes, the Act requires employees to initiate grievance procedures before bringing a lawsuit. The County asserts that this requirement "provides the government an opportunity to redress the employee's complaint without having

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

183 S.W.3d 94, 24 IER Cases 113
**(Cite as: 183 S.W.3d 94)**

to resort to time-consuming and expensive litigation." *See Johnson v. City of Dublin,* 46 S.W.3d 401, 405 (Tex.App.-Eastland 2001, pet. denied); *Gregg County v. Farrar,* 933 S.W.2d 769, 775 (Tex.App.-Austin 1996, writ denied). But when the grievance procedure does not fully redress the employee's complaint, the Act does not bar a claim for actual damages not satisfied by the redress the governmental employer provided. *Cf. City of Ingleside v. Kneuper,* 768 S.W.2d 451, 457 (Tex.App.-Austin 1989, writ denied) (wrongfully terminated employee awarded reinstatement by court also entitled to damages for loss of future earning capacity). If the legislature had intended for reinstatement with back pay, benefits, and seniority to bar an action for actual damages, it would have included such language in the Act. *Cf. Martin v. Tex. Dental Plans, Inc.,* 948 S.W.2d 799, 803 (Tex.App.-San Antonio 1997, writ denied) (monetary damages and reinstatement both recoverable in suit under workers' compensation Anti-Retaliation Law; if legislature had intended to limit employees to one but not both remedies, it would have used limiting or disjunctive language in statute).

> FN1. The County cites *Carter v. Castillo,* No. 3:99–CV–0047–X, 2001 U.S. Dist. LEXIS 1264 (N.D.Tex. Feb. 7, 2001). In that case, the employee filed a grievance and recovered all the relief he requested in the grievance for the adverse personnel actions he established. Appellee, however, did not receive all the relief he requested in his grievance.

### Grievance Procedure

[8] The County next argues appellee did not initiate and exhaust the County's *103 grievance and appeal procedures with respect to the relief he seeks in this case. However, the County admits in its brief on appeal that appellee requested in his grievance part of the relief he seeks—his attorney's fees and expenses in pursuing the grievance.[FN2] The County instead argues that other damages appellee now seeks were not exhausted in the griev-

ance procedure.

> FN2. The County states in its brief, "With the exception of the $1,000 he sought in attorney's fees for the civil service appeal, Dallas County awarded Gonzales everything he grieved."

[9] The issue before us in a plea to the jurisdiction is whether the plaintiff has pleaded a cause of action over which the trial court has subject-matter jurisdiction, not the plaintiff's right to recover each element of damages it pleaded. *Webb County, Tex. v. Sandoval,* 88 S.W.3d 290, 297 (Tex.App.-San Antonio 2002, no pet.); *City of Cleburne v. Trussell,* 10 S.W.3d 407, 410 (Tex.App.-Waco 2000, no pet.). The record shows appellee exhausted his administrative remedy as to at least one of his claims for damages in this litigation, his claim for attorney's fees and expenses in pursuing the grievance. Thus, the trial court has jurisdiction over appellee's Whistleblower cause of action. The County's argument that appellee cannot recover other damages does not attack the trial court's subject-matter jurisdiction over the cause of action and is outside our limited jurisdiction in this interlocutory appeal.

### Limitations, the Grievance Procedure, and Filing Suit in Federal Court

Next, the County argues appellee's cause of action is barred by the Act's ninety-day limitations period. Section 554.005 provides, "Except as provided by Section 554.006, a public employee who seeks relief under this chapter must sue not later than the 90th day after the date on which the alleged violation of this chapter: (1) occurred...." TEX. GOV'T CODE ANN. § 554.005(1). Section 554.006 requires an employee to "initiate action under the grievance or appeal procedures of the employing ... governmental entity ... before suing" under the Act. *Id.* § 554.006(a). The ninety-day limitations period is tolled while the employee pursues the administrative remedy. [FN3] *Id.* § 554.006(c).

> FN3. Section 554.006(d) sets out filing deadlines and tolling provisions when the

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

183 S.W.3d 94, 24 IER Cases 113
(Cite as: 183 S.W.3d 94)

grievance procedure takes more than sixty days, but those provisions are not relevant in this case because the grievance was resolved within sixty days. *See* TEX. GOV'T CODE ANN. § 554.006(d).

[10] In this case, appellee was terminated on December 11, 1997. His grievance was file stamped four days later on December 15, 1997. Appellee's hearing before the civil service commission was on January 26, 1998, at which time he was reinstated. Appellee filed suit in federal district court on April 24, 1998. The County asserts this filing was untimely because, accounting for the tolling during the grievance procedure starting on December 15, 1997 and ending on January 26, 1998, appellee filed suit ninety-two days after his termination. However, appellee filed an affidavit stating that he handed the grievance to the clerk on December 12, 1997, one day after his termination. If December 12, 1997 is taken as the date of filing instead of December 15, 1997, then, with the tolling provisions of section 554.006(c), appellee's lawsuit was timely filed eighty-nine days after his termination.

[11] A document is filed when it is given into the custody of the clerk; the file stamp is prima facie evidence of the date of filing, but it is subject to rebuttal. *See \*104 Mr. Penguin Tuxedo Rental & Sales, Inc. v. NCR Corp.*, 787 S.W.2d 371, 371–72 (Tex.1990) (per curiam). Appellee's affidavit raises a genuine issue of material fact regarding the date of filing of the grievance and thus the timeliness of the filing of the lawsuit. Accordingly, the County has failed to establish as a matter of law that appellee's suit is barred by the Act's 90–day statute of limitations.[FN4]

> FN4. Appellee argues the tolling during grievance procedure should not end with the January 26, 1997 hearing but should end on February 3, 1997 when the Commissioners Court officially approved the action taken at the hearing. Tolling the limitations period from December 15, 1996 to February 3, 1997 would make appellee's

petition timely filed without considering whether December 12, 1997 should be the initial day of tolling. Because under either scenario the County has failed to establish as a matter of law that appellee's federal petition was filed outside the ninety-day limitations period, we need not determine whether the January 26 date of the hearing or the February 3 date of the official decision approving the action taken at the hearing marked the end of the tolling period.

*Limitations and Filing Suit in State Court*

[12][13] In its reply brief, the County argues its liability is barred by limitations because more than ninety days passed between appellee's termination and his filing this suit in state court. In fact, more than three and a half years passed between appellee's termination and his filing suit in state court. In the trial court, the County argued this expanse of time resulted in limitations barring appellee's suit. In this Court, however, the County did not present this complaint in its brief on appeal but raised it for the first time in its reply brief. A reply brief may not be used to raise new issues. The Texas Rules of Appellate Procedure do not allow an appellant to include in a reply brief a new issue in response to some matter pointed out in the appellee's briefs but not raised by the appellant's original brief. *Penley v. Westbrook*, 146 S.W.3d 220, 227 (Tex.App.-Fort Worth 2004 pet. filed); *Howell v. Tex. Workers' Comp. Comm'n*, 143 S.W.3d 416, 439 (Tex.App.-Austin 2004, pet. denied). Accordingly, we conclude this issue is not properly before us.

*Jurisdiction to Review Civil Service Commission*

[14] Finally, the County argues the trial court lacked jurisdiction to review the civil service commission's decision not to award the damages appellee seeks. The County argues appellee should have appealed the Commission's decision to the district court pursuant to section 158.012 of the Local Government Code. *See* TEX. LOCAL GOV'T CODE ANN. § 158.012 (Vernon 1999). Section

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

**183 S.W.3d 94, 24 IER Cases 113**
**(Cite as: 183 S.W.3d 94)**

158.012 provides, "A county employee who, on a final decision by the commission, is demoted, suspended, or removed from the employee's position may appeal the decision by filing a petition in a district court in the county within 30 days after the date of the decision." *Id.* § 158.012(a). In this case, after the final decision of the civil service commission, appellee was fully reinstated and was not "demoted, suspended, or removed from the employee's position." Thus, section 158.012 does not apply to appellee.

### Conclusion

We conclude the trial court did not err by denying the plea to the jurisdiction in appellee's lawsuit concerning his termination and reinstatement in 1996 and 1997, trial court cause number 01–08074–F. We overrule the first issue.

### TERMINATION BY CONSTABLE DUPREE

The second, third, and fourth issues assert the trial court erred in denying the *105 plea to the jurisdiction and motion for summary judgment based on official immunity in trial court cause number 01–02585–F.

### Background

Appellee alleged that on January 24, 2000, he injured his back while arresting a suspect. He filed a workers' compensation claim due to the injury in February 2000. On June 21, 2000, appellee's doctor checked the place on a form stating appellee was "disabled to perform the duties appurtenant to his/her regular employment/school beginning: 6–21–00," "Restriction limited to light work," and wrote on the form "No driving, no in and out of vehicle, no stairs, will be re-eval. in 2 weeks." On June 23, 2000, Constable Castillo offered appellee light-duty assignments of "Bailiff functions, Answering phones (to include some dispatching duty), Other duties as assigned that meet your restrictions." Appellee initially refused in order to talk to his doctor, but after the terms were modified to six-hour work days, he accepted them. Appellee did not work from June 21 through June 26, 2000. From June 27 to August 10, 2000, appellee worked

mostly six-hour days according to the terms Castillo had offered. From August 11 to December 10, 2000, appellee did not work.

On August 9, 2000, appellee's doctor stated that appellee would be disabled to perform his job duties beginning August 14, 2000 and would return to work on August 28, 2000. After August 28, 2000, the doctor continued to extend appellee's disability period. On September 14, 2000, appellee filed an application for disability insurance benefits with the Social Security Administration. On October 21, 2000, appellee was determined to have "an impairment rating of 15% of the whole person" and to have reached his point of maximum medical improvement on October 14, 2000.

On December 5, 2000, Castillo sent appellee a letter requesting appellee provide an update of his medical status and informing appellee, "If you are unable to perform your essential job duties on December 31, 2000, we are within our rights to terminate your employment with Dallas County." Appellee returned to work for six-hour days from December 11, 2000 to December 19, 2000. Appellee did not work after December 19, 2000. On December 20, 2000, appellee filed a request for medical leave of absence starting December 22, 2000 and continuing for six to eight weeks. The application was supported by appellee's physician's certification that appellee would have cervical-fusion surgery on "1/2/00 [sic]" and would require three months' care. Appellee underwent the surgery on January 20, 2001.

Meanwhile, there was a change in the office of Constable, Precinct 6. Castillo's term ended on December 31, 2000, and the newly elected constable, Dupree, took office January 1, 2001. Before taking office, Constable–Elect Dupree sent appellee and several other deputy constables letters dated December 11, 2000 stating:

This letter serves to notify you that effective January 1, 2001, your services under my administration will not be required. Any Dallas County

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

183 S.W.3d 94, 24 IER Cases 113
(Cite as: 183 S.W.3d 94)

owned property that was issued to you should be surrendered to your immediate supervisor. Your cooperation on this matter is expected.

The County and Dupree believed they were under no obligation to keep, swear in, or re-hire deputy constables whose terms had ended. *See Dallas County v. Wiland,* 124 S.W.3d 390, 394 (Tex.App.-Dallas 2003, pet. granted). In his affidavit, Dupree stated he chose not to swear in appellee "because I did not have full faith and *106 confidence in him." In his deposition, Dupree testified he chose not to swear in some of the deputy constables due to his lack of faith and confidence in them. However, he testified he chose not to swear in appellee because he had learned in October 2000 that appellee had been terminated from employment for exceeding the authorized leave time without returning to work.

Appellee's employment with Dallas County ceased on Friday, December 29, 2000.

Appellee and the other deputy constables filed grievances; appellee filed his on December 27, 2000 and a second one on January 3, 2001. In the grievances, appellee stated he was "notified of disciplinary action" on December 27, 2000. In the blank for "Summarize disciplinary action taken," appellee wrote, "Termination by letter then by phone by Const elect & Const Mike Dupree." In the blank for "State reason for grievance and results sought," appellee wrote, "To be reinstated to Depty [sic] in 2001." On February 27, 2001, the civil service commission denied appellee and the other deputies a hearing on their grievances because their complaints about being terminated by Constable–Elect Dupree were not "grievable."

On January 29, 2001, appellee applied for disability benefits with the Texas County and District Retirement System. In the forms, appellee acknowledged he was "physically incapacitated to engage in any gainful occupation, that such incapacity is likely to be permanent" (emphasis omitted).

On February 8, 2001, the Texas Workforce Commission determined appellee was entitled to benefits because the Commission's "investigation found your former employer discharged you from your last work due to your medically verifiable inability to work." On November 14, 2001, the Social Security Administration found appellee "has been under a disability, as defined in the Social Security Act, since August 14, 2000." Additional medical and workers' compensation reports in the record show appellee has remained disabled through April 19, 2002 with no expected date of ability to return to work.

On March 29, 2001, appellee sued the County and Dupree, alleging they had violated chapter 451 of the Labor Code by terminating him for filing a workers' compensation claim. Appellee also pleaded "a cause of action for interference with plaintiff's rights under the Texas Workers' Compensation Act." Besides these causes of action, appellee pleaded causes of action that appellants violated 42 U.S.C. section 1983 by discriminating against appellee for engaging in "speech" by filing a claim under the Workers' Compensation Act and by denying appellee's substantive and procedural due process right to the protections of the County's grievance system by declaring his complaint not "grievable." On March 19, 2004, appellants filed a plea to the jurisdiction, a motion for summary judgment, and special exceptions. The trial court denied the plea and motion on July 2, 2004, and appellants timely appealed on July 19, 2004.

**Workers' Compensation Retaliation Claims**

The second issue asserts the trial court erred in denying the plea to the jurisdiction on appellee's causes of action for retaliation for filing a workers' compensation claim. Appellee asserted two causes of action: (1) expressly brought under section 451.002 of the Labor Code, alleging violation of section 451.001 of the Labor Code; and (2) tortious interference with workers' compensation rights.

*107 *Statutory Anti–Retaliation Law*
Section 451.001 of the Labor Code, the

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

183 S.W.3d 94, 24 IER Cases 113
(Cite as: 183 S.W.3d 94)

Anti–Retaliation Law, provides, "A person may not discharge or in any other manner discriminate against an employee because the employee has: (1) filed a workers' compensation claim in good faith...." TEX. LAB.CODE ANN. § 451.001 (Vernon 1996). Section 451.002 provides that a person who violates section 451.001 is liable for reasonable damages, and the employee discharged in violation of section 451.001 is entitled to reinstatement in the former position of employment. *Id.* § 451.002.

The supreme court has held that the State Applications Act, now codified in section 504.002 of the Labor Code, makes the Anti–Retaliation Law applicable to state agencies. *See id.* §§ 451.001, 504.002(a)(10), (b) (Vernon Supp.2005); *Kerrville State Hosp. v. Fernandez,* 28 S.W.3d 1, 8 (Tex.2000). Section 504.002 makes the Anti–Retaliation Law applicable to a "political subdivision," which is defined in section 504.001(3) as including a county. TEX. LAB.CODE ANN. § 504.001(3) (Vernon Supp.2005). The supreme court went on to hold that the State Applications Act waived a political subdivision's immunity under the Anti–Retaliation Law up to the limits on damages set out in the Tort Claims Act. *Kerrville State Hosp.,* 28 S.W.3d at 9–10; *see* TEX. CIV. PRAC. & REM.CODE ANN. § 101.023 (Vernon 2005); TEX. LAB.CODE ANN. § 504.002(c) (Vernon Supp.2005).

[15][16] Although immunity against suit for the Anti–Retaliation Law is waived by the Applications Act, the employee's failure to exhaust administrative remedies before bringing suit on the Anti–Retaliation Law deprives the trial court of jurisdiction over that cause of action. *Van Indep. Sch. Dist. v. McCarty,* 165 S.W.3d 351, 354 (Tex.2005); *Wilmer–Hutchins Indep. Sch. Dist. v. Sullivan,* 51 S.W.3d 293, 294 (Tex.2001) (per curiam). The County argues that appellee's failure to assert his Anti–Retaliation Law claims in his December 27, 2000 and January 3, 2001 grievances resulted in his failure to exhaust his administrative remedy,

thereby depriving the trial court of subject-matter jurisdiction over this cause of action.

The County's personnel policies state that a grievance may be filed for various reasons, including improper application of rules, regulations, and procedures; and demotion, suspension, or dismissal. DALLAS COUNTY CODE § 86–1003. The Commission's actions resulting in demotion, suspension, or termination may be appealed to a district court within thirty days after written notification of the Commission's decision. *Id.* § 86–1007(*o*)(3). We conclude appellee's claim of wrongful termination for filing a workers' compensation claim was subject to the County's grievance procedures.

Appellee argues his grievances were sufficient and relies on this Court's opinion in *County of Dallas v. Wiland,* 124 S.W.3d 390 (Tex.App.-Dallas 2003, pet. granted). Appellee asserts that in *Wiland,* other deputy constables terminated in December 2000 recovered damages on their causes of action even though their grievances were identical to his. *Wiland,* although related factually to the case before us, did not involve the legal issue before us. In *Wiland,* three deputy constables, terminated by Dupree's decision not to swear them into office for another term, sued the County under 42 U.S.C. section 1983 alleging violations of their procedural and substantive due process rights by the County's failure to allow them the protections of the grievance procedure when it terminated them. *Id.* at 393–94. As it did to appellee, the civil service commission had deemed their terminations not "grievable" and took no action on their grievances. *108 Id.* at 394. *Wiland,* however, did not concern a plea to the jurisdiction, and none of the deputy constables in *Wiland* brought a cause of action under the Anti–Retaliation Law.[FN5] Thus, *Wiland* is distinguishable.

> FN5. The issues in *Wiland* were the trial court's summary judgment on liability in favor of the deputy constables, the denial of the City's motion for summary judgment on liability, the jury trial on the deputy

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

183 S.W.3d 94, 24 IER Cases 113
(Cite as: 183 S.W.3d 94)

constables' damages, and the bench trial on their attorney's fees. *Wiland,* 124 S.W.3d at 393–94. Thus, the issues in *Wiland* were whether the deputy constables' motion for summary judgment had proved the deprivation of their due process rights as a matter of law, whether the City had proved its lack of liability as a matter of law, and whether the deputy constables presented legally and factually sufficient evidence of damages and attorney's fees. *See generally id.* at 390–404. The issue of whether the deputy constables had exhausted any administrative remedy before bringing suit was not before the Court. *See generally id.*

Appellee also asserts exhaustion of administrative remedies should not be required because the County's determination that he had no right to the grievance system made the seeking of an administrative remedy futile. Appellee cites no authority for the argument that "futility" creates jurisdiction. Appellee's argument is essentially that the County's conduct estops it from asserting lack of jurisdiction due to his failure to exhaust administrative remedies. In *Wilmer–Hutchins Independent School District v. Sullivan,* however, the supreme court ruled that when exhaustion of administrative remedies is a jurisdictional prerequisite, such as in a cause of action under the Anti–Retaliation Law against a political subdivision, the government's conduct may not be used to excuse that prerequisite because jurisdiction cannot be conferred by estoppel. *Sullivan,* 51 S.W.3d at 294.

We conclude appellee's failure to assert in his grievances that his termination was a result of his filing a workers' compensation claim resulted in his failing to exhaust his administrative remedy. Because appellee did not exhaust his administrative remedy on this cause of action, the trial court lacked subject-matter jurisdiction over it, and the trial court erred by denying the plea to the jurisdiction on it.

*Tortious Interference with Workers' Compensation*

*Rights*

Appellee also pleaded "a cause of action for interference with plaintiff's rights under the Texas Workers' Compensation Act." Appellee alleged appellants "knowingly and willfully interfered with and attempted to vitiate the Plaintiff's recognized right to file a claim for workers' compensation benefits." He also alleged appellants' "intentional violation of Plaintiff's rights under Texas law" damaged him. The County asserts (1) there is no common-law cause of action for interference with workers' compensation rights against an employer and (2) that appellee's failure to exhaust his administrative remedy deprived the court of subject-matter jurisdiction over this cause of action.

[17][18] The workers' compensation system and its rights come from statutes, not the common-law. *Mingus v. Wadley,* 115 Tex. 551, 558, 285 S.W. 1084, 1087 (1926), *overruled on other grounds by Dubai Petroleum Co. v. Kazi,* 12 S.W.3d 71, 76 (Tex.2000). "The general rule is that where the cause of action and remedy for its enforcement are derived not from the common law but from the statute, the statutory provisions are mandatory and *exclusive* ...." *Id.* (emphasis added). The Anti–Retaliation Law provides a complete remedy for an employee alleging discrimination for filing a workers' compensation claim. That law provides reinstatement to the employee's former position and all *109 "reasonable damages." TEX. LAB.CODE ANN. § 451.002 (Vernon 1996); *Continental Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 454 (Tex.1996). Because the rights appellee seeks to enforce and the remedy for their enforcement are derived from the Workers' Compensation Act and not from the common law, we conclude the enforcement remedy provided in the Workers' Compensation Act, the Anti–Retaliation Law, is the exclusive remedy for discrimination from the filing of a workers' compensation claim. Thus, appellee's only remedy for interference with his workers' compensation rights lies under the Anti–Retaliation Law and not the common law. Accordingly, we must determine whether the trial court had jurisdic-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

183 S.W.3d 94, 24 IER Cases 113
(Cite as: 183 S.W.3d 94)

tion under the Anti–Retaliation Law to adjudicate appellee's claim of interference with his workers' compensation rights.

The portion of appellee's petition pleading interference with workers' compensation rights does not specify how appellants interfered with his rights. However, the pleading incorporates all the facts alleged earlier in the petition, and the only alleged act of interference with appellee's workers' compensation rights was appellee's allegation that he was terminated for filing a workers' compensation claim. As discussed above, appellee was required, and failed, to exhaust his administrative remedies before bringing suit under the Anti–Retaliation Law. Accordingly, the trial court lacked jurisdiction over appellee's cause of action for interference with workers' compensation rights. We conclude the trial court erred in denying the plea to the jurisdiction for this cause of action. We sustain the second issue.

**Civil Rights Claims**

The third issue asserts the trial court erred in denying the plea to the jurisdiction on appellee's civil rights claims. Appellee brought these causes of action under 42 U.S.C. section 1983, which provides,

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C.A. § 1983 (West 2003).

[19][20] The County has no sovereign immunity from a section 1983 claim. *Howlett v. Rose,* 496 U.S. 356, 375, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990); *County of Dallas v. Sempe,* 151 S.W.3d 291, 300 (Tex.App.-Dallas 2004, pet. filed); *Dallas Indep. Sch. Dist. v. Finlan,* 27 S.W.3d 220, 241–42

(Tex.App.-Dallas 2000, pet. denied). Nor does the failure to exhaust administrative remedies deprive a trial court of jurisdiction over a section 1983 claim. *Patsy v. Bd. of Regents,* 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Upton County v. Brown,* 960 S.W.2d 808, 820 (Tex.App.-El Paso 1997, no pet.). Thus, a plaintiff bringing suit under section 1983 need not establish a waiver of immunity when bringing suit. *Nueces County v. Hoff,* 105 S.W.3d 208, 211 (Tex.App.-Corpus Christi 2003), *rev'd on other grounds,* 153 S.W.3d 45 (Tex.2004) (per curiam). Although the Eleventh Amendment provides immunity to the State and its agencies from suits under section 1983, that immunity does not extend to the County. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (Eleventh Amendment provides states with immunity from section 1983 claims); *Hoff v. Nueces County,* 153 S.W.3d 45, 47 (Tex.2004) (per curiam) (State's Eleventh Amendment immunity does not extend to counties).

*110 [21] To be entitled to the government's lack of immunity under section 1983, the plaintiff must plead a cause of action in which the deprivation of a federal right is implicated. *City of Fort Worth v. Robles,* 51 S.W.3d 436, 444 (Tex.App.-Fort Worth 2001, pet. denied). The County asserts appellee's section 1983 claims fail to allege the deprivation of federally protected rights and therefore fail to displace the County's immunity from suit. Thus, the County argues, the trial court lacked jurisdiction over appellee's civil rights claims. *See id.* We will examine appellee's claims and determine whether they allege the deprivation of federally protected rights.

*Free Speech*

Appellee alleged the County violated section 1983 by terminating him for exercising his right of free speech under the First Amendment. The "speech" appellee alleged was his "filing a workers' compensation claim and asserting entitlement to recovery." The County argues that the "speech" alleged by appellee is not protected by the First

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

183 S.W.3d 94, 24 IER Cases 113
(Cite as: 183 S.W.3d 94),

Amendment.

[22][23][24][25] To prevail on a claim of First Amendment retaliation, the plaintiff's speech must have involved a matter of public concern. *Johnson v. Louisiana,* 369 F.3d 826, 830 (5th Cir.2004); *Scott v. Godwin,* 147 S.W.3d 609, 616 (Tex.App.-Corpus Christi 2004, no pet.). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Discrimination by a public agency for an employee's speech that concerns only matters of the employee's personal interest and not matters of public interest is not actionable under section 1983 as a violation of the employee's First Amendment rights. *See id.* at 147, 103 S.Ct. 1684. Whether speech involves a matter of public concern is a question of law. *Id.* at 148 n. 7, 103 S.Ct. 1684.

[26] Whether a public employee's filing of a workers' compensation claim and his assertion of rights under the Workers' Compensation Act constitutes a matter of public concern entitled to First Amendment protection appears to be an issue of first impression in Texas. However, the Texas Supreme Court has determined that, under the Texas Open Records Act, workers' compensation claims are generally not subject to disclosure because they do not involve matters of "legitimate public concern." *Indus. Found. v. Tex. Indus. Accident Bd.,* 540 S.W.2d 668, 685 (Tex.1976). Other jurisdictions have held the assertion of workers' compensation rights does not involve a matter of public concern under the First Amendment. *See O'Malley v. New York City Transit Auth.,* 829 F.Supp. 50, 53 (E.D.N.Y.1993); *Santiago v. Temple Univ.,* 739 F.Supp. 974, 981 (E.D.Pa.1990), *aff'd,* 928 F.2d 396 (3rd Cir.1991). In his brief, appellee does not explain how his workers' compensation claim and his assertion of his rights under the Workers' Compensation Act involved matters of public concern.

After reviewing the entire record, we conclude appellee's workers' compensation claim and assertion of rights under the Workers' Compensation Act involve only matters of appellee's personal interest. We perceive no issue of public concern in these matters. Because appellee's claim of First Amendment retaliation is not based on speech involving public concern, we conclude appellee's claim does not assert the deprivation of a federally protected right, and the trial court lacked jurisdiction over this cause of action.

*111 *Due Process*

Appellee alleged appellants violated his Fourteenth Amendment right not to be deprived of property without due process of law. He alleged his deputy constable position was the property interest of which he was deprived, and the process he alleges appellants denied him was the County's grievance procedures with the rights to notice and hearings provided by those procedures. Appellee argues appellants denied him due process by concluding his claims were not "grievable" and by failing to follow the prescribed procedures of providing written determinations and grievance proceedings. Appellee's petition cites to this Court's opinion in *Wiland* and alleges he is entitled to the same legal holdings as the deputy constables in *Wiland.*

[27][28] In analyzing a claim of deprivation of procedural due process, we apply a two-part test: we must determine (1) whether the plaintiff had a liberty or property interest entitled to procedural due process; and (2) if so, what process is due. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Univ. of Tex. Med. Sch. v. Than,* 901 S.W.2d 926, 929 (Tex.1995). In a substantive due process analysis, we determine (1) whether the plaintiff had a protected property interest and (2) if the government deprived him of that interest capriciously and arbitrarily. *City of Lubbock v. Corbin,* 942 S.W.2d 14, 21 (Tex.App.-Amarillo 1996, writ denied); *see Foucha v. Louisiana,* 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) (substantive due process bars arbitrary, wrongful government actions); *Simi Inv.*

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

183 S.W.3d 94, 24 IER Cases 113
(Cite as: 183 S.W.3d 94)

*Co. v. Harris County, Tex.*, 236 F.3d 240, 249 (5th Cir.2000) (substantive due process protects against deprivation of constitutionally protected interests through government's arbitrary abuse of power). Thus, the first question under both procedural and substantive due process is whether appellee has a constitutionally protected property interest in his deputy constable position.

[29] A constitutionally protected property interest is an "individual entitlement grounded in state law, which cannot be removed except 'for cause.' " *Wiland*, 124 S.W.3d at 396 (quoting *Grounds v. Tolar Indep. Sch. Dist.*, 856 S.W.2d 417, 418 (Tex.1993) (quoting *Logan*, 455 U.S. at 430, 102 S.Ct. 1148)). The interest cannot be based on a mere unilateral expectation. *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). A legitimate claim of entitlement is not created by the Constitution but "by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* Thus the issue is whether appellee's expectation of continued employment as a deputy constable after December 29, 2000 is grounded in state law or if it is a mere unilateral expectation.

Appellee asserts the issue of constitutional protection of his continued employment was decided by this Court in *Wiland* and that our opinion in that case controls in this case. In *Wiland*, we held the Dallas County deputy constables, according to the provisions of the Local Government Code and the County's personnel policies implemented under the provisions of the Local Government Code, had a constitutionally protected property interest in their employment, were protected by the County's civil service system, could not be terminated except for the reasons set out in its personnel policies, and were entitled to the notice and hearings provided by the civil service system under its grievance *112 procedures.[FN6] *Wiland*, 124 S.W.3d at 397–99.

FN6. In July 2003, the County amended its personnel policies to remove deputy constables from the definition of employees entitled to the protections of the civil service system.

The County argues that *Wiland* is distinguishable because appellee, due to his physical inability to perform the duties of a deputy constable, is not similarly situated to the deputy constables in *Wiland* who were terminated by Dupree's decision not to rehire them. Nothing in the *Wiland* opinion indicates that the deputy constables in that case were unable to perform the duties of the deputy constable position. Appellee, however, by applying for disability benefits with the social security administration, stated he was unable "to engage in any substantial gainful activity" as of August 14, 2000 and expected his disability to result in his death or continue for at least twelve months. *See* 42 U.S.C.A. § 423(d)(1)(A) (West Supp.2005) (definition of "disability"). The record contains copious evidence of reports from health care providers and opinions on appellee's applications for disability benefits, all of which conclude that appellee was physically incapable of performing the duties of a deputy constable. Some of these reports state appellee, before the County terminated him, had reached his maximum level of improvement and that his disabilities were permanent. Some of the reports conclude appellee was incapable of performing any gainful employment. At the end of his employment, December 29, 2000, appellee was unable to perform even the light-duty assignments Castillo had authorized for him. Whether appellee had a legitimate claim to continued employment is controlled by the County's leave policies, which were not a consideration in *Wiland*. Accordingly, we conclude *Wiland* does not control the issue of whether appellee had a constitutionally protected property interest.

[30] To determine appellee's right to his continued employment on December 29, 2000 despite his inability to work, we must examine the County's leave policies, the right to return to work under those policies, and their application to appellee.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

**183 S.W.3d 94, 24 IER Cases 113**
**(Cite as: 183 S.W.3d 94)**

The County's personnel policies allow an employee to take up to twelve weeks of leave per twelve-month period under the Family and Medical Leave Act (FMLA). DALLAS COUNTY CODE § 82–603(1). Workers' compensation leave for a "serious health condition," that is, one requiring the employee to be off work for more than three days, is designated as family and medical leave and is subject to the twelve-week limit. *Id.* §§ 82–558(2), –606(f). Before an employee who has missed work due to a workers' compensation injury may return to work, the employee must obtain certification from a physician that the employee is physically able to return to work. *Id.* §§ 82–564(e)(1), –606(h). An employee who has exhausted his FMLA leave may request additional time off beyond the twelve weeks at the discretion of the department head. *Id.* § 82–606(j). "Failure to submit the written request before the family and medical leave period ends may result in the employee's termination." *Id.* An employee who has exhausted all leave and is suffering from "an illness or disability not believed to be of a permanent or disqualifying nature" may apply for leave without pay, but the application must be approved by an order from the commissioners court to be effective, and that approval is discretionary and discouraged. *Id.* §§ 82–471, –472, –473.

Once an employee is able to return to work, the County's policies impose the following "guidelines" on placement of the employee. An employee whose physician *113 has approved the employee's return to work without any restrictions returns to his regularly assigned job duties. If the employee's physician places restrictions on the employee's physical abilities, then the department in which the employee works may (a) retain the employee in the previous position by accommodating the restrictions, (b) transfer the employee to another position within the department, (c) contact human resources to attempt to place the employee in a position in another department, or (d) "[t]erminate the employee if unable to accommodate." *Id.* § 82–564(a). Placement of an employee in another department is not guaranteed.

*Id.* § 82–564(b).

Consideration of these policies leads to the conclusion that a County employee's legitimate claim to his position when the employee is not able to work does not extend beyond the exhaustion of all leave guaranteed under the FMLA and all additional leave discretionarily granted. If the employee is unable to return to work at the end of all leave, then the employee no longer has a legitimate claim to employment guaranteed by state law.

Appellee's time off work of more than three consecutive days fell under the FMLA. Thus, his absences from June 21 through June 26 used four days of his twelve weeks of FMLA leave. Appellee's FMLA leave began running again on August 11, and the twelve weeks expired on October 27. On December 29, when appellee's employment with the County ceased, appellee's guaranteed leave under the FMLA was exhausted, his doctor had declared him unfit to work at all, and he had not been granted any discretionary leave. These facts establish that appellee's continued employment on December 29, 2000 was not an "individual entitlement grounded in state law" and that any expectation appellee had of continued employment was a mere unilateral expectation.

The County has conclusively established appellee had no constitutionally protected property interest in his deputy constable position when his employment with the County ceased. Because the existence of a constitutionally protected property interest is a necessary element to both procedural and substantive due process claims, the County has also conclusively established that appellee has failed to allege the deprivation of federally protected rights. Thus, the County retains its immunity to suit.

We hold the trial court erred in denying the County's plea to the jurisdiction on appellee's section 1983 claims. We sustain the third issue.

**Official Immunity**

[31][32][33] In the fourth issue, Dupree con-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

183 S.W.3d 94, 24 IER Cases 113
**(Cite as: 183 S.W.3d 94)**

tends the trial court erred in denying his motion for summary judgment on the ground of official immunity. Section 51.014(a)(5) authorizes an interlocutory appeal from the denial of a motion for summary judgment "based on an assertion of immunity by an individual who is an officer or employee of ... a political subdivision of the state." TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5) (Vernon Supp.2005). Official immunity protects public officials from lawsuits arising from performance of their (1) discretionary duties (2) in good faith (3) within the scope of their authority. *Ballantyne v. Champion Builders, Inc.,* 144 S.W.3d 417, 422 (Tex.2004); *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). Official immunity is an affirmative defense, and the burden of proof is on the official to prove all elements of the defense. *Ballantyne,* 144 S.W.3d at 424; *Chambers,* 883 S.W.2d at 653. To prevail on a motion for summary judgment asserting an affirmative defense, the movant must conclusively prove each *114 element of the defense and establish his entitlement to judgment as a matter of law. *Garza v. Exel Logistics, Inc.,* 161 S.W.3d 473, 475 & n. 10 (Tex.2005); *McIntyre v. Ramirez,* 109 S.W.3d 741, 748 (Tex.2003).

[34] Dupree first argues he cannot be liable under the Anti–Retaliation Law because he was not appellee's employer. Dupree argues that only employers, not supervisors and officials, can be liable under the Anti–Retaliation Law. *See Jenkins,* 16 S.W.3d at 439. In the motion for summary judgment, this argument was not presented as an assertion of official immunity. Under section 51.014(a)(5), our jurisdiction is limited to whether the trial court correctly ruled on a motion for summary judgment based on an assertion of official immunity. We lack jurisdiction to consider any other arguments for the summary-judgment movant's lack of liability. *Boozier v. Hambrick,* 846 S.W.2d 593, 596 (Tex.App.-Houston [1st Dist.] 1993, no writ). Dupree's argument that he cannot be liable under the Anti–Retaliation Law because he was not appellee's employer is not an assertion of official im-

munity because it does not assert his actions were discretionary, made in good faith, and within the scope of his authority. Accordingly, this argument does not fall within the limited grant of our jurisdiction for interlocutory appeals, and we cannot consider it.

[35][36] Dupree argues he has official immunity for any termination occurring before January 1, 2001 because he was not Constable or a public official and so could not have been acting under color of state law before January 1, 2001. We disagree. Official immunity requires that the party was a public official. *See Ballantyne,* 144 S.W.3d at 422; *Chambers,* 883 S.W.2d at 653. Dupree's argument on its face is self-defeating. Dupree admits he was not a public official before January 1, 2001. Thus, because only a public official can claim official immunity, we conclude Dupree has failed to establish his official immunity for that period.

[37] Dupree next argues he has official immunity for his actions after January 1, 2001 in not swearing in appellee for another term because his decision not to re-hire appellee was discretionary and made in good faith. We agree. At that time, appellee had been terminated for his inability to work, and he was unable to perform even light-duty assignments. As appellee had exhausted all leave, he no longer had a claim to continued employment grounded in state law. Thus, Dupree's decision whether to swear in appellee as a deputy constable was discretionary. The record shows the reasons Dupree chose not to swear in appellee for another term were his lack of faith and confidence in appellee and because appellee exhausted his leave time and did not return to work. Regardless of whether Dupree's reason for not swearing in appellee was his lack of faith and confidence in appellee or appellee's failure or inability to return to work, Dupree's decision under these facts and circumstances was one made in good faith within the scope of his authority. We conclude Dupree has conclusively established his official immunity on all causes of action concerning Dupree's conduct on

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

183 S.W.3d 94, 24 IER Cases 113
**(Cite as: 183 S.W.3d 94)**

or after January 1, 2001 and that the trial court erred in denying Dupree's motion for summary judgment on those allegations. We sustain the fourth issue in part and overrule it in part.

### CONCLUSION

In cause number 01–08074–F, we affirm the denial of the plea to the jurisdiction.

In cause number 01–02585–F, we reverse the trial court's order denying the *115 County's plea to the jurisdiction, and we dismiss appellee's causes of action against the County for want of jurisdiction. We reverse the trial court's order denying Dupree's motion for summary judgment asserting official immunity as to all causes of action concerning Dupree's actions on or after January 1, 2001, and we otherwise affirm the order denying Dupree's motion for summary judgment asserting official immunity.

Tex.App.–Dallas,2006.
Dallas County v. Gonzales
183 S.W.3d 94, 24 IER Cases 113

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

# APPENDIX
# 16

Westlaw.

312 S.W.3d 800, 257 Ed. Law Rep. 1149
**(Cite as: 312 S.W.3d 800)**

**C**

Court of Appeals of Texas,
Houston (1st Dist.).
Kristi SANTI, Appellant,
v.
The UNIVERSITY OF TEXAS HEALTH SCI-
ENCE CENTER AT HOUSTON, Appellee.

No. 01–09–00186–CV.
Nov. 19, 2009.

**Background:** Former non-tenured state university professor filed suit against university under the Texas Commission on Human Rights Act, asserting employment discrimination based on gender, and retaliation, after university failed to renew former professor's employment contract and refused to grant former professor a right to license derivative materials. University filed plea to the jurisdiction. The 190th District Court, Harris County, Patricia K. Kerrigan, J., granted plea. Former professor appealed.

**Holdings:** The Court of Appeals, Elsa Alcala, J., held that:
(1) trial court had jurisdiction over former professor's gender discrimination claim against university;
(2) former professor's employment discrimination claim based on university's decision not to renew her contract was not subject to continuing violation doctrine for purposes calculating 180-day limitations period; and
(3) university's refusal, following its termination of former professor, to grant former professor a right to license derivative materials, was not an "adverse employment action."

Affirmed.

West Headnotes

**[1] Pleading 302 ☞104(1)**

302 Pleading

302III Responses or Responsive Pleadings in General
302III(B) Dilatory Pleas and Matter in Abatement
302k104 Plea to the Jurisdiction
302k104(1) k. In general. Most Cited Cases
A "plea to the jurisdiction" is a dilatory plea that challenges the trial court's subject matter jurisdiction.

**[2] Courts 106 ☞97(1)**

106 Courts
106II Establishment, Organization, and Procedure
106II(G) Rules of Decision
106k88 Previous Decisions as Controlling or as Precedents
106k97 Decisions of United States Courts as Authority in State Courts
106k97(1) k. In general. Most Cited Cases
Appellate court looks to federal law to interpret the provisions of the Texas Commission on Human Rights Act, because, by adopting the Act, the legislature intended to correlate state law with federal law in employment discrimination cases. V.T.C.A., Labor Code § 21.001 et seq.

**[3] Civil Rights 78 ☞1505(2)**

78 Civil Rights
78IV Remedies Under Federal Employment Discrimination Statutes
78k1503 Administrative Agencies and Proceedings
78k1505 Time for Proceedings; Limitations
78k1505(2) k. Periods applicable. Most Cited Cases

**Civil Rights 78 ☞1708**

78 Civil Rights

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

312 S.W.3d 800, 257 Ed. Law Rep. 1149
**(Cite as: 312 S.W.3d 800)**

78V State and Local Remedies
    78k1705 State or Local Administrative Agencies and Proceedings
        78k1708 k. Time for proceedings; limitations. Most Cited Cases

A complaint of unlawful employment practices must be filed with the Equal Employment Opportunity Commission (EEOC) or the Texas Commission on Human Rights within 180 days after the alleged unlawful employment practice occurred; this time limit is mandatory and jurisdictional. V.T.C.A., Labor Code § 21.202.

**[4] Civil Rights 78 ⟜1708**

78 Civil Rights
    78V State and Local Remedies
    78k1705 State or Local Administrative Agencies and Proceedings
        78k1708 k. Time for proceedings; limitations. Most Cited Cases

Failure to timely file an administrative complaint in an employment discrimination case deprives the trial court of subject matter jurisdiction. V.T.C.A., Labor Code § 21.202.

**[5] Civil Rights 78 ⟜1708**

78 Civil Rights
    78V State and Local Remedies
    78k1705 State or Local Administrative Agencies and Proceedings
        78k1708 k. Time for proceedings; limitations. Most Cited Cases

In determining when an unlawful employment practice occurred, in violation of the Texas Commission on Human Rights Act, the proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts become most painful. V.T.C.A., Labor Code § 21.051(1).

**[6] Civil Rights 78 ⟜1505(7)**

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
    78k1503 Administrative Agencies and Proceedings
        78k1505 Time for Proceedings; Limitations
        78k1505(7) k. Continuing violations; serial, ongoing, or related acts. Most Cited Cases

**Civil Rights 78 ⟜1708**

78 Civil Rights
    78V State and Local Remedies
    78k1705 State or Local Administrative Agencies and Proceedings
        78k1708 k. Time for proceedings; limitations. Most Cited Cases

An exception to requirement that a complaint of unlawful employment practices must be filed with the Equal Employment Opportunity Commission (EEOC) or the Texas Commission on Human Rights within 180 days after the alleged unlawful employment practice occurred is the continuing violation doctrine, which is applicable when an unlawful employment practice manifests itself over time, rather than as a series of discrete acts. V.T.C.A., Labor Code § 21.202.

**[7] Limitation of Actions 241 ⟜58(1)**

241 Limitation of Actions
    241II Computation of Period of Limitation
    241II(A) Accrual of Right of Action or Defense
    241k58 Liabilities Created by Statute
        241k58(1) k. In general. Most Cited Cases

Under a continuing violation theory of employment discrimination, plaintiff must show an organized scheme leading to and including a present violation, so that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action.

**[8] Civil Rights 78 ⟜1715**

78 Civil Rights

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

312 S.W.3d 800, 257 Ed. Law Rep. 1149
(Cite as: 312 S.W.3d 800)

78V State and Local Remedies
    78k1713 Exhaustion of Administrative Remedies Before Resort to Courts
        78k1715 k. Employment practices. Most Cited Cases
    A lawsuit under the Texas Commission on Human Rights Act is limited to claims made in the charge or complaint filed with the Equal Employment Opportunity Commission (EEOC) or the Texas Commission on Human Rights and factually related claims that can reasonably be expected to grow out of the Commission's investigation. V.T.C.A., Labor Code § 21.001 et seq.

**[9] Civil Rights 78 &#x2014;1506**

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
        78k1503 Administrative Agencies and Proceedings
          78k1506 k. Charges and investigations. Most Cited Cases

**Civil Rights 78 &#x2014;1709**

78 Civil Rights
    78V State and Local Remedies
        78k1705 State or Local Administrative Agencies and Proceedings
        78k1709 k. Charges and investigations. Most Cited Cases
    In reviewing a claimant's charges of employment discrimination before the Equal Employment Opportunity Commission (EEOC) or the Texas Commission on Human Rights, the court should construe them with utmost liberality, although the charges must contain an adequate factual basis so that it puts the employer on notice of the existence and nature of the charges.

**[10] Civil Rights 78 &#x2014;1709**

78 Civil Rights
    78V State and Local Remedies
        78k1705 State or Local Administrative

Agencies and Proceedings
        78k1709 k. Charges and investigations. Most Cited Cases
    The crucial element of a charge of employment discrimination under the Texas Commission on Human Rights Act is the factual statement contained in the administrative complaint. V.T.C.A., Labor Code § 21.001 et seq.; 29 C.F.R. § 1601.12(b).

**[11] Civil Rights 78 &#x2014;1516**

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
        78k1512 Exhaustion of Administrative Remedies Before Resort to Courts
        78k1516 k. Scope of administrative proceedings; like or related claims. Most Cited Cases

**Civil Rights 78 &#x2014;1715**

78 Civil Rights
    78V State and Local Remedies
        78k1713 Exhaustion of Administrative Remedies Before Resort to Courts
        78k1715 k. Employment practices. Most Cited Cases
    Trial court had jurisdiction over former state university professor's gender discrimination claim against university, as former professor's charge to the Equal Employment Opportunity Commission (EEOC) included an adequate factual basis to put university on notice that she was complaining of discrimination based upon her gender, in that former professor alleged instances when she was treated differently from male counterparts and described making both informal and formal complaints of gender discrimination to university. V.T.C.A., Labor Code § 21.051(1); 29 C.F.R. § 1601.12(b).

**[12] Civil Rights 78 &#x2014;1708**

78 Civil Rights
    78V State and Local Remedies
        78k1705 State or Local Administrative

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

312 S.W.3d 800, 257 Ed. Law Rep. 1149
(Cite as: 312 S.W.3d 800)

Agencies and Proceedings
 78k1708 k. Time for proceedings; limitations. Most Cited Cases

Former state university professor's employment discrimination claim against university under Texas Commission on Human Rights Act based on university's decision not to renew her contract was not subject to continuing violation doctrine for purposes of calculating 180-day limitations period under Act, as former professor complained of two discrete acts separated by over six months, i.e., the university's decision not to renew her contract, and over six months later, university's denial to former professor of a right to attempt to license derivative materials. V.T.C.A., Labor Code §§ 21.051(1), 21.202.

[13] Civil Rights 78 ⬤1249(1)

78 Civil Rights
 78II Employment Practices
 78k1241 Retaliation for Exercise of Rights
 78k1249 Public Employment
 78k1249(1) k. In general. Most Cited Cases

Education 141E ⬤1147(3)

141E Education
 141EVI Colleges and Universities
 141EVI(J) Faculty and Education Professionals
 141Ek1144 Duration of Employment and Removal or Other Discipline
 141Ek1147 Grounds
 141Ek1147(3) k. Exercise of rights; retaliation. Most Cited Cases
 (Formerly 81k8.1(3) Colleges and Universities)

State university's refusal, following its termination of former professor, to grant former professor a right to license derivative materials was not an "adverse employment action" under Texas Commission on Human Rights Act, as necessary for former professor to establish post-termination retaliation claim against university; while an adverse employment action included an action "in connec-

tion with compensation," former professor did not allege, either in her charge of discrimination to the Equal Employment Opportunity Commission (EEOC) or in her original petition, that the right to license derivative materials was part of her compensation, and former professor's "memorandum of appointment" set forth the same number for her base compensation and her total compensation. V.T.C.A., Labor Code § 21.051(1).

[14] Labor and Employment 231H ⬤771

231H Labor and Employment
 231HVIII Adverse Employment Action
 231HVIII(A) In General
 231Hk770 Exercise of Rights or Duties; Retaliation
 231Hk771 k. In general. Most Cited Cases

Post-termination actions may be the subject of a former employee's retaliation claim.

*802 Mark Siurek, Warren & Siurek, L.L.P., Houston, TX, for Appellant.

Frank Anthony King, General Litigation Division, Madeleine Bullard Connor, Assistant Attorney General, Austin, TX, for Appellee.

*803 Panel consists of Justices KEYES, ALCALA, and HANKS.

## OPINION

ELSA ALCALA, Justice.

Appellant, Kristi Santi, appeals the trial court's granting of the plea to the jurisdiction filed by appellee, the University of Texas Health Science Center at Houston ("the University"). Santi filed this suit against her former employer, the University, pursuant to the Texas Commission on Human Rights Act ("the Act").[FN1] In her sole issue, Santi contends the trial court erred by granting the University's plea to the jurisdiction. We conclude the trial court did not err by granting the University's plea to the jurisdiction. We affirm the judgment of

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

312 S.W.3d 800, 257 Ed. Law Rep. 1149
(Cite as: 312 S.W.3d 800)

the trial court.

FN1. TEX. LAB.CODE ANN. §§ 21.001
—.556 (Vernon 2006).

### Background

The University employed Santi for approximately five years as a non-tenured associate professor in the Developmental Division of the Department of Pediatrics and as research faculty in the Center for Academics and Reading Skills. On April 14, 2006, she reported a hostile work environment created as a result of gender-related discrimination by her direct supervisor, Barbara Foorman, affording male peer faculty members advantages not allowed to female faculty members.

On June 1, the University informed Santi that it would not renew her contract after August 31, 2006, even though she received the highest possible ranking on her annual faculty reviews. Eleven days after she was told her contract would not be renewed, Santi began negotiations with the University on June 12, 2006 to obtain a license to market and produce derivatives of materials she co-authored or co-produced while employed at the University. The next day, on June 13, Santi filed a formal complaint of discrimination. According to Santi, the negotiations to obtain a license to develop derivative materials proceeded very positively for approximately a week, then communication ceased. On December 20, 2006, the University informed Santi that it would not participate in any licensing agreement.

On March 5, 2007, Santi filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission (EEOC). Pursuant to a Work Sharing Agreement with the Texas Workforce Commission—Civil Rights Division ("the Commission"), the EEOC transferred Santi's charge to the Commission for investigation. The Commission issued a Dismissal and Notice of Right to File a Civil Action on October 23, 2007. The EEOC adopted the Commission's findings and issued a Dismissal and Notice of Rights on December 6, 2007. The

following day, Santi filed this suit.

### Plea to the Jurisdiction

In her sole issue, Santi contends the trial court erred by granting the University's plea to the jurisdiction because her claim was properly before the court, she exhausted her administrative remedies, she asserted a continuing violation, and her claim for retaliation was actionable.

### A. Standard of Review

[1] A plea to the jurisdiction is a dilatory plea that challenges the trial court's subject matter jurisdiction. *Harris County v. Sykes,* 136 S.W.3d 635, 638 (Tex.2004). Whether the plaintiff has alleged facts that demonstrate subject-matter jurisdiction is a question of law, which we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004). Although we are not to reach *804 the merits of the plaintiff's case, when the plea to the jurisdiction challenges the existence of jurisdictional facts, we consider the relevant evidence submitted by the parties that is necessary to resolve the jurisdictional issue. *Id.* at 227. This procedure generally mirrors that of a summary judgment under rule of civil procedure 166a(c). *Id.* at 228; *see* TEX.R. CIV. P. 166a(c). The plaintiff has the initial burden to plead facts affirmatively showing the trial court has subject matter jurisdiction. *See Miranda,* 133 S.W.3d at 226. The governmental unit then has the burden to assert that the trial court lacks subject matter jurisdiction and must support that contention with evidence. *Id.* at 228. If it does so, the plaintiff must raise a material fact issue regarding jurisdiction to survive the plea to the jurisdiction. *Id.* If the evidence creates a fact issue concerning jurisdiction, the plea to the jurisdiction should be denied. *Id.* If the evidence is undisputed or fails to raise a fact issue concerning jurisdiction, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.*

### B. Law Concerning Violations of the Texas Commission on Human Rights Act

[2] The Act prohibits "unlawful employment actions." An employer commits an unlawful em-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

312 S.W.3d 800, 257 Ed. Law Rep. 1149
(Cite as: 312 S.W.3d 800)

ployment action if the employer "fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment" because of the employee's sex. TEX. LAB.CODE ANN. § 21.051(1) (Vernon 2006). An employer also commits an unlawful employment action if the employer retaliates or discriminates against a person who opposes a discriminatory practice or who makes or files a charge or files a complaint under the Act. *Id.* § 21.055 (Vernon 2006). We look to federal law to interpret the Act's provisions because, "[b]y adopting the Act, the Legislature 'intended to correlate state law with federal law in employment discrimination cases.' " *AutoZone, Inc. v. Reyes,* 272 S.W.3d 588, 592 (Tex.2008) (citations omitted).

[3][4][5] "Texas law requires that a complaint of unlawful employment practices be filed with the EEOC or the Texas Commission on Human Rights within 180 days after the alleged unlawful employment practice occurred." *Davis v. Autonation USA Corp.,* 226 S.W.3d 487, 491 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (citing *Specialty Retailers, Inc. v. DeMoranville,* 933 S.W.2d 490, 492 (Tex.1996)); *see* TEX. LAB.CODE ANN. § 21.202 (Vernon 2006) (entitled "Statute of Limitations"). "This time limit is mandatory and jurisdictional." *Davis,* 226 S.W.3d at 491 (citing *Schroeder v. Tex. Iron Works, Inc.,* 813 S.W.2d 483, 486 (Tex.1991)). "Failure to timely file an administrative complaint deprives Texas trial courts of subject-matter jurisdiction." *Id.* (citing *Czerwinski v. Univ. of Tex. Health Sci. Ctr.,* 116 S.W.3d 119, 122 (Tex.App.-Houston [14th Dist.] 2002, pet. denied); *Vincent v. W. Tex. State Univ.,* 895 S.W.2d 469, 473 (Tex.App.-Amarillo 1995, no writ)). In determining when an unlawful employment practice occurred, " '[t]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts become most painful.' " *Davis,* 226 S.W.3d at 491 (quoting *Del. State Coll. v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980)).

[6][7] An exception to the application of the 180-day limitations period is the continuing violation doctrine. *See id.* at 493. The continuing violation doctrine applies when an unlawful employment practice manifests itself over time, rather than as a *805 series of discrete acts. *Id.* (citing *Wal-Mart Stores v. Davis,* 979 S.W.2d 30, 31 (Tex.App.-Austin 1998, pet. denied)). Under the continuing violation theory, a plaintiff must show an organized scheme leading to and including a present violation, so that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action. *Id.* (citing *Cooper-Day v. RME Petroleum Co.,* 121 S.W.3d 78, 87 (Tex.App.-Fort Worth 2003, pet. denied)); *see also Huckabay v. Moore,* 142 F.3d 233, 239 (5th Cir.1998) (describing continuing violation as "a persisting and continuing system of discriminatory practices in promotion or transfer that produces effects that may not manifest themselves as individually discriminatory except in cumulation over a period of time"). For example, a claim of a hostile work environment is a continuing violation, while "termination, failure to promote, denial of transfer, or refusal to hire" are discrete acts. *Nat'l Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 114, 122 S.Ct. 2061, 2073, 153 L.Ed.2d 106 (2002).

[8][9][10] A lawsuit under the Act is limited to claims made in the charge or complaint filed with the EEOC or the Commission and factually related claims that can reasonably be expected to grow out of the commission's investigation. *Bartosh v. Sam Houston State Univ.,* 259 S.W.3d 317, 321 (Tex.App.-Texarkana 2008, pet. denied). In reviewing a claimant's charge of discrimination before the EEOC or Commission, we should construe them with "utmost liberality," although the charge must contain an adequate factual basis so that it puts the employer on notice of the existence and nature of the charges. *Id.* (citing *Preston v. Tex. Dep't of Family & Prot. Servs.,* 222 Fed.Appx. 353, 356 (5th Cir.2007)). "The crucial element of a charge of discrimination is the factual statement contained" in

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

312 S.W.3d 800, 257 Ed. Law Rep. 1149
(Cite as: 312 S.W.3d 800)

the administrative complaint. *Id.* (quoting *Preston,* 222 Fed.Appx. at 356); *see also* 29 C.F.R. § 1601.12(b) (2009) ("a charge is sufficient when ... sufficiently precise to identify the parties, and to describe generally the action or practices complained of").

**C. Analysis**

Within her sole issue, Santi asserts the following reasons in support of her appeal:

(1) Her discrimination claim "was properly before the court";

(2) She timely filed her claims; and

(3) "[B]oth pre- and post-termination retaliation are actionable."

**1. Scope of Santi's Claims**

[11] Santi asserts her claim for gender discrimination was properly before the court because it was included within her claim of retaliation filed with the EEOC.

On her charge of discrimination filed with the EEOC in this case, in the section that reads "CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es)),* " Santi marked the box next to "RETALIATION," but not the box next to "SEX." However, within her description of the particulars of her charge, Santi stated, "On April 14, 2006, I reported a hostile work environment created as a result of gender-related discrimination by my direct supervisor Barbara Foorman ("Foorman") which afforded male peer faculty members ... advantages not allowed female Division faculty members." Santi also alleged that, after she learned her contract would not be renewed, she discovered a male faculty member would replace her as the director of the project she had been working on. Santi further stated she filed a formal complaint of gender discrimination after she learned of the non-renewal of her contract. Santi specifically alleged that although the University denied her the right to develop and license derivative materials,*806 at

least two male counterparts were allowed by the University to do so. The Commission investigated the claims and sent a "pre-determination letter" to Santi. The Commission stated, "Based on our review of the available evidence, we do not believe it can be established that the employer discriminated against you based on retaliation *or any other reasons prohibited by the laws we enforce.* " (Emphasis added).

Santi's charge included an adequate factual basis to put the University on notice that Santi was complaining of discrimination based upon her gender. Santi alleged instances when she was treated differently from male counterparts and described making both informal and formal complaints of gender discrimination to the University. *See* 29 C.F.R. § 1601.12(b) (charge sufficient if it "describe[s] generally the action or practices complained of"). We hold the trial court did not lack jurisdiction over Santi's gender discrimination claim because she included allegations of gender discrimination in her charge to the EEOC.

We sustain this portion of Santi's sole issue.

**2. Timeliness of Filing**

[12] Santi contends December 20, 2006 is the date from which limitations should be calculated and, calculated from that date, her filings were timely. Santi states that "rather than June 1, 2006, as proposed by the University as the date Santi's claims arose, the definitive date was December 20, 2006, when Santi learned that the University would not grant her a licensing agreement." (Record citations omitted). Santi also contends the University's actions constituted a "continuing violation" and, therefore, calculating limitations from the date of the last discriminatory act on December 20, 2006 was proper.

It is undisputed that on June 1, 2006, more than 180 days from the date Santi filed her complaint with the EEOC, Santi was informed that her contract would not be renewed and she would no longer be employed by the University after August

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

312 S.W.3d 800, 257 Ed. Law Rep. 1149
(Cite as: 312 S.W.3d 800)

31, 2006. Therefore, unless Santi shows this is a continuing violation, her claim is barred by limitations.

Santi contends she has shown a continuing violation because December 20, 2006, the date the University informed Santi it would not grant her the right to license derivative materials, fell within the 180 day period. Santi did not allege a continuing violation or an "organized scheme leading to and including a present violation." *See Davis,* 226 S.W.3d at 493. Rather, she complains of two discrete acts separated by over 6 months—the decision to not renew her contract in June and, over 6 months later, in December, the denial of a right to attempt to license derivative materials. *See Morgan,* 536 U.S. at 114, 122 S.Ct. at 2073 (termination is discrete act). We conclude Santi did not allege facts to raise the issue of a persisting and continuing system or a continuing scheme as required to show a continuing violation. *See Davis,* 226 S.W.3d at 491; *see also Miranda,* 133 S.W.3d at 226 (plaintiff has initial burden to plead facts affirmatively showing trial court has subject matter jurisdiction). We hold the trial court did not err by granting the University's plea to the jurisdiction with respect to Santi's claim for discrimination based upon the decision not to renew her contract.

**3. Post–Termination Retaliation**
[13] Santi further contends the University's refusal to grant her a right to license derivative materials is an adverse employment action and is actionable even though it occurred post-termination.

[14] Post-termination actions may be the subject of a retaliation claim. *See *807 Robinson v. Shell Oil Co.,* 519 U.S. 337, 346, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997); *Veprinsky v. Fluor Daniel, Inc.,* 87 F.3d 881, 885 n. 1 (7th Cir.1996). An adverse employment action includes an action "in connection with compensation." TEX. LAB.CODE ANN. § 21.051(1). In her brief, Santi asserts "obtaining a licensing agreement is an employment benefit." However, Santi did not allege, either in her charge of discrimination or in her original peti-

tion, that the right to license derivative materials was part of her compensation. Concerning the licensing agreement, Santi alleged,

As an integral part of academic appointment, it was common for research materials to be licensed to a third party for marketing and distribution at which point the author(s) and the University would share in royalties from the resulting sales. Thereafter, derivative materials ancillary to the original materials could be developed and further licensed resulting in additional revenues to the University. Because of this arrangement, the University, as the author's employer, must "grant" the author or co-authors the "right" to develop derivative materials. Nevertheless, it was good business practice to grant an author or co-author the "right" to develop derivative materials for licensing because there was no cost to the University associated with such development and the University shared in royalties generated by sales of the derivative materials.

Nowhere does Santi refer to this "right" as part of her compensation. Furthermore,. Santi's "Memorandum of Appointment," submitted to the trial court as evidence on the plea to the jurisdiction states her base compensation and her total compensation. The two numbers are the same. The memorandum does not mention the right to license derivative materials or any other form of compensation. The University's denial to grant Santi the right to license derivative materials is not an action "in connection with compensation" and, therefore, does not fall within the waiver of sovereign immunity provided by the Act. The trial court did not err by granting the University's plea to the jurisdiction on the claim of retaliation for failure to grant the right to license derivative materials. *See Miranda,* 133 S.W.3d at 226 (plaintiff has initial burden to plead facts affirmatively showing trial court has subject matter jurisdiction).

**Conclusion**
We affirm the judgment of the trial court.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

312 S.W.3d 800, 257 Ed. Law Rep. 1149
**(Cite as: 312 S.W.3d 800)**

Tex.App.–Houston [1 Dist.],2009.
Santi v. University of Texas Health Science Center
at Houston
312 S.W.3d 800, 257 Ed. Law Rep. 1149

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

# APPENDIX
# 17

Not Reported in S.W.3d, 2014 WL 768330 (Tex.App.-Hous. (1 Dist.))
**(Cite as: 2014 WL 768330 (Tex.App.-Hous. (1 Dist.)))**

**H**
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION
AND SIGNING OF OPINIONS.

**MEMORANDUM OPINION**

Court of Appeals of Texas, ·
Houston (1st Dist.).
CITY OF HOUSTON, Appellant
v.
Robert A. SMITH, Appellee.

No. 01–13–00241–CV.
Feb. 25, 2014.

On Appeal from the 61st District Court Harris
County, Texas Trial Court, Cause No.2011–46461.
John B. Wallace, Natalie Gianna Deluca, Henry
Carnaby, for City of Houston.

Lloyd Krell, for Robert A. Smith.

Panel consists of Chief Justice RADACK and
Justices BLAND and HUDDLE.

**MEMORANDUM OPINION**
REBECA HUDDLE, Justice.
*1 This is an accelerated appeal from the trial
court's denial of the City of Houston's plea to the
jurisdiction. The City argues that the trial court
erred in denying the plea because appellee Robert
A. Smith did not timely satisfy the jurisdictional
prerequisites to suit under the Texas Whistleblower
Act. We affirm.

**Background**
Smith has been employed by the Houston Po-
lice Department ("HPD") for 26 years. He initially
worked in the Identification Division of the HPD,
which handles fingerprint evidence, and eventually
reached the rank of deputy administrator. [FN1] In
January 2010, Smith became acting administrator

of the Identification Division.[FN2] According to
Smith's deposition testimony, the acting adminis-
trator job was only a temporary job assignment. Ac-
cordingly, Smith would receive the $8 pay raise as-
sociated with the acting administrator assignment
only for so long as he was performing the duties of
that role. According to Smith's deposition testi-
mony, during his tenure as acting administrator he
became aware of various alleged errors and viola-
tions of law of a third party that the HPD had hired
to handle certain aspects of the fingerprint identific-
ation process. He reported his concerns to his su-
periors in the HPD.

> FN1. Due to reclassifications, the deputy
> administrator rank is now the rank of lieu-
> tenant.

> FN2. Due to reclassifications, the acting
> administrator rank is now the rank of act-
> ing captain.

In October 2010, then-Assistant Chief Vicki
King spoke with Smith and told him that he was be-
ing reassigned to the Property Division. Smith
moved to the Property Division in November 2010,
at which point he ceased having the title of acting
administrator and the $8 increase in pay that had
come with it, and was reclassified as a lieutenant.
King testified that the reason that she decided to re-
assign Smith to the Property Division was his
"failure to follow directions, to report to the chain
of command, [and] to bring issues to my attention"
with respect to his concerns regarding the outside
company, and that "[h]e made policy decisions that
... almost had a catastrophic effect." But Smith was
not told that this was the reason for his reassign-
ment; King told Smith that he was "no longer a
good fit for the assignment as acting
[administrator]" and that he was going to be moved
to the Property Division to work on a "special
project." She testified, "I think he knew that he had
messed up." According to Smith, he was told that
he was being reassigned because there were con-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2014 WL 768330 (Tex.App.-Hous. (1 Dist.))
(Cite as: 2014 WL 768330 (Tex.App.-Hous. (1 Dist.)))

cerns regarding nepotism [FN3] and because King needed him for a temporary special assignment in the Property Division that required his expertise. King testified that the purpose of the transfer was to permit Smith to learn the ISO process that was being implemented in the Property Division, and that the intent was for the ISO process to then be brought over to the forensic division and that Smith would be one of the "point people." She testified that she also told Smith that if he migrated over to a lieutenant position in the Property Division, and the forensic division was moved elsewhere, he would have an opportunity to establish himself with the investigative divisions, and "it was an opportunity ... that no one else in their division was going to, to position themselves to be able to get a detective's job, a lieutenant's job, and to make a good name for themselves in the organization." When asked whether the assignment was "always meant to be a permanent transfer," King responded, "No. It was a temporary assignment."

> FN3. Smith's wife also worked in the Identification Division.

*2 On May 27, 2011, Smith signed a form acknowledging that his assignment to the Property Division was a permanent transfer. According to Smith, before this point, he believed that he was merely working in the Property Division as part of a temporary special project, and would return to his job in the Identification Division when the assignment was complete. Smith asserts that he did not realize the true reason for his reassignment—his complaints regarding the outside company—until he was forced to accept the transfer permanently. Smith claims that he signed the permanent transfer form under duress, because he was told that he would be relieved of duty if he did not sign.

Smith initiated a grievance regarding the transfer 56 days after he signed the permanent transfer form. He filed suit, alleging that the transfer was an adverse personnel action in violation of the Texas Whistleblower Act, 70 days after signing the form.

The City filed a plea to the jurisdiction, alleging that Smith did not comply with the Whistleblower Act's jurisdictional prerequisite to initiate a grievance within 90 days after the alleged violation occurred or was discovered through reasonable diligence. *See* TEX. GOV'T CODE ANN. § 554.005 –.006 (West 2012). The City argued that the 90 days should be measured from the time in 2010 when Smith was originally notified of his reassignment and was moved to the Property Division, because the move involved a drop in title and in pay. The City argued that Smith showed poor judgment and acted improperly in handling his concerns regarding the third party's allegedly improper practices, and that Smith knew that he was being transferred to the Property Division because of his improper conduct. The trial court denied the City's plea to the jurisdiction, and the City brought this interlocutory appeal.[FN4]

> FN4. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (West Supp.2012) (authorizing interlocutory appeal from denial of governmental unit's plea to jurisdiction).

## Discussion

In two issues, the City contends that the trial court erred in denying its plea to the jurisdiction because (1) Smith did not timely initiate a grievance or file suit, and (2) it conclusively proved that Smith learned of the complained-of transfer in October 2010 and was transferred in November 2010, but waited until July and August 2011 to grieve and sue.

### A. Standard of Review

A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction to hear a case. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000); *Kamel v. Univ. of Tex. Health Sci. Ctr.,* 333 S.W.3d 676, 681 (Tex.App.-Houston [1st Dist.] 2010, pet. denied). The existence of subject-matter jurisdiction is a question of law that we review de novo. *State Dep't of Highways & Pub. Transp. v. Gonzalez,* 82 S.W.3d 322, 327 (Tex.2002); *Kamel,*

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

333 S.W.3d at 681.

When, as here, a plea to the jurisdiction "challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, even where those facts may implicate the merits of the cause of action." *City of Waco v. Kirwan,* 298 S.W.3d 618, 622 (Tex.2009) (internal quotation omitted). The plea to the jurisdiction standard mirrors that of a traditional motion for summary judgment. *Ross v. Linebarger, Goggan, Blair & Sampson, L.L.P.,* 333 S.W.3d 736, 744 (Tex.App.-Houston [1st Dist.] 2010, no pet.). When reviewing the evidence, we must take as true all evidence in favor of the nonmovant and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor ." *Kirwan,* 298 S.W.3d at 622 (quoting *Miranda,* 133 S.W.3d. at 228). If the evidence creates a fact question regarding jurisdiction, the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder; however, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Kamel,* 333 S.W.3d at 681; *Miranda,* 133 S.W.3d at 227–28.

**B. Applicable Law**

*3 As a preliminary matter, we note that Smith's argument that the 90 day requirement is not jurisdictional relies upon cases decided before the 2005 revisions to Section 311.034, which explicitly made all statutory prerequisites to suit against a governmental entity jurisdictional and abrogated previous cases holding otherwise. *See* Act of May 25, 2005, 79th Leg., R.S., ch. 1150, § 1, 2005 Tex. Gen. Laws 3783, 3783 (amending section 311.034 effective September 1, 2005) (current version at TEX. GOV'T CODE ANN. § 311.034 (West 2013) ).

The Texas Whistleblower Act bars state and local governments from retaliating against public employees who report violations of law:

A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.

TEX. GOV'T CODE ANN. § 554.002(a) (West 2012). The Act defines a "personnel action" as "an action that affects a public employee's compensation, promotion, demotion, transfer, work assignment, or performance evaluation," and the Texas Supreme Court has defined an "adverse" action as an action that "would be likely to dissuade a reasonable, similarly situated worker from making a report under the Act." *Id.* § 554.001(3) (West 2012); *Montgomery Cnty. v. Park,* 246 S.W.3d 610, 614 (Tex.2007).

If an adverse action is taken, the Texas Whistleblower Act requires a claimant to "initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action" before filing suit. TEX. GOV'T CODE ANN. § 554.006(a). This statutory prerequisite to suit is jurisdictional. *See id.* § 311.034 ("Statutory prerequisites to a suit ... are jurisdictional requirements in all suits against a governmental entity."); *Fort Bend Indep. Sch. Dist. v. Gayle,* 371 S.W.3d 391, 395 (Tex.App.-Houston [1st Dist.] 2012, pet. denied). When a plaintiff has not satisfied this requirement, his lawsuit is barred by governmental immunity and must be dismissed. *See Gayle,* 371 S.W.3d at 395. To be timely under the Whistleblower Act, "[t]he employee must invoke the applicable grievance or hearing procedures not later than the 90th day after the date on which the alleged violation of this chapter:

(1) occurred; or

(2) was discovered by the employee through reasonable diligence.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2014 WL 768330 (Tex.App.-Hous. (1 Dist.))
(Cite as: 2014 WL 768330 (Tex.App.-Hous. (1 Dist.)))

TEX. GOV'T CODE ANN. § 554.006(b). "The relevant act for limitations purposes is the date upon which the plaintiff discovered, through reasonable diligence, that [a violation has occurred], if that discovery occurred after the actual date of [the violation]." *See Tex. A & M Univ. at Corpus Christi v. Hamann,* 3 S.W.3d 215, 217 (Tex.App.-Corpus Christi 1999, pet. denied); *see also Villareal v. Williams,* 971 S.W.2d 622, 626 (Tex.App.-San Antonio 1998, no pet.) (90–day period ran from date plaintiffs were aware violation of Whistleblower Act may have occurred).

**C. Analysis**
*4 Here, both the City and Smith agree that Smith initiated his grievance on July 22, 2011 and filed suit on August 5, 2011. The sole dispute is whether Smith was required to grieve within 90 days of his reassignment in November 2010, or whether the 90–day period ran from May 27, 2011, the date Smith signed a form acknowledging that the transfer was permanent.

The City contends that the 90–day period runs from the date of Smith's reassignment because Smith was informed that he was being transferred and knew that the move involved a lesser title and a reduction in pay. Smith does not dispute that he was told he was being moved to the Property Division in October 2010, that he was moved to the Property Division in November 2010, or that the reassignment came with a lower rank and lower pay. But Smith contends that there is a fact issue about whether he knew the November 2010 move was an adverse personnel action because King told him that his move to the Property Division was a temporary special assignment for which his expertise was needed. Accordingly, Smith contends that he did not realize until May 2011 (when the transfer became permanent) that the action was motivated by his complaints regarding the outside company.

Smith contends that his grievance was timely under the continuing-violation doctrine. *See Univ. of Houston v. Barth,* 178 S.W.3d 157, 162–63 (Tex.App.-Houston [1st Dist.] 2005, no pet.)

(continuing-violation doctrine may be applied to Whistleblower Act complaints). The "continuing violation" doctrine applies when an unlawful employment practice manifests itself over time, rather than as a series of discrete acts. *Davis v. Autonation USA Corp.,* 226 S.W.3d 487, 493 (Tex.App.-Houston [1st Dist.] 2006, no pet.); *Wal–Mart Stores v. Davis,* 979 S.W.2d 30, 41–42 (Tex.App.-Austin 1998, pet. denied). Under the continuing violation theory, a plaintiff must show an organized scheme leading to and including a present violation, so that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action. *Autonation,* 226 S.W.3d at 493; *Cooper–Day v. RME Petroleum Co.,* 121 S.W.3d 78, 87 (Tex.App.-Fort Worth 2003, pet. denied). For example, a claim of a hostile work environment is a continuing violation, while "termination, failure to promote, denial of transfer, or refusal to hire" are discrete acts. *Santi v. Univ. of Tex. Health Sci. Ctr.,* 312 S.W.3d 800, 805 (Tex.App.-Houston [1st Dist.] 2009, no pet.). The "focus is on what event should, in fairness and logic, have alerted the average layperson to act to protect his or her rights." *Autonation,* 226 S.W.3d at 493 (quoting *Davis,* 979 S.W.2d at 41). The City argues that Smith is complaining of a discrete occurrence—an involuntary reassignment with an accompanying loss in title and pay—and therefore the continuing violation doctrine does not apply.

We agree with the City that the continuing violation doctrine does not apply to this case. However, "the legislature has provided claimants under the Whistleblower Act with a discovery rule which serves to toll limitations in certain circumstances." *Hamann,* 3 S.W.3d at 217. Under the statute, the 90–day timeline begins to run from the date that the alleged violation occurred, *or* was discovered by the employee through reasonable diligence. *See* TEX. GOV'T CODE ANN. § 554.006(b).

*5 Here, we conclude that the evidence raises a

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2014 WL 768330 (Tex.App.-Hous. (1 Dist.))
(Cite as: 2014 WL 768330 (Tex.App.-Hous. (1 Dist.)))

fact issue regarding the date upon which Smith, exercising reasonable diligence, discovered that an alleged violation of the Whistleblower Act had occurred. *See* TEX. GOV'T CODE ANN. § 554.006(b); *see also Hamann,* 3 S.W.3d at 218 (relevant act for limitations purposes is the date upon which plaintiff discovers, through reasonable diligence, that a violation occurred); *Villareal,* 971 S.W.2d at 626 (90 day period ran from date plaintiffs were aware violation of Whistleblower Act may have occurred). The City argues that the reassignment was clearly adverse because Smith was reassigned to a lower ranking position that paid less than the acting administrator job, and because Smith testified that assignment to the Property Division had a stigma associated with it. The City also points out that Smith himself has alleged, in the trial court, that the reassignment to the Property Division in November 2010 was an adverse personnel action.

But the City and Smith agree that Smith's acting administrator assignment in the Identification Division was only a temporary one, and that he was entitled to the salary associated with that position only for so long as he was in that position. When Smith was reassigned to the Property Division, he was assigned the rank of lieutenant, the same rank that he held prior to taking on the acting administrator duties. Further, Smith testified that he believed, based on what Chief King told him, that he was being reassigned to the Property Division to help with a temporary special project. Chief King, who informed Smith of his reassignment, testified that she told Smith that he was going to be moved to the Property Division to work on a "special project" and that it was a "temporary assignment." She testified that the stated purpose of the transfer was to permit Smith to learn the ISO process, and that the intent was for the ISO process to then be brought over to the forensic division and that Smith would be one of the "point people." She testified that she also told Smith that if he migrated over to a lieutenant position in the Property Division, and the forensic division was moved elsewhere, he would

have an opportunity to establish himself with the investigative divisions, and "it was an opportunity ... that no one else in their division was going to, to position themselves to be able to get a detective's job, a lieutenant's job, and to make a good name for themselves in the organization." She testified that it was not initially meant to be a permanent transfer, and that Smith was not officially transferred to the Property Division until July 2011, the same month in which he filed his grievance.

We must resolve all doubts in the nonmovant's favor, and accordingly, we conclude that the evidence raises a fact issue regarding when Smith discovered that an alleged violation of the Whistleblower Act had occurred.[FN5] *See Miranda,* 133 S.W.3d at 228; *Kamel,* 333 S.W.3d at 681; *Hamann,* 3 S.W.3d at 218; *Villareal,* 971 S.W.2d at 626. Because the evidence creates a fact question regarding jurisdiction, the trial court correctly denied the plea to the jurisdiction. *See Miranda,* 133 S.W.3d at 227–28 (holding that if evidence creates fact question regarding jurisdiction, trial court cannot grant plea to jurisdiction, and the fact issue should be resolved by fact finder); *Barth,* 178 S.W.3d at 163 (holding that if there are fact issues regarding timely grieving or timely filing under Whistleblower Act, trial court precluded from granting plea to jurisdiction); *see also Hamann,* 3 S.W.3d at 218 (affirming denial of plea to the jurisdiction in suit filed more than 90 days after plaintiff's termination because relevant date was date violation was discovered through reasonable diligence); *Villareal,* 971 S.W.2d at 626 (90 days begins on date plaintiff suspects the reason for the adverse action).

> FN5. We note that in so holding, we do not decide whether Smith's underlying claim is meritorious or whether the action alleged constitutes an adverse personnel action.

*6 We overrule the City's two issues.

**Conclusion**

We affirm the trial court's denial of the City's plea to the jurisdiction.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2014 WL 768330 (Tex.App.-Hous. (1 Dist.))
**(Cite as: 2014 WL 768330 (Tex.App.-Hous. (1 Dist.)))**

Tex.App.-Hous.[1 Dist.],2014.
City of Houston v. Smith
Not Reported in S.W.3d, 2014 WL 768330
(Tex.App.-Hous. (1 Dist.))

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

# APPENDIX
# 18

Westlaw.

131 S.W.3d 663, 187 Ed. Law Rep. 793
**(Cite as: 131 S.W.3d 663)**

**H**

Court of Appeals of Texas,
Corpus Christi–Edinburg.
Jesus ALEJANDRO, Appellant,
v.
ROBSTOWN INDEPENDENT SCHOOL DIS-
TRICT, et al., Appellees.

No. 13–01–00780–CV.
April 1, 2004.

**Background:** Assistant superintendent who was al-
legedly terminated in retaliation for reporting mis-
conduct by members of school district's board of
trustees brought action against school district, its
superintendent, and members of its board of trust-
ees for violation of the Whistleblower Act. The
117th District Court, Nueces County, Sandra Watts,
J., granted defendants' motion for directed verdict
and assessed sanctions against plaintiff and his at-
torney. Plaintiff appealed.

**Holdings:** The Court of Appeals, Federico G.
Hinojosa, J., held that:
(1) assistant superintendent failed to establish a
"but for" causal nexus between his reporting of
misconduct and his reassignment and eventual ter-
mination, precluding his recovery for retaliatory
discharge under the Whistleblower Act;
(2) assistant superintendent had no private right of
action against the superintendent or members of the
board of trustees in their individual capacities; and
(3) trial court abused its discretion by imposing
sanctions on assistant superintendent.

Affirmed in part and reversed in part.

West Headnotes

**[1] Trial 388 ☞139.1(14)**

388 Trial
    388VI Taking Case or Question from Jury
        388VI(A) Questions of Law or of Fact in
General
            388k139.1 Evidence
                388k139.1(5) Submission to or With-
drawal from Jury
                    388k139.1(14) k. Sufficiency to
present issue of fact. Most Cited Cases
    A court may direct a verdict when a plaintiff
fails to present evidence raising a fact issue essen-
tial to the plaintiff's right of recovery.

**[2] Trial 388 ☞139.1(17)**

388 Trial
    388VI Taking Case or Question from Jury
        388VI(A) Questions of Law or of Fact in
General
            388k139.1 Evidence
                388k139.1(5) Submission to or With-
drawal from Jury
                    388k139.1(17) k. Insufficiency to
support other verdict; conclusive evidence. Most
Cited Cases

**Trial 388 ☞169**

388 Trial
    388VI Taking Case or Question from Jury
        388VI(D) Direction of Verdict
            388k167 Nature and Grounds
                388k169 k. Verdict for defendant.
Most Cited Cases
    A trial court may direct a verdict for a defend-
ant if the plaintiff admits or the evidence conclus-
ively establishes a defense to the plaintiff's cause of
action.

**[3] Appeal and Error 30 ☞927(7)**

30 Appeal and Error
    30XVI Review
        30XVI(G) Presumptions
            30k927 Dismissal, Nonsuit, Demurrer to
Evidence, or Direction of Verdict
                30k927(7) k. Effect of evidence and
inferences therefrom on direction of verdict. Most

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

131 S.W.3d 663, 187 Ed. Law Rep. 793
(Cite as: 131 S.W.3d 663)

Cited Cases

In reviewing a case in which a verdict has been directed, Court of Appeals examines the evidence in the light most favorable to the party against whom the verdict was rendered and disregards all contrary evidence and inferences.

**[4] Trial 388 ⬦139.1(14)**

388 Trial
　388VI Taking Case or Question from Jury
　　388VI(A) Questions of Law or of Fact in General
　　　388k139.1 Evidence
　　　　388k139.1(5) Submission to or Withdrawal from Jury
　　　　　388k139.1(14) k. Sufficiency to present issue of fact. Most Cited Cases

When reasonable minds may differ as to the truth of controlling facts, the issue must go to the jury.

**[5] Trial 388 ⬦139.1(7)**

388 Trial
　388VI Taking Case or Question from Jury
　　388VI(A) Questions of Law or of Fact in General
　　　388k139.1 Evidence
　　　　388k139.1(5) Submission to or Withdrawal from Jury
　　　　　388k139.1(7) k. "No" evidence; total failure of proof. Most Cited Cases

**Trial 388 ⬦139.1(12)**

388 Trial
　388VI Taking Case or Question from Jury
　　388VI(A) Questions of Law or of Fact in General
　　　388k139.1 Evidence
　　　　388k139.1(5) Submission to or Withdrawal from Jury
　　　　　388k139.1(12) k. Speculation or conjecture; choice of probabilities or theories. Most Cited Cases

When no evidence of probative force on an ultimate fact element exists, or when the probative force of testimony is so weak that only a mere surmise or suspicion is raised as to the existence of essential facts, the trial court has a duty to instruct the verdict.

**[6] Appeal and Error 30 ⬦854(5)**

30 Appeal and Error
　30XVI Review
　　30XVI(A) Scope, Standards, and Extent, in General
　　　30k851 Theory and Grounds of Decision of Lower Court
　　　　30k854 Reasons for Decision
　　　　　30k854(5) k. Direction of verdict, dismissal, or nonsuit. Most Cited Cases

A reviewing court may affirm a directed verdict even if the trial court's rationale for granting the directed verdict is erroneous, provided it can be supported on any other basis.

**[7] Officers and Public Employees 283 ⬦66**

283 Officers and Public Employees
　283I Appointment, Qualification, and Tenure
　　283I(G) Resignation, Suspension, or Removal
　　　283k66 k. Grounds for removal or other adverse action. Most Cited Cases

To establish causation in a whistleblower action, a public employee must prove that without the report of a violation of law, the employer's prohibited conduct would not have occurred when it did. V.T.C.A., Government Code §§ 554.001–554.010.

**[8] Officers and Public Employees 283 ⬦66**

283 Officers and Public Employees
　283I Appointment, Qualification, and Tenure
　　283I(G) Resignation, Suspension, or Removal
　　　283k66 k. Grounds for removal or other adverse action. Most Cited Cases

The plaintiff in a whistleblower action is re-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

131 S.W.3d 663, 187 Ed. Law Rep. 793
(Cite as: 131 S.W.3d 663)

quired to establish a "but for" causal nexus between the report of misconduct and the employer's actions. V.T.C.A., Government Code §§ 554.001 – 554.010.

**[9] Officers and Public Employees 283 ⬸66**

283 Officers and Public Employees
    283I Appointment, Qualification, and Tenure
        283I(G) Resignation, Suspension, or Removal
            283k66 k. Grounds for removal or other adverse action. Most Cited Cases
A jury may not infer causation in an action brought under the Whistleblower Act without some evidence from the plaintiff to support such a finding. V.T.C.A., Government Code §§ 554.001 – 554.010.

**[10] Officers and Public Employees 283 ⬸ 72.63**

283 Officers and Public Employees
    283I Appointment, Qualification, and Tenure
        283I(H) Proceedings for Removal, Suspension, or Other Discipline
            283I(H)4 Evidence and Witnesses
                283k72.63 k. Weight and sufficiency. Most Cited Cases
Circumstantial evidence may be sufficient to establish a causal link between the adverse employment action and the reporting of illegal conduct in a case brought under the Whistleblower Act, and such evidence includes: (1) knowledge of the report of illegal conduct; (2) expression of a negative attitude toward the employee's report of the conduct; (3) failure to adhere to established company policies regarding employment decisions; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the adverse employment action was false. V.T.C.A., Government Code §§ 554.001 – 554.010.

**[11] Education 141E ⬸418**

141E Education
    141EII Public Primary and Secondary Schools
        141EII(C) Officers and Employees
            141Ek411 Appointment and Tenure
                141Ek418 k. Grounds for removal or other adverse action. Most Cited Cases
(Formerly 345k63(1) Schools)

**Education 141E ⬸420**

141E Education
    141EII Public Primary and Secondary Schools
        141EII(C) Officers and Employees
            141Ek411 Appointment and Tenure
                141Ek420 k. Proceedings and review. Most Cited Cases
(Formerly 345k63(1) Schools)
Assistant superintendent failed to establish a "but for" causal nexus between his reporting of misconduct by members of school district's board of trustees and his reassignment and eventual termination, precluding his recovery for retaliatory discharge under the Whistleblower Act, where assistant superintendent's termination occurred more than ten months after his report, and investigation initiated prior to assistant superintendent's report uncovered his own failure to comply with board policies and regulations, violation of competitive bidding laws, and use of school district property for personal business. V.T.C.A., Government Code §§ 554.001–554.010.

**[12] Education 141E ⬸420**

141E Education
    141EII Public Primary and Secondary Schools
        141EII(C) Officers and Employees
            141Ek411 Appointment and Tenure
                141Ek420 k. Proceedings and review. Most Cited Cases
(Formerly 345k63(1) Schools)
Under the Whistleblower Act, former assistant superintendent who was allegedly terminated in retaliation for reporting misconduct by members of school district's board of trustees had no private right of action against the superintendent or mem-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

131 S.W.3d 663, 187 Ed. Law Rep. 793
(Cite as: 131 S.W.3d 663)

bers of the board of trustees in their individual capacities. V.T.C.A., Government Code §§ 554.002(a), 554.008(e).

**[13] Appeal and Error 30 ☞984(1)**

30 Appeal and Error
  30XVI Review
    30XVI(H) Discretion of Lower Court
      30k984 Costs and Allowances
        30k984(1) k. In general. Most Cited Cases

**Costs 102 ☞2**

102 Costs
  102I Nature, Grounds, and Extent of Right in General
    102k1 Nature and Grounds of Right
      102k2 k. In general. Most Cited Cases
    Imposing an available sanction is left to the sound discretion of the trial court; thus, Court of Appeals reviews the trial court's actions under an abuse-of-discretion standard of review.

**[14] Appeal and Error 30 ☞961**

30 Appeal and Error
  30XVI Review
    30XVI(H) Discretion of Lower Court
      30k961 k. Depositions, affidavits, or discovery. Most Cited Cases
    The test for determining whether the trial court abused its discretion in imposing sanctions is whether it acted without reference to any guiding rules and principles.

**[15] Appeal and Error 30 ☞984(1)**

30 Appeal and Error
  30XVI Review
    30XVI(H) Discretion of Lower Court
      30k984 Costs and Allowances
        30k984(1) k. In general. Most Cited Cases
    A trial court abuses its discretion in imposing sanctions only if it bases its order on an incorrect

view of the law or an erroneous assessment of the evidence.

**[16] Costs 102 ☞2**

102 Costs
  102I Nature, Grounds, and Extent of Right in General
    102k1 Nature and Grounds of Right
      102k2 k. In general. Most Cited Cases
    In determining whether sanctions for filing a groundless pleading are appropriate, the trial court must examine the facts available to the litigant and the circumstances existing when the litigant filed the pleading. Vernon's Ann.Texas Rules Civ.Proc., Rule 13.

**[17] Costs 102 ☞2**

102 Costs
  102I Nature, Grounds, and Extent of Right in General
    102k1 Nature and Grounds of Right
      102k2 k. In general. Most Cited Cases
    In determining whether to impose sanctions, the trial court is required to provide notice and hold an evidentiary hearing to make the necessary factual determinations about the motives and credibility of the person filing the groundless pleading. Vernon's Ann.Texas Rules Civ.Proc., Rule 13.

**[18] Costs 102 ☞2**

102 Costs
  102I Nature, Grounds, and Extent of Right in General
    102k1 Nature and Grounds of Right
      102k2 k. In general. Most Cited Cases
    Trial court had no evidence before it to determine the motives and credibility of assistant superintendent who filed allegedly groundless claim against school district for retaliatory discharge under the Whistleblower Act, and thus court abused its discretion by imposing sanctions on assistant superintendent, even though facts adduced during trial of the case arguably established assistant superin-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

131 S.W.3d 663, 187 Ed. Law Rep. 793
(Cite as: 131 S.W.3d 663)

tendent's improper motives, where school district never offered or introduced any such evidence at the sanctions hearing. Vernon's Ann.Texas Rules Civ.Proc., Rule 13.

[19] Costs 102 ⬬➔2

102 Costs
    102I Nature, Grounds, and Extent of Right in General
          102k1 Nature and Grounds of Right
             102k2 k. In general. Most Cited Cases
    A movant seeking sanctions for filing a groundless pleading must establish both: (1) the frivolity of the opponent's claim; and (2) the improper motives underlying the decision to file the suit, motion, or document. Vernon's Ann.Texas Rules Civ.Proc., Rule 13.

[20] Costs 102 ⬬➔2

102 Costs
    102I Nature, Grounds, and Extent of Right in General
          102k1 Nature and Grounds of Right
             102k2 k. In general. Most Cited Cases
    Evidence must be admitted in compliance with the rules of evidence at the evidentiary hearing for a trial court to consider it in determining whether sanctions for filing a groundless pleading are appropriate. Vernon's Ann.Texas Rules Civ.Proc., Rule 13.

*665 William J. Kolb, Alice, for Appellant.

Angelica E. Rodriguez Barrera, Phillip A. McKinney, Hornblower, Manning & Ward, Corpus Christi, for Appellees.

Before Justices HINOJOSA, YAÑEZ, and CASTILLO.

**OPINION**
Opinion by Justice HINOJOSA.
    Appellant, Jesus Alejandro, was terminated from his position as the Assistant Superintendent for Business and Finance with the Robstown Independent School District ("RISD"). Appellant sued the following appellees: RISD; Leobardo Cano, individually and in his official capacity as RISD's Superintendent of Schools ("Superintendent Cano"); and Adolfo Lopez and Oscar Lopez, individually and in their official capacities as members of the RISD Board of Trustees. Appellant alleged retaliatory discharge under the Texas Whistleblower Act ("the Act").[FN1] The trial court granted appellees' motion for directed verdict and assessed sanctions against appellant and his attorney in the amount of $23,764.77 for the costs, expenses, and attorneys fees incurred by appellees in defending the suit. By two points of error, appellant contends: (1) the trial court erred in granting a directed verdict; and (2) the evidence is legally insufficient to support the sanctions imposed against him. We affirm the trial court's judgment granting the directed verdict. We reverse the trial court's sanctions order and render judgment that appellees' motion for Texas Rule of Civil Procedure 13 sanctions be denied.

> FN1. In his first amended petition, appellant also alleged violations of article 1, sections 8 and 19 of the Texas Constitution. However, he does not pursue these claims on appeal. *See* TEX.R.APP. P. 38.1.

A. FACTUAL BACKGROUND
    As part of his duties as RISD's Assistant Superintendent for Business and Finance,*666 appellant reviewed and approved purchase orders for travel and related expenses for RISD employees and school board members. In September 1998, RISD school board members Adolfo Lopez and Oscar Lopez went on an RISD business trip accompanied by their spouses. RISD paid the airfare for both board members and their spouses. Appellant reviewed and approved the purchase orders for the travel and authorized the check to be issued to the travel agency. After the trip, Adolfo Lopez and Oscar Lopez reimbursed RISD for their respective spouses' flights.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

131 S.W.3d 663, 187 Ed. Law Rep. 793
(Cite as: 131 S.W.3d 663)

On December 9, 1998, appellant wrote to Superintendent Cano, alleging that Adolfo Lopez and Oscar Lopez had engaged in the misuse of public funds, abuse of office, and official misconduct. In the letter, appellant claimed that Adolfo Lopez and Oscar Lopez had illegally used RISD funds to pay for their respective spouses' airfare, and that such conduct violated article 3, section 52(a) of the Texas Constitution [FN2] and section 39.02(a) of the penal code.[FN3] Appellant further claimed that expenses for a second hotel room,[FN4] the personal use of a van rented by RISD for the business trip, and $30 in valet parking were unnecessary and unreasonable expenses and, thus, violated section 45.105 of the Texas Education Code.[FN5] Lastly, appellant alleged that claiming a full per diem reimbursement when receiving a complimentary meal violated section 37.10 of the penal code.[FN6]

FN2. Article three, section 52(a) of the Texas Constitution prohibits the Legislature from authorizing a county, city, town, or subdivision of the State to lend its credit or to grant public money or thing of value to any individual, association, or corporation. TEX. CONST. art. III, § 52(a). This section is intended to prevent the gratuitous grant of public funds for private purposes. *Edgewood Indep. Sch. Dist. v. Meno,* 917 S.W.2d 717, 740 (Tex.1995).

FN3. Under section 39.02(a) of the penal code, a public servant commits an offense if, with intent to obtain a benefit or with intent to harm or defraud another, he intentionally or knowingly violates a law relating to his employment, or misuses government property, services, personnel, or any other thing of value belonging to the government that has come into his custody or possession by virtue of his employment. TEX. PEN.CODE ANN. § 39.02(a) (Vernon 2003).

FN4. Appellant reasoned that because Oscar Lopez and Adolfo Lopez were trav-

eling together, it was reasonable to expect them to have shared a room. But, because their spouses were traveling with them, the additional cost was tantamount to paying for the spouses' hotel rooms.

FN5. Section 45.105 of the education code authorizes the expenditure of local school funds for the purposes listed for state and county available funds and for other purposes necessary in the conduct of the public schools determined by the board of trustees. TEX. EDUC.CODE ANN. § 45.105(c) (Vernon Supp.2004).

FN6. A person commits an offense under section 37.10 of the penal code if he knowingly makes a false entry in a governmental record or presents a record with knowledge of its falsity and with intent that it be taken as a genuine governmental record. TEX. PEN.CODE ANN. § 37.10(a)(1)-(2) (Vernon 2003).

### B. DIRECTED VERDICT

By his first point of error, appellant contends the trial court erred in granting appellees' motion for directed verdict. He asserts there are disputed issues of material fact on each element of his claim that cannot be resolved as a matter of law and require submission to a jury.

[1][2] A court may direct a verdict when a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,* 29 S.W.3d 74, 77 (Tex.2000). A trial court *667 may also direct a verdict for a defendant if the plaintiff admits or the evidence conclusively establishes a defense to the plaintiff's cause of action. *Reyna v. First Nat'l Bank,* 55 S.W.3d 58, 69 (Tex.App.-Corpus Christi 2001, no pet.).

[3][4][5][6] On review, we examine the evidence in the light most favorable to the party against whom the verdict was rendered and disregard all

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

131 S.W.3d 663, 187 Ed. Law Rep. 793
**(Cite as: 131 S.W.3d 663)**

contrary evidence and inferences. *Qantel Bus. Sys. v. Custom Controls,* 761 S.W.2d 302, 303–04 (Tex.1988). When reasonable minds may differ as to the truth of controlling facts, the issue must go to the jury. *Collora v. Navarro,* 574 S.W.2d 65, 68 (Tex.1978); *Villegas v. Griffin Indus.,* 975 S.W.2d 745, 749 (Tex.App.-Corpus Christi 1998, pet. denied). When no evidence of probative force on an ultimate fact element exists, or when the probative force of testimony is so weak that only a mere surmise or suspicion is raised as to the existence of essential facts, the trial court has a duty to instruct the verdict. *Villarreal v. Art Inst. of Houston, Inc.,* 20 S.W.3d 792, 796 (Tex.App.-Corpus Christi 2000, no pet.). The reviewing court may affirm a directed verdict even if the trial court's rationale for granting the directed verdict is erroneous, provided it can be supported on any other basis. *Id.*

### 1. *Causal Link between Report and Termination*

Appellant asserts he satisfied the elements of a whistleblower claim because he reported, in good faith, the alleged misuse of public funds, abuse of office, and official misconduct by Adolfo Lopez and Oscar Lopez to the County Attorney, District Attorney, and Texas Education Agency ("TEA").

[7][8][9][10] Under the Texas Whistleblower Act, public employees are protected from retaliation for reporting, in good faith, violations of law by the employing governmental entity or another public employee to an appropriate law enforcement authority. TEX. GOV'T CODE ANN. § 554.002(a) (Vernon Supp.2004). To establish causation in a whistleblower action, a public employee must prove that without the report of a violation of law, the employer's prohibited conduct would not have occurred when it did. *Tex. Dep't of Human Servs. v. Hinds,* 904 S.W.2d 629, 636 (Tex.1995). The plaintiff is required to establish a "but for" causal nexus between the report of misconduct and the employer's actions. *Tex. Natural Res. Conservation Comm'n v. McDill,* 914 S.W.2d 718, 723 (Tex.App.-Austin 1996, no writ). A jury may not infer causation without some evidence from the

plaintiff to support such a finding. *City of Fort Worth v. Zimlich,* 29 S.W.3d 62, 68 (Tex.2000). The Texas Supreme Court has noted that certain circumstantial evidence may be sufficient to establish a causal link between the adverse employment action and the reporting of illegal conduct. *Id.* at 69. Such evidence includes: (1) knowledge of the report of illegal conduct; (2) expression of a negative attitude toward the employee's report of the conduct; (3) failure to adhere to established company policies regarding employment decisions; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the adverse employment action was false. *Id.*

The record in this case shows that in February 1999, after appellant's report concerning the actions of Adolfo Lopez and Oscar Lopez, Superintendent Cano conducted appellant's annual performance review. Despite some evidence of weak performance in a few vital areas, appellant's employment continued on the same terms.

On April 1, 1999, TEA issued its final report in an investigation of RISD that *668 had been initiated prior to appellant's report. TEA revealed several instances of deviations from RISD policy by the business office. For example, on one occasion, the business manager failed to obtain the superintendent's approval before he ordered payment to the district's legal counsel, in violation of local policy. In view of these problems, TEA assigned a monitor to oversee operations at RISD and recommended an audit of RISD's financial practices and procedures.

Effective May 20, 1999, Superintendent Cano reassigned appellant from the business office to a position within RISD with supervision over: (1) the energy conservation program; (2) the records management program; and (3) the workers' compensation and safety program. The letter of reassignment stated, "[n]othing in this reassignment of your duties will cause any change in your compensation, benefits, or contract status. You will continue to have the same pay rate and benefits in your new po-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

131 S.W.3d 663, 187 Ed. Law Rep. 793
**(Cite as: 131 S.W.3d 663)**

sition." The letter listed the results of the TEA investigation as support for Superintendent Cano's decision. The school board upheld the reassign- ment.

Concurrently, in compliance with the TEA report and the TEA monitor's request, Superintendent Cano ordered a special audit of the business office. As a result of that audit, TEA uncovered appellant's violation of competitive bidding laws and appellant's own unreimbursed expense for a trip to New York City.

In August 1999, Superintendent Cano and the school board initiated the process to terminate appellant's employment. Superintendent Cano provided appellant with written notice of the reasons for termination, including failure to comply with board policies and TEA regulations, appellant's violation of competitive bidding laws, and appellant's use of: (1) RISD property for personal business, (2) RISD computer to visit inappropriate internet sites, and (3) unauthorized telephone recording equipment. Finally, on October 25, 1999, appellant's employment was terminated as a result of Superintendent Cano's recommendation and school board vote.

[11] Considering the evidence in the light most favorable to the party against whom the verdict was rendered, we cannot say that the trial court erred in directing a verdict in favor of appellees. Appellant's termination occurred more than ten months after his report. Thus, appellant was not entitled to a presumption that his termination was retaliatory. *See* TEX. GOV'T CODE ANN. § 554.004(a) (Vernon Supp.2004) (allowing for rebuttable presumption of causal connection if adverse employment action occurs not later than 90 days after employee reports violation of law).

In light of the stated reasons for appellant's termination and the evidence presented in support thereof, we conclude that the evidence fails to establish a "but for" causal nexus between appellant's report and appellant's reassignment and eventual

termination. Accordingly, we hold that appellant failed to present any evidence raising a fact issue essential to his right of recovery. *See Prudential Ins. Co.,* 29 S.W.3d at 77.

*2. Personal Liability of the Individual Defendants*
[12] The Act creates a private cause of action against the employing "state or local governmental entity." *See* TEX. GOV'T CODE ANN. § 554.002(a) (Vernon Supp.2004). However, the Act limits personal liability for individual defendants to a civil penalty. *See* TEX. GOV'T CODE ANN. § 554.008(e) **\*669** (Vernon Supp.2004).[FN7] Thus, under the Act, appellant has no private right of action against any of the appellees in their individual capacities. *See Austin v. Healthtrust, Inc.,* 967 S.W.2d 400, 401 (Tex.1998) (declining to create private common-law cause of action). Therefore, the trial court did not err in granting a directed verdict on appellant's claims against appellees in their individual capacities.

> FN7. The Act limits the personal liability of a supervisor or other individual who violates the Act to a civil penalty not to exceed $15,000, which is to be deposited into the state treasury after prosecution by the attorney general or appropriate prosecuting attorney. TEX. GOV'T CODE ANN. § 554.008 (Vernon Supp.2004).

We overrule appellant's first point of error.

### C. SANCTIONS

By his second point of error, appellant contends the evidence is legally insufficient to support the sanctions imposed against him. Appellees contend the trial court properly imposed sanctions based entirely on the testimony adduced at trial.

[13][14][15] Imposing an available sanction is left to the sound discretion of the trial court. *Koslow's v. Mackie,* 796 S.W.2d 700, 704 (Tex.1990). Thus, we review the trial court's actions under an abuse-of-discretion standard of review. *Rudisell v. Paquette,* 89 S.W.3d 233, 236

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

131 S.W.3d 663, 187 Ed. Law Rep. 793
(Cite as: 131 S.W.3d 663)

(Tex.App.-Corpus Christi 2002, no pet.). The test for determining whether the trial court abused its discretion is whether it acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). A trial court abuses its discretion in imposing sanctions only if it bases its order on an incorrect view of the law or an erroneous assessment of the evidence. *Randolph v. Jackson Walker, L.L.P.,* 29 S.W.3d 271, 276 (Tex.App.-Houston [14th Dist.] 2000, pet. denied).

[16] Rule 13 authorizes a trial court to impose sanctions against an attorney, a represented party, or both, who file a groundless pleading brought in bad faith or brought for the purpose of harassment. TEX.R. CIV. P. 13. In determining whether sanctions are appropriate, the trial court must examine the facts available to the litigant and the circumstances existing when the litigant filed the pleading. *Rudisell,* 89 S.W.3d at 237.

[17] Courts must presume that pleadings, motions, and other papers are filed in good faith, and the party moving for sanctions bears the burden of overcoming this presumption. TEX.R. CIV. P. 13; *GTE Communications Sys. Corp. v. Tanner,* 856 S.W.2d 725, 731 (Tex.1993) (orig.proceeding). Rule 13 requires that the trial court provide notice and hold an evidentiary hearing to make the necessary factual determinations about the motives and credibility of the person filing the groundless pleading. *N.Y. Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 856 S.W.2d 194, 205 (Tex.App.-Dallas 1993, no writ); *Home Owners Funding Corp. of Am. v. Scheppler,* 815 S.W.2d 884, 888–89 (Tex.App.-Corpus Christi 1991, no writ). Without such a hearing, the trial court has no evidence before it to determine that a pleading was filed in bad faith or to harass. *New York Underwriters,* 856 S.W.2d at 205.

[18] In the instant case, appellees filed a motion for rule 13 sanctions after the trial court granted their motion for directed verdict. After notice, the trial court held an evidentiary hearing. At the hearing, appellees argued that appellant did not file his whistleblower suit in good faith, *670 relying on the relevant facts of appellant's conduct introduced at trial. The trial court then stated: "All right. All I've heard from so far are the lawyers. Do we have any evidence on the sanction request?" Appellees then presented evidence regarding the amount of costs and attorneys fees they had incurred in defending the suit. The trial court found the suit to be groundless and ordered sanctions.

[19] A movant seeking rule 13 sanctions must establish both: (1) the frivolity of the opponent's claim; and (2) the improper motives underlying the decision to file the suit, motion, or document. *Karagounis v. Prop. Co. of Am.,* 970 S.W.2d 761, 765 (Tex.App.-Amarillo 1998, pet. denied). "This in turn makes it imperative for the trial court to convene and conduct an *evidentiary* hearing." *Id.* (Emphasis in original).

[20] While some facts adduced during the trial of this case arguably established appellant's improper motives,[FN8] appellees never offered or introduced any such evidence at the sanctions hearing. At the hearing, appellees presented evidence only on the amount of costs, expenses, and attorneys fees incurred in defending the suit. They did not ask the trial court to consider or take judicial notice of any evidence heard during the trial. As we have held previously, evidence must be admitted in compliance with the rules of evidence at the evidentiary hearing for a trial court to consider it in a rule 13 context. *Alejandro v. Bell,* 84 S.W.3d 383, 393 (Tex.App.-Corpus Christi 2002, no pet.); *see also McCain v. NME Hosps., Inc.,* 856 S.W.2d 751, 757 (Tex.App.-Dallas 1993, no writ) (reaffirming that motions and arguments of counsel are not evidence in a rule 13 context).

> FN8. The evidence included, *inter alia,* testimony from appellant that he probably would have dismissed his claims against Adolfo Lopez and Oscar Lopez if they only had expressed regret to him for voting in favor of his termination. Further, in his

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

131 S.W.3d 663, 187 Ed. Law Rep. 793
**(Cite as: 131 S.W.3d 663)**

brief to TEA on the appeal of his termination, appellant expressly stated it was not his intention to prove retaliation.

Having failed to receive into evidence the relevant facts regarding the circumstances surrounding the filing of the lawsuit, the trial court had no evidence before it to determine the motives and credibility of the person filing the allegedly groundless pleading or the relevant culpability of appellant or his attorneys. *See New York Underwriters,* 856 S.W.2d at 205. Accordingly, we hold that the trial court abused its discretion in assessing rule 13 sanctions against appellant. Appellant's second point of error is sustained.

We affirm the trial court's judgment granting appellees' motion for directed verdict. We reverse the trial court's sanctions order and render judgment that appellees' motion for sanctions be denied.

Tex.App.–Corpus Christi,2004.
Alejandro v. Robstown Independent School Dist.
131 S.W.3d 663, 187 Ed. Law Rep. 793

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

# APPENDIX
# 19

Westlaw.

Not Reported in S.W.3d, 2013 WL 3894970 (Tex.App.-Corpus Christi)
**(Cite as: 2013 WL 3894970 (Tex.App.-Corpus Christi))**

**H**
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION AND SIGNING OF OPINIONS.

**MEMORANDUM OPINION**

Court of Appeals of Texas,
Corpus Christi–Edinburg.
WESLACO INDEPENDENT SCHOOL DISTRICT
and Richard Rivera, Appellants,
v.
Adan PEREZ Jr., Appellee.

No. 13–12–00590–CV.
July 25, 2013.

On appeal from the 332nd District Court of Hidalgo County, Texas.
Miguel A. Saldana, Stacy Castillo and Jose A. De Los Santos, for Weslaco Independent School District and Richard Rivera.

Kelly D. Stephens, for Adan Perez Jr.

Before Justices RODRIGUEZ, BENAVIDES and LONGORIA.

**MEMORANDUM OPINION**
Memorandum Opinion by Justice BENAVIDES.

*1 By two issues, appellants Weslaco Independent School District (the District) and Richard Rivera appeal the trial court's denial of the District's motion to dismiss claims asserted by appellee, Adan Perez Jr., against Rivera. We reverse and render.

**I. BACKGROUND**
From 2004 until June 2010, Perez was employed as the District's risk manager. In this position, Perez oversaw the District's employee benefit plans, including the school district's self-funded workers' compensation fund and health insurance program. In June 2010, Perez's employment with the District was terminated. In March 2011, Perez filed suit against WISD and Rivera, the District's superintendent.

By his live petition,[FN1] Perez alleged that in early 2009, he became aware of the District's purported desire and eventual action to withdraw funds from the District's self-funded insurance programs "for the specific purpose of beginning construction of a new 'Press Box' at [the District's] football stadium." Perez asserted in his petition that he was "rebuked" when he informed the District's chief financial officer that such withdrawal of funds was illegal. Perez further asserted that he made several attempts to meet with Rivera about the issue, but "was denied access" to him. Perez alleges that he continued to present his complaints to his supervisor, as well as "other administrators and members of [the District's] Board of Trustees." According to Perez's petition, the District and Rivera sought to "silence" him and put a plan in place to terminate his employment.

> FN1. Perez initially filed suit in Hidalgo County district court. The District then filed a notice of removal to the United States District Court for the Southern District of Texas, McAllen Division. *See* 28 U.S.C.A. § 1446 (2013). Perez subsequently amended his complaint and the cause was remanded back to Hidalgo County district court.

Perez's lawsuit against the District and Rivera asserted various causes of action including: (1) breach of contract; (2) breach of Perez's right of reasonable expectation to renewal of his contract; (3) violations of the Texas Whistleblower Act, *see* TEX. GOV'T CODE ANN. § 554.002 (West 2004), by the District and Rivera, in his individual capacity; (4) constitutional violations of due course of law rights, equal protection rights, and free speech under the Texas Constitution; and (5) common-law

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2013 WL 3894970 (Tex.App.-Corpus Christi)
**(Cite as: 2013 WL 3894970 (Tex.App.-Corpus Christi))**

retaliation. Perez sought actual, exemplary, and statutory damages, attorney's fees, pre- and post-judgment interests, costs, and any other relief in law and in equity.

The District filed a motion to dismiss all claims asserted against it pursuant to 101.106(e) of the civil practice and remedies code.[FN2] TEX. CIV. PRAC. & REM.CODE ANN. § 101.106(e) (West 2011). The trial court held a hearing and denied the District's motion to dismiss. This interlocutory appeal ensued. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5) (West Supp.2011); *see also City of Webster v. Myers,* 360 S.W.3d 51, 54–55 (Tex.App.-Houston [1st Dist.] 2011, pet. denied) (holding that section 51 .01(a)(5) grants appellate jurisdiction to review a trial court's interlocutory order denying the City's motion to dismiss).

> FN2. The District also filed a plea to the jurisdiction, which the trial court denied, and the District appealed. This Court addresses the District's plea to the jurisdiction in a companion appeal under Cause Number 13–12–581–CV.

## II. RIVERA'S IMMUNITY

By its first issue, the District asserts that Rivera is immune from Perez's claims of common law retaliation and constitutional tort claims.

### A. Standard of Review

*2 A trial court's granting or denial of a motion to dismiss under section 101.106 of the Texas Tort Claims Act raises an issue of immunity as conferred to employees of governmental units. *See Franka v. Velasquez,* 332 S.W.3d 367, 371 n. 9 (Tex.2011) ("By moving for summary judgment under [section 101.106], defendants were asserting claims of immunity."); *Myers,* 360 S.W.3d at 56. If immunity from suit applies, a trial court lacks subject matter jurisdiction over the case. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 224 (Tex.2004). Subject matter jurisdiction is a question of law which we review de novo. *Id.* at 226.

### B. Discussion

Under the Tort Claims Act's election of remedies provision, if a suit is filed against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit. TEX. CIV. PRAC. & REM.CODE ANN. § 101.106(e). Here, it is undisputed that the District is a governmental unit. *See id.* § 101.001(3)(B) (West Supp.2011) (defining "governmental unit" as a political subdivision of the state including a school district). In his petition, Perez's alleges facts involving wrongful conduct by Rivera in his capacity as the District's superintendent. Additionally, Perez's live petition makes numerous references to the actions of the "Defendants" collectively, with the exception of his attempt to hold Rivera personally liable under the Texas Whistleblower Act. *See* TEX. GOV'T CODE ANN. § 554.002.

Further, Perez's argument that his claims fall outside the scope of the Tort Claims Act, and therefore render the election of remedies provision inapplicable, is unpersuasive. The Texas Supreme Court held that "because the Tort Claims Act is the only, albeit limited, avenue for common-law recovery against the government, all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be "under [the Tort Claims Act]" for purposes of section 101.106." *Mission Consol. Ind. Sch. Dist. v. Garcia,* 253 S.W.3d 653, 659 (Tex.2008) (citing *Newman v. Obersteller,* 960 S.W.2d 621, 622 (Tex.1997)). The Tort Claims Act provides a limited waiver of the government's immunity to the following set of tort claims, none of which are asserted by Perez in his petition:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2013 WL 3894970 (Tex.App.-Corpus Christi)
(Cite as: 2013 WL 3894970 (Tex.App.-Corpus Christi))

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

*3 TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (West 2011).

We conclude that Perez's tort claims for common law retaliation and damages for violation of constitutional rights are barred by immunity against the District, and by extension Rivera, under sections 101.021 and 101.106(e). Accordingly, we conclude that the trial court lacks subject-matter jurisdiction to hear these causes. The District's first issue is sustained.

### III. TEXAS WHISTLEBLOWER ACT LIABILITY

By its second issue, the District contends that the trial court lacks subject matter jurisdiction to hear Perez's whistleblower claims against Rivera.

### A. Waiver and Standard of Review

As a preliminary matter, Perez argues that the District's second issue was not raised at the trial court and was therefore waived. *See* TEX.R.APP. P. 33.1(a). However, subject-matter jurisdiction cannot be waived and can be raised at any time. *Alfonso v. Skadden,* 251 S.W.3d 52, 55 (Tex.2008). Accordingly, we will review all questions involving subject-matter jurisdiction on appeal. *Miranda,* 133 S.W.3d at 226.

### B. Discussion

The relevant statute provides as follows:

(a) A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law en-

forcement authority.

(b) In this section, a report is made to an appropriate law enforcement authority if the authority is a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to:

(1) regulate under or enforce the law alleged to be violated in the report; or

(2) investigate or prosecute a violation of criminal law.

TEX. GOV'T CODE ANN. § 554.002 (West 2004). Sovereign immunity is expressly waived with regard to a claim brought under section 554.002. TEX. GOV'T CODE ANN. § 554.0035 ("A public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter.").

The issue here, however, is whether Perez may assert a private cause of action against Rivera, in his individual capacity, for alleged violations of the Texas Whistleblower Act. We conclude that he may not. The Whistleblower Act allows an aggrieved employee to sue the "employing state or local governmental entity," but not a governmental employee, like Rivera, in his individual capacity. *See id.; Alejandro v. Robstown Ind. Sch. Dist.,* 131 S.W.3d 663, 668 (Tex.App.-Corpus Christi 2004, no pet.). Under section 554.008, an individual defendant's personal liability is limited to a civil penalty, TEX. GOV'T CODE ANN. § 554.008(e) (West 2004), and the statutory right to sue to collect a civil penalty under this section belongs to the "attorney general or appropriate prosecuting attorney," not a private party, like Perez. TEX. GOV'T CODE ANN. § 554.008(b); *see Alejandro,* 131 S.W.3d at 668. The trial court therefore erred in denying the District's motion to dismiss Perez's whistleblower claims against Rivera in his individual capacity. Accordingly, we sustain the District's second issue.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2013 WL 3894970 (Tex.App.-Corpus Christi)
**(Cite as: 2013 WL 3894970 (Tex.App.-Corpus Christi))**

## IV. CONCLUSION

*4 We reverse the trial court's denial of the District's motion to dismiss and render judgment that Perez's causes of actions against Rivera for common law retaliation, damages for constitutional violations, and Texas Whistleblower Act violations are dismissed with prejudice.

Tex.App.-Corpus Christi,2013.
Weslaco Independent School Dist. v. Perez
Not Reported in S.W.3d, 2013 WL 3894970
(Tex.App.-Corpus Christi)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.